RECEIPT # _____
AMOUNT $_____
SUMMONS ISSUED_____
LOCAL RULE 4.1_____
WAIVER FORM _____
MCF ISSUED_____
BY DPTY. CLK._____
DATE _____

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

*FILED*
*IN CLERKS OFFICE*

2003 DEC 11 P 3: 26

*U.S. DISTRICT COURT*
*DISTRICT OF MASS.*

DIOMED INC., DIOMED HOLDINGS INC.
and DIOMED LIMITED

                    Plaintiffs,

             - against -

VASCULAR SOLUTIONS, INC. and
NANCY L. ARNOLD,

                    Defendants.

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

Civil Action No. _____

**COMPLAINT AND
JURY DEMAND**

## 03 CV 1 2 4 9 8 RWZ

**MAGISTRATE JUDGE** _Alexander_

      Plaintiffs Diomed Inc., Diomed Holdings Inc. and Diomed Limited (collectively, "Diomed" or "Plaintiffs"), for their Complaint herein allege, upon personal knowledge as to their own actions and upon information and belief as to the actions of defendants and others, as follows:

### NATURE OF ACTION

      1.    Diomed, a leading developer and exclusive owner of patent pending technology for minimally invasive laser treatment of varicose veins, and its parent company, brings this action for injunctive and other relief to redress the willful and improper conduct of defendants Vascular Solutions, Inc. ("VSI") and Nancy L. Arnold ("Arnold"), VSI's Executive Vice President of Marketing.

      2.    After learning that Diomed was not interested in retaining VSI to manufacture or distribute Diomed's Endovenous Laser Treatment products, defendants launched a deliberate campaign to usurp Diomed's market advantage through deceptive and unfair means by misappropriating Diomed's trade secrets in violation of confidentiality agreements to which Arnold remains bound; employing marketing initiatives designed to confuse consumers as to the

source of VSI's goods and thereby infringe and dilute the value of the goodwill associated with

the federally registered trademark "EVLT®" Diomed has been using since at least March 2001

to market its EVLT® products and services; and falsely accusing Diomed of engaging in

unlawful practices through promotional literature VSI includes in its product packaging, thereby

interfering with Diomed's existing and prospective customer relationships; and engaging in

defamatory and other unfair and deceptive acts and practices, as detailed herein.

**PARTIES**

3.      Diomed Inc. is a corporation organized and existing under the laws of the State of

Delaware with its principal place of business located at One Dundee Park, Suite 5/6, Andover,

Massachusetts. Diomed Inc. has been in the business of developing and marketing products for

the laser treatment of varicose veins since approximately 1999.

4.      Diomed Holdings Inc. ("Diomed Holdings") is a corporation organized and

existing under the laws of the State of Delaware with its international headquarters located at

One Dundee Park, Suite 5/6, Andover, Massachusetts. Diomed Holdings, the parent company of

Diomed Inc., is a party to certain confidentiality agreements in which defendant Arnold,

individually, and as the President of her former employer, Laser Peripherals, LLC ("Laser

Peripherals") expressly agreed not to disclose to third parties, including her current employer,

VSI, certain trade secrets, which Diomed representatives disclosed to her in confidence during

the due diligence on a possible transaction with Laser Peripherals.

5.      Diomed Limited is a Companies Act company organized and existing under the

laws of the United Kingdom with its principal place of business located at Cambridge Research

Park, Beach Drive, Cambridge CB5 9TE, United Kingdom. The application for the improved

patent pending technology for the laser treatment of varicose veins, which Diomed will market

under the EVLT® mark, was filed in the name of Diomed Limited.

6.    Vascular Solutions, Inc. or VSI is a corporation organized and existing under the laws of the State of Minnesota with its headquarters located at 6464 Sycamore Court, Minneapolis, Minnesota. Although VSI was founded in 1997, documents VSI has filed publicly indicate that it did not begin to develop products for laser treatment of varicose veins until in or about the fourth quarter of 2002, just shortly after Arnold joined VSI. VSI is a publicly-held company which trades on the NASDAQ National Market under the symbol "VASC".

7.    Nancy L. Arnold or Arnold is a resident of Minnesota, whose last known address is 17582 Hanson Boulevard, NW, Andover, Minnesota. She currently serves as the Executive Vice President of Marketing of VSI.

## JURISDICTION AND VENUE

8.    This is a civil action arising under the laws of the United States. This Court has federal question jurisdiction over this action pursuant to 15 U.S.C. § 1121, 28 U.S.C. §1331, and 28 U.S.C. § 1338(a), (b) in that this action states federal claims for trademark infringement, false designation of origin, false advertising and dilution under the Lanham Act, 15 U.S.C. § 1051 *et seq.*, and diversity jurisdiction pursuant to 28 U.S.C. § 1332(a) in that the amountin controversy exceeds $75,000, exclusive of interest and costs, and this matter is between citizens of different states. Additionally, this Court has supplemental jurisdiction over the subject matter of Diomed's trade secret misappropriation, defamation, injurious falsehood, commercial disparagement, tortious interference, breach of contract, accounting and unfair and deceptive trade practices claims under 28 U.S.C. §1367.

9.    Venue is proper in this district under 28 U.S.C. § 1391(b).

### III.    FACTUAL BACKGROUND

#### A.    EVLT®, Diomed's Endovenous Laser Treatment Technology

10.    Diomed is a leading provider of laser equipment and disposable laser-delivery accessory items, including laser fibers and kits, for minimally invasive laser treatment of a variety of conditions.

11.    Diomed's most successful laser treatment solution is its laser treatment of varicose veins, which has been advertised, promoted and sold to physicians and other licensed professionals extensively and continuously since January 2002, throughout the United States and in numerous foreign countriesunder the registered trademark EVLT®.

12.    Diomed's EVLT® product line currently consists of an EVLT® branded laser and an EVLT® branded disposable procedure kit (the "EVLT® Kit") that contains a vascular access needle, guidewire, introducer and laser fiber, as well as a sheath (the "EVLT® Sheath") which is used to guide the laser fiber to the targeted treatment area where the energy is delivered.

13.    The EVLT® laser, EVLT® fiber and EVLT® Kit (collectively, the "EVLT® System") afford physicians a safer, more precise alternative to the traditional surgical approach known as ligation and stripping. Prior to Diomed's introduction of the EVLT® System in 2002, ligation/stripping and another procedure called radio-frequency ablation were the only available treatment methods for most varicose vein abnormalities that originate from "reflux" of the greater saphenous vein.

14.    Independent clinical studies of Diomed's EVLT® System document the effectiveness of various components of the EVLT® System as compared to these alternative methods (the "EVLT® Clinical Studies"). A copy of the EVLT® Clinical Studies which Diomed uses to promote its EVLT® products is annexed hereto as Exhibit 1.

- 4 -

15.    By using the EVLT® System, a practitioner is able to treat varicose veins with the EVLT® Systemat the source of the venous insufficiency by making one small incision and inserting the disposable EVLT® Sheath into the vein.  Once the EVLT® Sheath is in place, the practitioner inserts the laser fiber into the EVLT® Sheath.  The laser is activated and energy is delivered from the fiber to the vein.  The laser fiber and sheath are then slowly removed and the vein eventually closes.  After being fitted with compression hose, the patient is able to walk out of the physician's office within an hour of treatment.  The EVLT® procedure causes minimal discomfort and bruising and no scarring, and requires less recovery time than the more invasive surgical methods which require general or spinal anesthesia.  Diomed's EVLT® procedure is thus a preferable alternative treatment method in terms of lower treatment costs and costs associated with extended absences from work.

16.    Since the commercial launch of the EVLT® System in January 2002, Diomed has established itself as the market leader of minimally invasive laser treatment solutions for varicose veins, and the EVLT® System has received high praise from the medical community, patients, and industry experts through clinical studies, such as those documented in the EVLT® Clinical Studies.

### B.    Diomed Develops an Improved EVLT® System

17.    In or about January 2002, Diomed began developing improved technology and devices for the EVLT® System that would afford practitioners even greater precision and consistency in the rate at which energy is delivered as the laser fiber is removed from the vein during the procedure (the "Improved EVLT® System").  Diomed thus began researching various design options for an improved EVLT® System.

18.    By April 2002, Diomed, through additional research and scientific study and the expenditure of significant time, money and resources, had developed a design for an improved

- 5 -

sheath that contained interval markings enabling the practitioner to remove the sheath and laser fiber with enhanced precision and control (the "EVLT® Marked Sheath"). With this improved marking feature, the EVLT® Marked Sheath also enhances the ability to control the rate at which energy is delivered to the vein as the laser fiber is withdrawn, thus assuring a more complete closure of the vein and minimizing damage to surrounding tissues. The EVLT® Marked Sheath was designed to be marketed as part of a new, improved procedure kit (the "Improved EVLT® Kit"). Diomed's Improved EVLT® Sheath also has been specifically designed to correspond with an improved version of the EVLT® laser console.

19.    In June 2002, after over six months of research and design, Diomed filed domestic and international patent applications on its Improved EVLT® Kit.

20.    In developing the Improved EVLT® Kit, Diomed has expended well over $200,000 on internal labor costs, materials and other direct costs, capital expenditures, prosecution of the patent applications for the Improved EVLT® Kit and of the EVLT® trademarks, validation costs, prototypes and setup charges, user manuals and translations, and meeting and travel expenses associated with the development of the Improved EVLT® System.

21.    At the time Diomed invested time, expense, and labor into what was to be the development of the most advanced technology for the laser treatment of varicose veins, none of Diomed's competitors had, to the best of Diomed's knowledge, begun to develop technology comparable to (or competitive with) the Improved EVLT® System. As such, enhancing the design of its EVLT® System to include the patent pending Marked EVLT® Sheath assured Diomed that it would be well-positioned to maintain its market edge in the disposable laser accessories market for the foreseeable future.

22.    To maximize this competitive edge, Diomed developed a marketing plan which contemplated that the Improved EVLT® System would be launched in the second half of 2003,

- 6 -

so as to afford Diomed ample time to conduct user preference evaluations and to adjust the design of its Improved EVLT® System to assure effectiveness and market acceptance by practicing physicians. The proposed timing of the launch also was based upon the need to develop packaging, instructional and promotional materials for the Improved EVLT® System and the anticipated closing of an equity round of financing, the proceeds of which were intended in part to enable Diomed to protect the substantial investment it has made in its patented EVLT® technology.

23.     Throughout the concept, research and development period of the Improved EVLT® System, Diomed had in place policies and procedures to ensure that there would be no disclosure of its confidential and proprietary information other than to employees and third parties on a need-to-know basis and only after all such persons and entities had agreed to be bound by extensive and detailed confidentiality and/or non-compete agreements.

          **C.     Nancy Arnold Learns of Diomed's Improved EVLT® System and Marketing Plans During Due Diligence on a Potential Transaction**

24.     In early 2002, Diomed entered into discussions regarding a possible acquisition of Laser Peripherals, a manufacturer of laser fiber-optic products. In conjunction with that potential transaction, Diomed and Laser Peripherals agreed that an exchange of confidential and proprietary information was needed to assess the propriety of proceeding with the acquisition.

25.     However, before any confidential information was exchanged by either party, on or about April 2, 2002, Diomed Holdings and Laser Peripherals entered into a Mutual and Reciprocal Non-Disclosure Agreement (the "Diomed-LP NDA") "for the purpose of preventing the unauthorized disclosure of 'Confidential Information'." (Diomed-LP NDA at 1).

26.     The term "Confidential Information" as defined in the Diomed-LP NDA includes "(i) all information whether provided in written or oral form (if properly marked *or otherwise identified as "confidential"*), including formulas, patterns, compilations, programs, devices,

methods, techniques or processes, of either party which are in the nature of patented or

patentable information, know-how, *trade secrets, proprietary information or other information*

*that is not otherwise known to the public* as of this date, and (ii) *all information obtained by*

*visiting the other party's facilities.*" (emphasis added).

27.    The Diomed-LP NDA further provides, in pertinent part:

> All Confidential Information made available to either party by the
> other party shall remain the property solely of the disclosing party.  The
> parties hereto understand and agree that disclosure of any Confidential
> Information of one party to the other will be made only upon the express
> conditions that:
>
> (i) such Confidential Information will be received and accepted in
> confidence by the receiving party; and
>
> (ii) the receiving party will not, without the prior written approval
> of the disclosing party (which shall be given or withheld in its sole
> direction), use such information for its own benefit (or for the benefit of
> any party other than the disclosing party), or publish or otherwise
> disclose any such Confidential Information to a third party.
>
> Each party hereto agrees strictly to limit access to Confidential
> Information to those of its officers, directors, or employees, or the third
> parties described in paragraph 2 hereof, who must have Confidential
> Information in order to carry out the terms of any agreement made
> between the parties hereto.

28.    Arnold, who was then the President of Laser Peripherals and who took the lead on

behalf of Laser Peripherals throughout the due diligence and ensuing negotiations, signed the

Diomed-LP NDA on behalf of Laser Peripherals.

29.    During the course of due diligence, Peter Klein, who was then serving as the

Chief Executive Officer of Diomed ("Klein") and Arnold had a confidential conversation in

which Arnold asked Klein about various aspects of Diomed's business.  In particular, Arnold

asked Klein how Diomed intended to maintain its market position as the leader in the laser

treatment of varicose veins.

30.    Before responding, Klein told Arnold that the information he was about to reveal to her was confidential and subject to the Diomed-LP NDA. Arnold acknowledged Klein's statement by confirming her agreement to keep the disclosed information confidential.

31.    Klein then proceeded to describe the unique, proprietary enhancements that Diomed intended to introduce to the market. Klein described the ongoing development of the EVLT® Marked Sheath design and Diomed's plans to improve its patented EVLT® System by adding markings to the sheath as a way of enhancing the accuracy of the treatment procedure through a more precise alignment and control.

32.    Arnold responded to Klein's confidential disclosure of Diomed's trade secrets by assuring Klein that she or one of her employees at Laser Peripherals had the requisite skills to manufacture laser fibers and a sheath with the required markings.

33.    During the course of due diligence, Klein also disclosed to Arnold Diomed's plans for the timing of the launch of the Improved EVLT® System and the estimated market, and projected sales for the Improved EVLT® System.

34.    Further, Klein shared with Arnold Diomed's plans to use Fibersdirect.com as the entity that would handle web-based, direct sales of Diomed's disposable laser accessory kits to endovenous professionals.    It was contemplated that Arnold would be in charge of the Fibersdirect.com segment of Diomed's business post-acquisition.

35.    On the basis of the Confidential Information disclosed to her during the due diligence, Arnold prepared and circulated a document entitled, "Fibersdirect Inc. Business Plan 2002 By Nancy L. Arnold" (the "Arnold Plan").

36.    Included in the Arnold Plan was a detailed discussion of such confidential and proprietary topics as industry and competitor information, product pricing, a financial plan, which included projections, marketing strategies and future products. The Arnold Plan expressly

- 9 -

provided that Laser Peripherals was to "provide assistance in the development of *new* fiberoptic and related disposables needed for *new* clinical solutions being marketed and sold by Diomed Inc."

37.    Discussions between Diomed and Laser Peripherals continued with Arnold fully involved in the exchange of confidential information and development of plans for the combined company. Those plans contemplated that Arnold was to lead the product development and be part of the management team during the transition and integration period and then eventually in the newly-formed joint venture.

38.    On April 30, 2002, Diomed and Laser Peripherals entered into a letter of intent, in which the parties and the signatories thereto agreed to be bound by the Diomed-LP NDA. In doing so, the signatories reaffirmed their obligation to maintain the secrecy of all confidential information disclosed during negotiations, including but not limited to, Diomed's disclosures relating to the development and marketing of the Improved EVLT® System and EVLT® Marked Sheath.

39.    Arnold signed the letter of intent both individually and on behalf of Laser Peripherals.

40.    Although Diomed and Laser Peripherals never concluded the contemplated transaction, the obligations of Arnold concerning the treatment and use of Confidential Information expressly survived the termination of the letter of intent.

**D.    Arnold    and    VSI    Misappropriate    Diomed's    Trade Secrets Regarding the Improved EVLT® System**

41.    In or about September 2002, Arnold left Laser Peripherals to join VSI as the Executive Vice President of Marketing. At that time, the principal business of VSI was the manufacture and sale of vascular sealing devices used by cardiologists and radiologists, devices

which are unrelated to varicose vein treatment, let alone a laser-based treatment for varicose veins. VSI had not yet entered the laser accessory market.

42.    Shortly after joining VSI, however, Arnold called Klein to pitch VSI as the manufacturer and distributor of EVLT® products in certain market segments. Klein declined the offer.

43.    Apparently dissatisfied that it would not be able to enter the laser treatment market by serving as Diomed's manufacturer/distributor, VSI thereafter began developing a "new" product for the non-surgical treatment of varicose veins. According to public statements made by the Chief Executive Officer of VSI, Howard Root ("Root"), in or about February 2003, that development first began in or about the fourth quarter of 2002, a fact that VSI confirmed in its Form 10-K filed that month and in statements Root made to the press.

44.    In none of the public statements VSI and Root made, however, did either of them ever disclose that this so-called "new" product was a disposable procedure kit for the laser treatment of varicose veins or that the kit was to contain a marked sheath substantially similar in design, purpose and function to the design, purpose and function of the EVLT® Marked Sheath that was disclosed to Arnold – in confidence – during due diligence on the Laser Peripheral transaction.

45.    Even when VSI launched a media campaign on or about June 19, 2003, announcing FDA clearance for its "new" product, described generally as a laser procedure "kit" that was to be marketed under the trademark, "Vari-Lase", VSI still did not disclose that its kit contained a marked sheath substantially similar in design, purpose and function to the design of the EVLT® Marked Sheath.

46.    The reason is obvious. Arnold knew from the information disclosed to her during due diligence that, because the Laser Peripherals-Diomed transaction had fallen through, Diomed

- 11 -

would very likely need to delay the launch of the Improved EVLT® System with the EVLT® Marked Sheath until sometime in the latter part of 2003. As such, VSI was able to increase the likelihood that it would beat Diomed to market with its copycat procedure kit by withholding the details of the "new" kit until the actual commercial launch. In this way, VSI was assured that Diomed would be foreclosed from learning of VSI's intentions and taking steps to prevent VSI from stealing Diomed's trade secrets in time to preserve Diomed's market advantage.

47.    On reports that VSI would begin selling its procedure kits the week of July 21, 2003, the price of VSI stock immediately increased by 23%.

48.    According to the Form 8-K VSI issued on October 15, 2003, VSI had generated $108,263 in net sales of VSI's procedure kits as of September 30, 2003 and it is projecting annual kit sales of $4 to 6 million in 2004.

### E.    Diomed's Exclusively-Owned "EVLT®" Trademark

49.    In anticipation of the commercial launch of the EVLT® System and disposable EVLT® Kits in January 2002, Diomed developed a comprehensive marketing plan for the promotion and advertising of its products under the trademark "EVLT®".

50.    As part of that plan, Diomed filed an application with the United States Patent and Trademark Office ("USPTO") on November 7, 2001 seeking protection of the goodwill associated with the EVLT® mark.

51.    The USPTO registered the EVLT® mark on May 13, 2003 under Federal Trademark Registration No. 2,715,197 in international class 10 for use with medical lasers, surgical, laser beam delivery systems consisting of laser light sources and parts for such goods and in international class 42 for service mark protection in surgical, medical and nursing services and in providing information relating to such services on-line from a computer database or a global computer network. At all times material to this action, the EVLT® mark was and is a

- 12 -

valid and subsisting trademark and service mark. Diomed is the sole and exclusive owner of the EVLT® mark.

52.    Continuously from January 2002, when Diomed first launched its EVLT® products commercially, through the present, Diomed has invested considerable effort and expense to establish its EVLT® branded products as the leading alternative to surgery for the treatment of varicose veins. As part of that initiative, Diomed has been marketing, selling and distributing its products and services for the laser treatment of varicose veins under the EVLT® mark.

53.    From January 2002 through September 30, 2003, Diomed has expended more than $4.7 million in prosecuting its EVLT® trademark and in promoting its EVLT® products through advertising, trade shows, marketing materials, sales and public relations initiatives and other promotional activities, such as the web-site through which Diomed promotes its EVLT® products, www.EVLT.com. Diomed has been selling its EVLT® products throughout the United States and in various foreign countries.

54.    As a result of Diomed's continuous and extensive use of the EVLT® mark on and in connection with its EVLT® products and services, the registered EVLT® mark has become associated by Diomed's customers and by physicians and other industry professionals and their patients with Diomed's laser equipment, optical fibers and disposable accessory products, including the EVLT® Sheath and laser fibers Diomed designed specifically for use with the Diomed laser.

55.    Diomed's use and federal registration of its EVLT® mark entitles it to a presumption, under 15 U.S.C. § 1057, of the mark's validity, of Diomed's ownership of the mark, and of Diomed's exclusive right to use the mark in commerce in connection with the products and services listed in its registration.

- 13 -

**F.    VSI Intentionally Attempts to Trade on the Goodwill
Associated with Diomed's Registered "EVLT®" Trademark**

56.    VSI's Annual Report and press releases indicate that VSI would be marketing its
laser procedure kit under the trademark "Vari-Lase", for which VSI had applied for trademark
protection on or about February 23, 2003 in international classes 10, 26, 39 and 44.

57.    VSI, however, has instead been using the mark "ELT" and/or "Endovenous Laser
Therapy" to market its laser procedure kit as a way of suggesting to consumers and insurers that
Diomed was the source of the laser treatment products VSI was marketing.

58.    On or about August 20, 2003, counsel for Diomed sent a letter to Root,
demanding that VSI cease and desist from using the ELT mark on the grounds that by using the
ELT mark in connection with VSI's procedure kit, VSI had caused consumer confusion and was
attempting to trade on the goodwill established by, and associated with, the registered EVLT®
trademark of Diomed.

59.    On September 4, 2003, counsel for VSI responded by sending a letter to counsel
for Diomed advising that VSI "has made the business decision to discontinue use of the
abbreviation ELT of Endovenous Laser Therapy in their marketing, promotion and packaging
materials."

60.    Nonetheless, included in the marketing materials VSI was handing out to the
more than 200 professionals who attended the International Varicose Vein conference held in
Key Biscayne, Florida on September 21-23, 2003 were copies of the "Endovenous Laser
Reimbursement News", a quarterly newsletter published by VSI and its CEO, Root (the "VSI
Newsletter"). A copy of the VSI Newsletter is attached hereto as Exhibit 2.

61.     The VSI Newsletter, which reflects a July 2003 publication date, contains, among other things, more than thirty (30) references to the ELT mark, which, VSI had assured Diomed just three weeks earlier was no longer being used to promote VSI products.

62.     Further, in the highlights found on the first page of the VSI newsletter, VSI proclaims: "New published clinical data on Endovenous Laser Therapy demonstrates excellent long-term results with large patient populations." The article, entitled, "New Published Clinical Results of Endovenous Laser Therapy (ELT)", describes in great detail "the documented clinical experience of ELT of varicose veins." (emphasis added).

63.     However, this so-called "documented clinical experience of ELT" is nothing more than a paraphrased version of the EVLT® Clinical Studies – but with all references to Diomed products and EVLT® omitted. In this disingenuous way, VSI has attempted to link ELT to the favorable results documented in the EVLT® Clinical Studies, even though the studies were based almost exclusively on Diomed's EVLT® System. Certainly, no aspect of any of the 16 studies discussed in the EVLT® Clinical Studies deal with VSI or any of VSI's products.

64.     In addition, in a discussion of the various "ELT" procedures, which is organized by reference to specific patents, VSI touts the documented success and benefits of "ELT" that have been confirmed through studies that are, in reality, those chronicled in the EVLT® Clinical Studies. The article then claims that "[t]hey concluded that ELT is a successful minimally invasive alternative for a wide group of patients that previously would have required vein ligation and stripping." (emphasis added).

65.     But nowhere does the article mention that the patented technology being described in the VSI Newsletter is the EVLT® System, which is owned exclusively by Diomed.

66.    What is more, although VSI has used the VSI Newsletter as part of the promotional materials for its laser procedure kit, the name "Vari-Lase", the trademark VSI publicly announced would be used to market its kit, appears nowhere in the VSI Newsletter.

67.    Nor does VSI use its "Vari-Lase" mark anywhere on its patient information website, www.veins.nu. VSI instead repeatedly uses the name "Endovenous Laser Therapy" to describe the laser option for treating varicose veins. Equally deceptive is the design of the website, which contains graphics, illustrations, lettering, typeset and coloring that is similar to the promotional literature and web-site (www.EVLT.com), which Diomed has been using to market its EVLT® products.

68.    VSI's strategy of using marketing materials similar to those used by Diomed also can be found in the promotional materials VSI provides to physicians and other professionals who request information concerning VSI's Vari-Lase products. For example, the color patient information brochure, which VSI provides to its customers contains illustrations, typeset and coloring that is very similar to the patient information Diomed provides to physician who purchase the EVLT® products. The VSI product package also contains, among other things, articles showcasing the EVLT® Clinical Studies by repeated reference to the "ELT" mark. A copy of one such article is attached hereto as Exhibit 3.

69.    Through these deceptive, deliberate marketing ploys, VSI has been able to benefit from the more than $4.7 million Diomed has spent marketing its EVLT® products and establishing EVLT® brand recognition.

70.    Without doubt, VSI has employed these copycat marketing tactics to foster the very "confusion" concerning the name for the endovenous application of laser energy to treat varicose veins, which is the subject of an article Root wrote especially for the VSI Newsletter, entitled "Endovenous Laser—What's in a Name?"

71.    In that article, Root implies that EVLT would be an appropriate name for all procedures of its kind but concedes that it is the "trademarked product name by Diomed, Ltd., [and] thus not an option for the name of the procedure". (VSI Newsletter at 8). Root goes on to suggest that "ELT – Endovenous Laser Therapy – the name used by Vascular Solutions for the procedure without trademark protection, so could be used as an industry standard."

### G.    VSI's Marketing Materials Falsely Claim that Diomed's EVLT® Warranty Violates Various Laws

72.    The literature VSI has been using to market its Vari-Lase Kit is a one-page advisory entitled, "Assurance of Compatibility" in which VSI purports to address whether use of the Vari-Lase Kit with laser consoles manufactured by other companies, such as Diomed, will damage, or void the warranty for, those laser consoles.

73.    VSI first lists by name and product number the three most recognized manufacturers of "solid state" laser consoles, the first of which is Diomed, and then claims that "[t]he use of the Vari-Lase procedure kit with any of these laser consoles will not damage the console or result in a different energy transmission or wavelength as compared to the manufacturer's original equipment laser fiber." VSI does not, however, include any clinical data or results of compatibility testing to verify the accuracy of this claim.

74.    The Assurance of Compatibility then states that:

> If your laser console's salesperson threatens to void the warranty of your laser console or charge you for a service call because you are not using their brand of procedure kit, inform them of your rights. You have the legal right to choose your supplier of an endovenous laser procedure kit. *The U.S. Warranty Improvement Act, Section 2392(C) clearly states that it is illegal for the manufacturer to require or force the equipment owner to buy only the O.E.M. brand of supplies.*

> Show this letter to anyone who threatens to void your warranty or charge you for a service call because you were not using their brand of endovenous laser procedure kit. Ask the salesperson to put in writing their threatened course of action, and send it to Vascular Solutions, Inc.

> *Such a letter constitutes a clear violation of the Sherman and Clayton Anti-Trust Acts.*
>
> Don't let anyone else make your purchasing decision for you. You have the legal right to select a professional endovenous laser procedure kit with the pricing and service that best suits your needs.

(Assurance of Compatibility, attached hereto as Exhibit 4) (emphasis added).

75.     VSI's "Assurance" is false, inaccurate and intentionally misleading in several key respects.

76.     The referenced section of the "U.S. Warranty Improvement Act" is actually found in the Magnuson-Moss Warranty Improvement Act, which, by its terms, applies only to consumer products, not to commercial products such as Diomed's EVLT® products, which, by law, can only be sold to licensed professionals.

77.     Nor is it accurate to suggest, as VSI has done, that the sales strategy Diomed employs for its EVLT® Kit is "to require or force" its customers to buy only Diomed's EVLT® laser console in "clear violation of the Sherman and Clayton Anti-Trust Acts."

78.     Nor does Diomed refuse to service EVLT® laser consoles that have been used with disposable accessories manufactured by a competitor, including those manufactured by VSI, as VSI claims.  While Diomed's limited warranty does state that it becomes invalid if, among other things, the "Product [i.e., laser console] is used with any fiber other than a new fiber distributed by Diomed", such a provision does not violate any antitrust laws. (Diomed Limited Warranty, attached hereto as Exhibit 5).  Diomed's limited warranty specifically provides that, in such cases, the customer has the option to have its EVLT® laser console repaired by Diomed at its established service rates.

79.     Diomed has specifically designed the laser fibers, sheaths and other disposable accessories in its EVLT® Kit for use with its EVLT® laser to maximize the degree of control and precision afforded the professional in the delivery of laser energy to the affected area, so as

- 18 -

to minimize the risk of damage to surrounding tissues. This risk is nowhere addressed in VSI's Assurance of Compatibility, which focuses solely on equipment usage and warranties, not patient safety.

80.    As the CEO of VSI, Root is charged with oversight responsibility for ensuring the accuracy and lawfulness of the marketing and promotional activities of VSI. As the Publisher of the VSI Newsletter, Root authorized its publication with full knowledge of the misleading content of the articles contained therein.

81.    Root is a graduate of the University of Minnesota law school.    Before joining VSI as its President and CEO, Root practiced corporate law for five years at a national law firm and served as the Vice President and General Counsel to an international medical device manufacturer. As such, his understanding of the proscription against trademark infringement, trade secret misappropriation, false advertising and other unfair competitive practices is presumed.

**COUNT I**
**MISAPPROPRIATION OF DIOMED'S TRADE SECRETS**
**(Mass. Gen. L. ch. 93 § 42)**

82.    Diomed repeats and realleges the allegations contained in the paragraphs above as if fully set forth herein.

83.    The confidential and proprietary information Diomed disclosed to Arnold during the course of due diligence concerning the concepts, ideas, techniques, technology, specifications, designs, and other information relating to the improvements Diomed was developing for its next generation EVLT® System, including the addition of markings to the sheath (collectively, the "EVLT® Design Secrets"), and Diomed's business plans and marketing strategies for the Improved EVLT® System, including the timing of the launch of that system