(collectively, the "Marketing Strategies") constitutes trade secret information (collectively, the "Trade Secrets").

84. Diomed is the exclusive owner of all Trade Secrets.

85. At all times during the period in which Diomed first conceived of the idea to improve its EVLT® System by adding calibrated markings to the EVLT® Sheath until the time when Arnold disclosed Diomed's Trade Secrets to her current employer (the "Non-Public Period"), Diomed's Trade Secrets were not generally known to persons outside of the limited group of Diomed employees and others who have been afforded authorized access to Trade Secrets for a legitimate business reason, such as Arnold and other Laser Peripheral representatives who were involved in the due diligence (collectively, the "Authorized Recipients").

86. Each of the Authorized Recipients, including Arnold, was, at all times during the Non-Public Period, and still is, under an express and/or implied duty not to disclose or use Diomed's Trade Secrets to unauthorized recipients such as VSI.

87. At all times during the Non-Public Period through the present, Diomed has taken reasonable steps to maintain the secrecy of its Trade Secrets and to protect against inadvertent or unauthorized disclosure to third parties, including requiring all Authorized Recipients to sign confidentiality and non-disclosure agreements before access is given.

88. The Trade Secrets of Diomed were not readily ascertainable by proper means as is evidenced by the fact that of the three companies other than Diomed which currently sell disposable laser accessory products, VSI is the only competitor to have launched a procedure kit containing sheaths that have calibrated markings similar to those found on Diomed's EVLT® Marked Sheath, even though the other two companies had entered the endovenous laser accessory market long before VSI.

89. By utilizing the Trade Secret information Diomed had disclosed to Arnold in confidence, even after Diomed's CEO had declined Arnold's unsolicited offer to provide distribution services for the EVLT® System, VSI and Arnold willfully and wrongfully misappropriated and used Diomed's Trade Secrets to their economic benefit in violation of the confidential relationship between Diomed and Arnold.

90. As a result of the defendants' willful misappropriation of Diomed's Trade Secrets, Diomed has been deprived of the full benefits of its ingenuity and substantial investment in developing the Improved EVLT® Kit by being the first to market with its improved products and thereby maintain its competitive edge in the market for the laser treatment of varicose veins. Had Diomed known of the plans VSI has so carefully guarded through veiled public statements, Diomed could have taken action at a time when it could have preserved its competitive edge and accelerated introduction of its improved patent pending Improved EVLT® Kit.

91. Accordingly, in the interest of promoting the public policies of trade secret protection sanctioned by the courts of the Commonwealth, VSI should be enjoined from manufacturing, selling or otherwise distributing any procedure kits containing marked sheaths until such time as the patent issues on Diomed's patent pending Improved EVLT® Kit, or at a minimum, for a period of at least nine months, as a way of eliminating the competitive advantage VSI has achieved improperly at Diomed's expense and to encourage corporate morality through an injunction's deterrent effect.

92. Further, during the pendency of the injunction, restrictions should be imposed so that VSI cannot license similar intellectual property from a third party except upon court order.

93. Diomed is entitled to recover from defendants actual damages in an amount sufficient to prevent defendants from reaping an unjust enrichment as a result of their wrongful actions, with the specific amount to be proven at trial, together with attorneys' fees and costs.

94. Because the defendants' misappropriation of Diomed's Trade Secrets was willful and deliberate, Diomed is entitled to recover punitive damages pursuant to Mass. Gen. L. ch. 93 § 42.

## COUNT II
### FEDERAL TRADEMARK INFRINGEMENT
### (15 U.S.C. § 1114 *et seq.*)

95. Diomed repeats and realleges the allegations contained in the paragraphs above as if fully set forth herein.

96. VSI's wrongful activities, as described above, constitute unauthorized use of a mark confusingly similar to Diomed's EVLT® trademark in interstate commerce. Unless stopped, VSI's deceptive and unfair marketing strategies are likely to cause confusion, mistake or deception as to the source or origin of the goods, which bear or are marketed in connection with the mark ELT and/or the name "Endovenous Laser Therapy".

97. Further, VSI's wrongful activities are intended to, and are likely to, lead Diomed's customers, physicians and other industry professionals, and their patients to conclude incorrectly that the procedure kits being offered and distributed by VSI, which bear or are marketed in connection with the infringing ELT mark, originated with, are sponsored by, or are authorized or approved by Diomed, all to the damage and harm of Diomed, its customers, physicians, clinics and other industry professionals and their patients.

98. VSI's wrongful activities constitute willful and deliberate infringement of Diomed's federally registered EVLT® trademark in violation of 15 U.S.C. § 1114(1).

99. VSI implemented the above-described product promotion and marketing strategy with full knowledge of Diomed's prior use and superior rights in and to the EVLT® trademark and with previous knowledge of the market reputation of Diomed's registered EVLT® trademark. Based on the actions of VSI, it is the belief of Diomed that VSI's actions were

undertaken for the willful and calculated purpose of trading upon, and thereby destroying, the goodwill Diomed has established in its EVLT® trademark and for the willful and calculated purpose of distributing infringing goods in reference to the goodwill of Diomed's EVLT® trademark and business reputation in order to mislead and deceive customers, physicians, clinics and other industry professionals.

100. VSI's wrongful conduct, and the damages resulting to Diomed, are continuing and are likely to continue as evident by VSI's refusal to cease using the ELT mark despite its written statement that it would do so.

101. Diomed's EVLT® trademark is unique and valuable property which has no readily determinable market value. VSI's wrongful activities have caused and will continue to cause irreparable harm to Diomed, for which Diomed has no adequate remedy at law. Accordingly, Diomed is entitled to injunctive relief as prayed for herein, pursuant to 15 U.S.C. §1116(a).

102. Diomed also is entitled to recover from VSI, pursuant to 15 U.S.C. §1117, the reasonable attorneys' fees and costs incurred by Diomed in defending its EVLT® marks.

## COUNT III
### FALSE DESIGNATION OF ORIGIN AND PALMING OFF
### (15 U.S.C. § 1125(a))

103. Diomed repeats and realleges the allegations contained in the paragraphs above as if fully set forth herein.

104. By using ELT in connection with services related to goods of the kind manufactured and distributed by Diomed and by reciting results taken from the EVLT® Clinical Studies and then linking it to Endovenous Laser Therapy or ELT, the name VSI has freely admitted it has been using to market its accessory kit, VSI is attempting to induce commercial consumers and their patients to believe mistakenly that VSI's procedure kits originate from, are

sponsored by or are in some way associated with Diomed and its EVLT® Kit and other industry-recognized EVLT® products or that VSI's procedure kit is of the same caliber, quality and specifications of the EVLT® Kit.

105. Such actions constitute false designations of origin or false descriptions or representations and palming off, and are likely to cause the EVLT® trademarks to lose its significance as an indicator of origin to Diomed.

106. VSI's actions constitute unfair competition in violation of 15 U.S.C. § 1125(a). For this additional reason, Diomed is entitled to the relief requested in Count II above.

## COUNT IV
### FALSE ADVERTISING
### (15 U.S.C. § 1125(a)(1))

107. Diomed repeats and realleges the allegations contained in the paragraphs above as if fully set forth herein.

108. As described in greater detail above, VSI's "Assurance of Compatibility" contains false and misleading statements concerning the terms and legality of the warranty Diomed provides with its EVLT® laser console. The limited warranty and related warranty services Diomed provides with its EVLT® products is a key feature to purchasers in deciding to purchase EVLT® laser consoles.

109. Given the authoritativeness of the tone of VSI's marketing piece and the (inaccurate) references to specific statutory schemes, the statements contained in the "Assurance of Compatibility" are likely to deceive recipients into believing – incorrectly – that Diomed will not service any EVLT® lasers that have been used with laser fibers other than those sold by Diomed and that Diomed's warranty actually violates the referenced laws.

110. It is probable that injury to the goodwill of Diomed's EVLT® registered mark and its business reputation will result and that such injury will be irreparable unless VSI is enjoined

from using its "Assurance of Compatibility" and from other false and misleading advertising intended to deceive commercial consumers concerning the products and services sold under the EVLT® mark. Accordingly, Diomed is entitled to an injunction enjoining VSI from using the "Assurance of Compatibility" in connection with the marketing or sale of its products.

## COUNT V
### DEFAMATION AND TRADE LIBEL

111. Diomed repeats and realleges the allegations contained in the paragraphs above as if fully set forth herein.

112. The statements VSI has made in the "Assurance of Compatibility" constitute defamation and trade libel *per se*. Specifically, VSI falsely accuses Diomed of violating laws which, as a matter of law, are wholly inapplicable to the sale of commercial products such as the EVLT® System. The "Assurance" also contains false statements about the language of Diomed's limited warranty, which VSI then uses to support the false statement that Diomed has violated or intends to violate the antitrust laws.

113. By making these false statements, VSI has intentionally prejudiced Diomed by discrediting the business reputation of Diomed and the services it provides in connection with EVLT® products, a reputation which Diomed has worked hard to establish with its customers, physicians and other industry professionals and their patients.

114. VSI's false statements have caused and will continue to cause Diomed injury to its business reputation for which there is no adequate remedy at law, unless VSI is enjoined from continuing to include in its marketing materials the "Assurance of Compatibility" and from making similar false and intentionally disparaging statements concerning Diomed and the products and services it offers

115. As further relief for the false statements VSI has made to date, VSI should be required to retract the false statements it made in the "Assurance of Compatibility" by issuing a

- 25 -

public statement for publication in key trade and medical journals, in the next issue of the VSI Newsletter, in VSI's accessory kit product packages, on each web-site sponsored by VSI and at the same venues and in the same manner in which VSI distributed the "Assurance", and by sending a letter to each customer that has received a shipment of VSI's laser equipment, each in a form deemed appropriate by order of this Court.

## COUNT VI
### INJURIOUS FALSEHOOD AND COMMERCIAL DISPARAGEMENT

116. Diomed repeats and realleges the allegations contained in the paragraphs above as if fully set forth herein.

117. When VSI decided to use the false statements in the "Assurance of Compatability" in marketing its laser procedure kits, VSI intended those statements to harm the pecuniary interests of Diomed by attempting to sabotage Diomed's established business relationships and by luring away its customers of disposable laser accessories with false accusations that Diomed is violating the law.

118. VSI's actions were undertaken willfully and in reckless disregard for the truth about the absence of any legal violation by Diomed, a fact that was or should have been well-known to VSI's CEO, a law school graduate and former corporate attorney and in-house counsel.

119. For this additional reason, Diomed is entitled to the relief requested in Count V above.

## COUNT VII
### TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS

120. Diomed repeats and realleges the allegations contained in the paragraphs above as if fully set forth herein.

121. As VSI well knows from the confidential information Diomed relayed to Arnold during the course of due diligence, Diomed has expended considerable time and resources

developing a sizeable network of commercial customers that purchase and use the EVLT® products worldwide. Because a large portion of these customers have become regular purchasers of EVLT® products, particularly with respect to the disposable EVLT® Kits, Diomed had a reasonable expectation that those customers would continue to purchase EVLT® products from Diomed in the future.

122. Diomed also has expended and continues to expend considerable time and resources in marketing efforts intended to expand its existing customer base. Because of the quality and pricing of its EVLT® products, Diomed had a reasonable expectation that some of these prospective customers would purchase EVLT® products.

123. One of the advantages of purchasing EVLT® products over the products of any competitor, is the limited warranty and related warranty services Diomed provides with its EVLT® products.

124. At the time VSI began marketing its laser accessory kits with the "Assurance of Compatibility," VSI was well aware of existence and potential economic benefits to be derived from Diomed's existing and prospective customers of its EVLT® products. Since, at that time, VSI did not offer a laser console, it intentionally and improperly embarked on a false smear campaign regarding Diomed's warranty as a tactic for diverting Diomed customers to VSI.

125. Accordingly, VSI should be enjoined from further interference with Diomed's customer relationships.

## COUNT VIII
### TORTIOUS INTERFERENCE WITH CONTRACT

126. Diomed repeats and realleges the allegations contained in the paragraphs above as if fully set forth herein.

127. When VSI hired Arnold to head up its marketing efforts, VSI knew that that Diomed is one of the largest competitors in the disposable laser accessory kit market for the laser

treatment of varicose veins. As is evident from the call Arnold placed to Diomed's CEO shortly after she became heading of marketing for VSI, VSI also knew that Arnold, in her capacity as the former President of Laser Peripherals, was involved in the due diligence conducted in connection with the potential acquisition of Laser Peripherals and in that capacity, would have been given access to confidential information, such as Diomed's EVLT® Design Secrets and EVLT® Marketing Plans.

128.    VSI also knew or should have known, and in any event should be imputed to have known, that Arnold was bound by a confidentiality agreement of the type memorialized in the letter of intent and Diomed-LP NDA and of the contract of confidentiality that arose by implication from the nature of the relationship of Arnold, her former employer, and Diomed during the course of due diligence.

129.    When Diomed rejected Arnold's proposal that VSI become the distributor of Diomed's EVLT® products, VSI decided that it could achieve the same end result by intentionally and improperly interfering with the confidentiality agreement between Diomed and Arnold by soliciting and receiving information concerning Diomed's Trade Secrets and marketing plans.

130.    As a result of VSI's tortious interference with Diomed's existing and contractual relations with Diomed's customers and with Diomed's confidentiality agreement with Arnold, Diomed has suffered and will continue to suffer injury to its business relations, its property and its reputation, standing and competitive position in the marketplace. For this additional reason, Diomed is entitled to the relief set forth in Counts I and V above.

## COUNT IX
### BREACH OF NONDISCLOSURE AGREEMENT
### AGAINST NANCY L. ARNOLD

131. Diomed repeats and realleges the allegations contained in the paragraphs above as if fully set forth herein.

132. By signing the letter of intent individually and in her representative capacity, Arnold expressly agreed to continue to observe her obligations under the Diomed-LP NDA not to make unauthorized disclosures of Diomed's Trade Secrets and to use such information solely for the purpose of assisting her former employer in assessing whether to pursue a transaction with Diomed.

133. Once the parties decided not to proceed with the acquisition, Arnold no longer had any right to use any of the Trade Secrets Diomed had disclosed to her or to her employer in confidence. What is more, Arnold's obligation not to make unauthorized disclosures of Diomed's Confidential Information expressly survived the termination of the letter of intent.

134. Arnold also was bound by the agreement she made with Diomed's former CEO that she would treat as Confidential Information the highly confidential disclosures he made to her concerning Diomed's on-going development of, and marketing plans for, the Improved EVLT® System and in particular, the EVLT® Marked Sheath. From the circumstances surrounding that disclosure, as well as the other disclosures Diomed made concerning its Trade Secrets during the course of due diligence, Arnold knew that the information was being provided to her with the expectation that it would not be disclosed to third parties. By accepting receipt of Diomed's Trade Secrets, all of which were provided to her pursuant to the Diomed-LP NDA, were marked confidential or were provided to her with the express understanding that they would not be disclosed to third parties, Arnold manifested her agreement not to disclose any such information to third parties without Diomed's consent.

135. As is evident from the actions of VSI after Arnold was told that Diomed was not interested in having VSI be a manufacturer or distributor of EVLT® products and from the similarity between the features of Diomed's EVLT® Kit and the one VSI has recently launched, Arnold breached her confidentiality agreement with Diomed by making unauthorized disclosures to VSI concerning Diomed's on-going development of, and marketing plans for, the Improved EVLT® System, including the EVLT® Marked Sheath.

136. As a result of Arnold's breach of her duty of confidentiality, Diomed has suffered substantial injury to its business, property and standing and competitive position in the marketplace.

137. As a corporate insider and a willing participant in the misappropriation of Diomed's Trade Secrets, Arnold, like her employer, has been unjustly enriched by their unauthorized use. For this additional reason, Diomed is entitled to recover from Arnold, jointly and severally, the damages set forth in Count I above.

## COUNT X
### FEDERAL AND COMMON LAW UNFAIR COMPETITION

138. Diomed repeats and realleges the allegations contained in the paragraphs above as if fully set forth herein.

139. Since September 2002, when Diomed declined to accept VSI's offer to manufacture and distribute Diomed's EVLT® products, VSI and Arnold have engaged in a willful and wrongful course of conduct which constitutes unfair competition under 15 U.S.C. § 1125(a) and the common law of the Commonwealth of Massachusetts by:

    a. misappropriating Diomed's Trade Secrets and intentionally concealing that improper use until VSI was assured of being the first to market with technology similar to Diomed's EVLT® Marked Sheath;

      b.      infringing Diomed's registered EVLT® mark;

      c.      marketing VSI products in a way designed to confuse consumers as to the source and origin of VSI products and/or their association with Diomed's EVLT® products and services;

      d.      making false and defamatory statements about Diomed and its warranty;

      e.      tortiously interfering with Diomed's existing and prospective customer relationships; and

      f.      tortiously interfering with the confidentiality agreement between Arnold and Diomed by soliciting and using information Arnold was not authorized to disclose to VSI or any other third party.

140. Defendants' unfair competition has directly and/or proximately caused significant foreseeable and consequential harm to Diomed as described in detail hereinabove.

141. As a result, Diomed has been injured in its business and property. Accordingly, Diomed is entitled to the relief requested herein.

142. Because VSI has demonstrated a willingness to proceed in disregard of the rights of Diomed and to engage in deceptive conduct designed to keep Diomed from learning of VSI's wrongful use of Diomed's Trade Secrets, an order should issue appointing a monitor to ensure compliance with this Court's order.

## COUNT XI
### ACCOUNTING

143. Diomed repeats and realleges the allegations contained in the paragraphs above as if fully set forth herein.

144. Pursuant to 15 U.S.C. § 1117 and common law, Diomed is entitled to recover the greater of any and all profits derived by the defendants or the actual damages Diomed has sustained, as a result of defendants' wrongful acts.

145. The amount of profits derived by defendants is unknown to Diomed and cannot be ascertained without a full accounting of all net sales of the VSI procedure kits, together the profits or other remuneration defendants have made on all such sales, including all licensing fees, and any bonus, incentive compensation or other remuneration Arnold has received or is expected to receive as a result of such sales.

## COUNT XII
### UNFAIR AND DECEPTIVE TRADE PRACTICES UNDER MASS. GEN. L. CH. 93A

146. Plaintiffs hereby repeat the allegations set forth in the paragraphs above as if fully set forth herein.

147. Defendants are, and were at all relevant times, engaged in commerce.

148. While defendants' acts and/or omissions described herein occurred in a variety of locations both nationwide and worldwide, their impact was felt on Diomed, a Massachusetts-based company, such that their center of gravity is primarily and substantially in the Commonwealth.

149. Defendants' acts and/or omissions as described hereinabove, constituted unfair and deceptive acts and practices in violation of Mass. Gen. L. ch. 93A.

150. Defendants' acts and/or omissions were, as described hereinabove, were willful and knowing.

### PRAYER FOR RELIEF

WHEREFORE, Diomed respectfully requests that this Court enter a judgment granting Diomed the following relief:

1. Requiring defendants to provide Diomed with a full and complete accounting of all net sales of VSI procedure kits, together with an accounting of all profits and other remuneration defendants have derived, or expect to derive, from the sale of the VSI procedure kits;

2. Directing defendants to pay, jointly and severally, damages in an amount not less than the greater of (a) the losses Diomed has suffered as a result of defendants' misappropriation of Diomed's trade secrets; or (b) the profits defendants have made from the sale of the VSI kits;

3. Awarding Diomed punitive damages as a deterrent to future unfair and deceptive practices;

4. Issuing an injunction enjoining VSI and each of its officers, directors, employees and other agents (collectively, the "VSI Entities") from manufacturing, marketing, selling or distributing developing, and distributing any procedure kits containing marked sheaths at least until the patent has issued on Diomed's Improved EVLT® Sheath or, at a minimum, for a period of at least nine months, as a deterrent against future unfair competitive practices (the "Injunction");

5. During the pendency of the Injunction, prohibiting each of the VSI Entities from entering into any licensing agreement with any third party for the manufacturing, marketing, sale or distribution of a substitute procedure kit, except upon such terms and conditions as may be approved by this Court after notice to Diomed;

6. Issuing a permanent injunction enjoining each of the VSI Entities from:

   a. using ELT or Endovenous Laser Therapy in connection with the sale of any product or service sold or offered by VSI or otherwise linking them with EVLT® or the EVLT® Clinical Studies;

   b. using any false designation of origin or false description which can or is likely to lead Diomed's customers, physicians or other industry professionals, or the public

to believe mistakenly that any product or service sold or offered by VSI has been sponsored, authorized or approved by Diomed as meeting the quality and physical properties associated with Diomed's EVLT® products, including without limitation, the use of any aspect of the EVLT® Clinical Studies in manner which suggests that the results described therein pertain in any way to VSI or any of it products;

c.  using any false advertising in connection with any products or services offered or sold by VSI concerning Diomed, its warranty or any of Diomed's EVLT® products, including without limitation the "Assurance of Compatibility";

d.  interfering with Diomed's existing and prospective customers; and

e.  assisting, aiding or abetting any other person or business entity in engaging in or performing any of the activities prohibited in subparagraph a-d above;

7.  Requiring VSI to retract the false statements it made in the "Assurance of Compatability" by issuing a public statement for publication in key trade and medical journals, in the VSI Newsletter, in the accessory kit product packages, on VSI's web-site and at the same venues and in the same manner in which VSI distributed the "Assurance", and by sending a letter to each customer that has received a shipment of VSI's laser equipment, each in a form deemed appropriate by order of this Court after notice to Diomed;

7.  Appointing a monitor to ensure VSI's compliance with the foregoing;

8.  Requiring defendants to pay, jointly and severally, all reasonable attorneys' fees, expenses and costs incurred by Diomed in this action;

9.  Requiring defendants to pay Diomed multiple damages as permitted by law, including treble damages pursuant to Mass. Gen. L. ch. 93A; and

10. Such other and further relief as the Court deems just and appropriate.

Dated: December 11, 2003

Respectfully submitted,

*[signature]*

Michael A. Albert (BBO #558566)
James J. Foster (BBO #553285)
Michael N. Rader (BBO #646990)
Wolf, Greenfield & Sacks, P.C.
600 Atlantic Avenue
Boston, MA  02210
(617) 720-3500

*Attorneys for Plaintiffs Diomed Inc.,
Diomed Holdings Inc. and Diomed Limited*

Of Counsel:

Hollis Gonerka Bart
McGuireWoods LLP
65 E. 55th Street
New York, New York 10022
(212) 421-5555