IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

DIOMED INC., DIOMED
HOLDINGS INC. and DIOMED
LIMITED,

      Plaintiffs,

v.

VASCULAR SOLUTIONS, INC.
and NANCY L. ARNOLD,

      Defendants.

Civil Action No. 03 CV 12498 RWZ

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS OR TRANSFER**

## INTRODUCTION

Defendants Vascular Solutions, Inc. ("VSI") and Nancy Arnold move to dismiss Diomed's[1] Complaint for lack of personal jurisdiction over Nancy Arnold, an indispensable party. Alternatively, Defendants request that the Court dismiss or transfer the action due to improper venue. Arnold has no contacts with Massachusetts. Diomed's claims against Arnold, and the bulk of its claims against VSI, are based on Arnold's alleged breach of a nondisclosure agreement between Diomed and Arnold's former employer, Laser Peripherals, LLC, ("Laser Peripherals") a Minnesota company. That agreement specifies that it was "made in" Minnesota and is governed by Minnesota law.[2] Declaration of Nancy Arnold ("Arnold Dec.") Ex. 1, ¶ 15. Moreover, Diomed's claims are based on events in Minnesota, as they turn on whether Diomed trade secrets were disclosed to and used by Arnold's current Minnesota employer, VSI, in

---

[1] Plaintiffs' Complaint refers to Diomed Inc., Diomed Holdings Inc., and Diomed Ltd. collectively as "Diomed." Defendants will do so also, except when necessary to distinguish among the Diomed entities.

[2] The agreement also requires that "any dispute or claim for damage under this agreement" be arbitrated in Minneapolis, Minnesota. Arnold Dec. Ex. 1, ¶ 15. Should this Court deny Defendants' motion, we would expect to have a discussion with Diomed's counsel about where and how this action should proceed.

Minnesota. This Court should therefore dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(2) and 19(b), because it lacks personal jurisdiction over Arnold and she is an indispensable party. Because venue is also improper, this Court should dismiss the action pursuant to Fed. R. Civ. P. 12(b)(3) and 28 U.S.C. § 1391(b) or transfer it to Minnesota under 28 U.S.C. § 1406(a).

## STATEMENT OF THE CASE

### I. DIOMED AND VSI.

Plaintiff Diomed Holdings Inc. is a Delaware company and the parent company of Diomed Inc., a Delaware company, and Diomed Ltd., a UK company. Diomed Inc. and Diomed Holdings Inc. are based in Massachusetts, and Diomed Ltd. is based in Cambridge, England. Complaint ¶¶ 3-5. Diomed Ltd., as the holder of an alleged patent application related to the "marked sheath," apparently owns the alleged trade secret. Complaint ¶ 5. Diomed Holdings is the named party to the non-disclosure agreement. Complaint ¶ 4.

VSI is a Minnesota company. Diomed and VSI are two of five companies selling kits for endovenous laser therapy, a procedure for treating varicose veins. VSI uses the trademark Vari-Lase™ for its kit, introduced in July 2003. Diomed sells its kit using the trademark EVLT®.[3] Diomed's kit was first sold in January 2002.

### II. FACTS RELEVANT TO JURISDICTION AND VENUE.

#### A. NANCY ARNOLD'S LACK OF CONTACTS WITH MASSACHUSETTS.

Nancy Arnold is a lifelong Minnesotan. She was in Massachusetts once on vacation nearly ten years ago. She also may have attended one trade show in Massachusetts for a former employer several years ago. She owns no property in Massachusetts and has never transacted any business there. Arnold Dec. ¶¶ 3-4.

---

[3] Three other companies sell endovenous laser therapy kits: AngioDynamics, Inc. sells a kit it calls the ELVS™ kit; Biolitec, Inc. sells an ELVS™ kit; and Dornier Med Tech sells an ELAS™ kit.

2

### B.  NANCY ARNOLD'S DEALINGS WITH DIOMED.

Arnold is the former President of Laser Peripherals, a Minnesota company that sells laser fibers. Diomed considered acquiring Laser Peripherals in 2002. Arnold Dec. ¶¶ 8-9; Complaint ¶ 24. Diomed alleges that Peter Klein, Diomed's President, disclosed to Arnold Diomed's alleged plans to improve its EVLT® kit by using a "marked sheath" as well as other trade secrets described only generally in the Complaint. Complaint ¶¶ 29-40. Arnold denies that Klein disclosed the "marked sheath" to her; she also denies ever disclosing or using any Diomed trade secrets. Arnold Dec. ¶¶ 6, 14-15. Furthermore, there was no reason for Klein to discuss Diomed's alleged "marked sheath" with Arnold, because Laser Peripherals did not make sheaths and had no plans to do so. Arnold Dec. ¶¶ 14-15. Most importantly, VSI had been using a marked sheath in another product years before Diomed's alleged "trade secret" and simply used that sheath in the design of its Vari-Lase product. Arnold Dec. ¶ 16.

Several additional facts merit mention here:

1) Diomed wanted to buy Laser Peripherals, not *vice versa*. Diomed initiated the contact with Laser Peripherals in Minnesota, and Diomed personnel traveled to Minnesota at least three times to conduct due diligence. Arnold Dec. ¶¶ 7, 12.

2) Arnold never traveled to Massachusetts in the course of her dealings with Diomed. Arnold Dec. ¶ 13.

3) The non-disclosure agreement between Laser Peripherals and Diomed states:

> This Agreement is made in and shall be interpreted in accordance with the laws of the State of Minnesota. Any dispute or claim for damages under this agreement shall be resolved pursuant to the rules of the American Arbitration Association with Arbitration to be held in the city of Minneapolis, Minnesota. Arnold Dec. Ex. 1, ¶ 15.[4]

---

[4] Although Diomed quoted extensively from the non-disclosure agreement (see, e.g., Complaint ¶ 8) it did not include a copy with its fifty (50) pages of exhibits.

4) The letter of intent signed by Arnold states that the parties agree to be bound by the terms of the non-disclosure agreement, and the letter of intent incorporates its terms. Arnold Dec. Ex. 2, ¶ X.

5) Arnold had no dealings with Diomed other than in her official capacity as the President of Laser Peripherals. Arnold Dec. ¶ 5.

### III. DIOMED'S COMPLAINT.

The relevant allegations and claims of Diomed's Complaint can be briefly summarized. The core of Diomed's Complaint is the allegation that Arnold breached the non-disclosure agreement and disclosed Diomed's alleged "marked sheath" trade secret and other unspecified trade secrets to VSI. Complaint ¶¶ 24-48 and Count I. According to Diomed, VSI and Arnold, after being spurned as a potential distributor by Diomed, used Diomed's "trade secrets" to develop VSI's Vari-Lase™ kit and to jointly embark on a "deliberate campaign" of unfair competition involving misappropriation of trade secrets, infringement of Diomed's EVLT® mark, and false advertising.[5] Complaint ¶¶ 2, 41-48, and Count X. Although the Complaint is silent on the point, the alleged disclosure and use of Diomed trade secrets by Arnold and VSI, and their alleged "campaign" of unfair competition, took place, if at all, in Minnesota. The Complaint is also silent on the basis for personal jurisdiction over Arnold.

### ARGUMENT

### I. THIS COURT SHOULD DISMISS, BECAUSE IT LACKS PERSONAL JURISDICTION OVER NANCY ARNOLD, AN INDISPENSABLE PARTY.

Diomed has the burden to show that: 1) the Massachusetts long-arm statute grants jurisdiction over Arnold; *and* 2) exercising jurisdiction will satisfy due process. Barrett v.

---

[5] This motion is not the place to debate the merits, but VSI and Arnold want the Court to know that they hotly dispute Diomed's claims.

4

Lombardi, 239 F.3d 23, 26 (1st Cir. 2001). Diomed cannot satisfy either of these two conditions under even the simplest "prima facie" analysis.[6] The "prima facie" method of analysis "permits the district court to consider only whether the plaintiff has proffered evidence that, if credited, is enough to support findings of all facts essential to personal jurisdiction." Foster-Miller, Inc. v. Babcock & Wilcox Canada, 46 F.3d 138, 145 (1st Cir. 1995)(citations omitted). Under this approach, "the plaintiff must do more than simply surmise the existence of a favorable factual scenario; he must verify the facts alleged through materials of evidentiary quality." Barrett, 239 F.3d at 27. Furthermore, the Court is not required "to 'credit conclusory allegations or draw farfetched inferences.'" Mass. School of Law at Andover, Inc. v. Amer. Bar Ass'n, 142 F.3d 26, 34 (1st Cir. 1998), quoting Ticketmaster, Inc. v. Alioto, 26 F.3d 201, 203 (1st Cir. 1994).

Diomed fails the prima facie test because Arnold has no relevant contacts with Massachusetts, and the claims against her arise solely out of acts alleged to have taken place in Minnesota in violation of an agreement governed by Minnesota law. Diomed therefore cannot satisfy Massachusetts' long arm statute, M.G.L. c. 223A, § 3 (hereinafter "Section 3" or "§ 3"), or the requirements of due process under the Constitution.

---

[6] If the Court finds that the prima facie test is insufficient, it may order discovery and hold a hearing. See Foster-Miller, 46 F.3d at 145. Defendants believe the issue is so clear that discovery is unnecessary.

### A. ARNOLD IS NOT SUBJECT TO JURISDICTION UNDER MASSACHUSETTS'S LONG- ARM STATUTE.

#### 1. Arnold is not subject to jurisdiction under Section 3a.

Section 3a of the Massachusetts long-arm statute allows the Court to exercise personal jurisdiction over claims "arising from the person's (a) transacting any business in this commonwealth." Section 3a thus requires that the defendant "transact business" in Massachusetts and that the claims "arise" from that transaction of business. Neither aspect of Section 3a is met here, because Arnold has never transacted business personally in Massachusetts, and the claims asserted against her arise from acts alleged to have taken place in Minnesota, not Massachusetts.

Although "transacting business" has been interpreted as broadly as to mean "participat[ing] in the forum's economic life", Foster-Miller, 46 F.3d at 144, its purpose is to "identify deliberate, as distinguished from fortuitous, contacts with the forum by the nonresident party . . . . with a view to determining whether 'the possible need to invoke the benefits and protections of the forum's laws was reasonably foreseeable . . . .'" Lyle Richards Int., Ltd. v. Ashworth, Inc., 132 F.3d 111, 112-13 (1st Cir. 1997) (internal citations omitted).

Arnold does not satisfy either the purpose or the broadest definition of the phrase "transacting business." First, Arnold has never personally conducted business in Massachusetts and has had no personal contact with the state other than a vacation several years ago. Arnold Dec. ¶ 4. Second, the few professional contacts her previous employer, Laser Peripherals, had with Diomed cannot be imputed to Arnold. As a general principle, contacts solely on behalf of a company are not enough. Escude Cruz v. Ortho Pharmaceutical Corp., 619 F.2d 902, 906 (1st Cir. 1980) (affirming the district court's ruling that officers of a foreign corporation whose only contacts with the forum were on behalf of the corporation lacked the requisite contacts). "There must be an independent basis for asserting long-arm jurisdiction" over Arnold. Id.; see also

6

Mass. Sch. of Law, 142 F.3d at 34 (affirming a decision to dismiss for lack of personal jurisdiction individual members of the American Bar Association's review board whose only contact with Massachusetts was through their positions on the board).

Third, even if Laser Peripherals' contacts were sufficient, they were initiated by Diomed, not Arnold. "[T]he 'transacting business' test is importantly informed by ascertaining whether the nonresident party initiated or solicited the business transaction in Massachusetts." Lyle Richards Int., Ltd., 132 F.3d at 113. Diomed initiated contact with Arnold through her former company, Laser Peripherals, by offering to purchase Laser Peripherals. Arnold Dec. at ¶¶ 7-8.

Fourth, the contacts Arnold had with Diomed as President of Laser Peripherals are irrelevant, because the claims against her *arise* out of her alleged disclosure of Diomed trade secrets to VSI *in Minnesota*.

### 2.     Arnold is not subject to jurisdiction under Section 3d.

Section 3d of the Massachusetts long-arm statute grants jurisdiction over claims arising from a person:

> (d)     causing tortious injury in this commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth.

M.G.L. c. 223A, § 3.

Arnold meets none of the criteria of Section 3d. First, Arnold denies that she has made any act or omission causing injury to Diomed. She never learned of Diomed's alleged marked sheath and therefore never disclosed this information to anyone. Arnold Dec. ¶ 6. Second, Arnold has never conducted or solicited business in Massachusetts, has never engaged in any persistent course of conduct in Massachusetts, and has not derived any revenue from goods used or consumed or services rendered in Massachusetts. Arnold has had no personal contacts with

7

Massachusetts for years. Only as an officer of Laser Peripherals has she had contacts with entities located in Massachusetts, and, as discussed above, those contacts alone are not enough.

### B. EXERCISING PERSONAL JURISDICTION OVER ARNOLD VIOLATES DUE PROCESS.

Diomed also bears the burden of proving that the Court's exercise of jurisdiction over Arnold would not violate her right to due process. Diomed cannot argue that "general" jurisdiction exists over Arnold, because she has not "engaged in systematic and continuous activity" in Massachusetts. Mass. Sch. of Law, 142 F.3d at 34. Diomed must therefore claim the Court has "specific" jurisdiction over Arnold, which exists when there is a demonstrable nexus between a plaintiff's claims and a defendant's forum-based activities. Id. Under the test for specific jurisdiction, Diomed must prove "three distinct components, namely, relatedness, purposeful availment...and reasonableness." Id. at 35, quoting Foster-Miller, 46 F.3d at 147.

"Relatedness" requires that the claims "arise out of, or be related to, defendant's in-forum activities." Id. For the breach of contract claims, the Court "must look to the elements of the cause of action and ask whether [Arnold's] contacts with the forum state were instrumental either in the formation of the contract or in its breach" to satisfy the relatedness requirement. Phillips Exeter Acad. v. Howard Phillips Fund, 196 F.3d 284, 289 (1st Cir. 1999) (citations omitted).

Arnold's sparse contacts with Massachusetts had nothing to do with the formation of the non-disclosure agreement or Arnold's alleged breach of that agreement. The agreement recites that it was "made in Minnesota," not Massachusetts. Arnold Dec. Ex. 1 ¶ 15. The claimed breach of the agreement, as discussed above, is based on Diomed's allegation that Arnold disclosed trade secrets to a Minnesota company in Minnesota.

For tort claims, courts "customarily look to whether the plaintiff has established 'cause in fact' (i.e., the injury would not have occurred 'but for' the defendant's forum-state activity) and legal cause (i.e., the defendant's in-state conduct gave birth to the cause of action)." Mass. Sch.

8

of Law, 142 F.3d at 35, quoting United Elec., Radio & Mach. Workers v. 163 Pleasant St. Corp., 960 F.2d 1080, 1098 (1st Cir. 1992)).

Neither of these criteria are met. There is no cause in fact or legal cause arising from Arnold's contacts with Massachusetts. As discussed above, the alleged trade secrets were disclosed to Arnold in Minnesota, pursuant to a contract made in Minnesota, and the alleged disclosure and use also took place in Minnesota. Diomed cannot allege that any of Arnold's activity took place in Massachusetts, because she has not been there in years.

Although in Calder v. Jones, 465 U.S. 783 (1984), the Supreme Court held that the *effects* of a tort in the forum state could satisfy the contacts requirement of due process, Calder does not apply here. Calder involved a defamation claim against two Florida-based journalists who wrote an allegedly libelous article about an entertainer in California which was published in California. The Court held that California had personal jurisdiction over the journalists, even though they lacked contacts with the state, solely because they purposefully directed the article at California and the entertainer was injured in California. Id. at 789.

The First Circuit has held that Calder's "effects test" is "designed for use in a defamation case" and may never have been "intended to apply to numerous other torts." United States v. Swiss American Bank, Ltd., 274 F.3d 610, 624 (1st Cir. 2001). Furthermore, the test is only relevant for gauging the second component, "purposeful availment," and is only "applied after the relatedness prong has already been satisfied." Id. at 623. It cannot be used to strengthen a relatedness showing. Id. at 624.

Purposeful availment, the second component, requires Diomed to prove that Arnold's contacts with Massachusetts "represent a purposeful availment of the privilege of conducting activities in [Massachusetts], thereby invoking the benefits and protections of [its] laws and making the defendant's involuntary presence before [the Massachusetts] court foreseeable."

9

Mass. Sch. of Law, 142 F.3d at 36. Arnold did nothing to "purposefully avail" herself of Massachusetts law, and she conducted no activities there. Indeed, Arnold and Laser Peripherals sought to insure they had the protection of Minnesota, not Massachusetts, law by including in the non-disclosure agreement a provision selecting Minnesota law. Under these circumstances, Arnold rightly believed that if a dispute arose relating to the information she obtained while assisting Diomed in its due diligence, she would be before an arbitrator in Minneapolis, not a federal judge in Boston.

Because the "relatedness" and "purposeful availment" factors are so clearly not satisfied, there is no need for extended discussion of the "reasonableness" factors. The hallmark of "reasonableness" in this context is "fair play and substantial justice." Foster-Miller, 46 F.3d at 150, citing Int'l Shoe Co. v. Washington, 326 U.S. 310, 320 (1945). It would not be reasonable to subject Arnold to Massachusetts jurisdiction, when she has no relevant contact with the state.

### C. THE COURT SHOULD DISMISS THE CASE BECAUSE ARNOLD IS AN INDISPENSABLE PARTY.

#### 1. Arnold is a "necessary party."

The first step in determining whether a party is indispensable is to assess whether a party is a "necessary" party under Fed. R. Civ. P. 19(a). A court determines whether a party is necessary based on the pleadings at the time the motion is brought. 4 James Wm. Moore, et al, Moore's Federal Practice § 19.02(4)(b)(iii) (3d ed. 2003) (hereinafter "Moore's"). To be necessary to the litigation, the party must meet *one* of the following criteria:

(1) "complete relief cannot be accorded among those already parties";

(2) the absent party "claims an interest relating to the subject of the action", and the party's absence will either (i) impair or impede the party's ability to protect that interest or (ii) leave the other parties to the suit subject to substantial risk of multiple or inconsistent obligations. Fed. R. Civ. P. 19(a).

Arnold's absence from this action triggers the above criteria. The Court cannot grant complete relief without Arnold. Diomed accuses Arnold of instigating a plot to deprive Diomed of its commercial advantage for the EVLT kit, implying that she joined VSI with the purpose of using Diomed's trade secret information to create a copy-cat product. Complaint ¶¶ 10-11. Diomed seeks damages and an injunction against Arnold. Without Arnold as a party, a judgment awarding damages against VSI and enjoining only VSI would be partial relief.

Arnold also has an interest in this lawsuit which will be impaired if she is not a party. Many of Diomed's claims stem from one factual accusation: that Arnold breached the non-disclosure agreement and disclosed trade secret information belonging to Diomed. Diomed has alleged that Arnold is the sole source of the information used by VSI to obtain an unfair competitive advantage. If the litigation establishes that VSI in fact misappropriated Diomed's trade secrets, it can only be based on a finding that Arnold disclosed this information and breached the non-disclosure agreement. "Although [Arnold] would not be bound by the judgment in federal court, an adverse ruling could, as a practical matter, impair [her] probability of success in a future proceeding and reduce [her] ability to reach a favorable settlement." Gonzalez v. Cruz, 926 F.2d 1, 6 (1st Cir. 1991).

### 2. Arnold cannot be joined.

Under Fed. R. Civ. P. 19(a), if a court determines a party is necessary, it next must determine whether that party can be joined as a party. In this case, Arnold cannot be a party, because this Court lacks personal jurisdiction over her and venue is improper.

### 3. Arnold is an indispensable party.

Lastly, the Court should consider whether, "in equity and good conscience," it should proceed with the case without the absent party or dismiss the matter. Provident Tradesmen's Bank & Trust Co., Admin. v. Patterson, Admin., 390 U.S. 102, 109 (1968) (hereinafter

"Provident"). Rule 19(b) requires consideration of four factors: 1) "to what extent a judgment rendered in [Arnold's] absence might be prejudicial to [Arnold] or those already parties"; 2) "the extent to which, by protective provisions in the judgment, by shaping relief, or other measures, the prejudice can be lessened or avoided"; 3) "whether a judgment rendered in the person's absence will be adequate"; and 4) "whether the plaintiff will have an adequate remedy if the action is dismissed." Fed. R. Civ. P. 19(b). These factors are overlapping and are not exclusive. Fed. R. Civ. P. 19(b) advisory committee's note. Moreover, they are not intended to be a rigid test and must be examined in the "context of particular litigation." Provident, 390 U.S. at 118.

This is not the typical Rule 19(b) case, where a defendant is arguing that an *absent* party is indispensable, over the plaintiff's opposition. In this case, Diomed sued Arnold and obviously agrees that Arnold needs to be a party to this lawsuit; Defendants will be very surprised if Diomed advocates proceeding without Arnold. Indeed, Diomed based its Complaint upon its accusations against Arnold. The Court need look no further than that Complaint to decide that Arnold is an indispensable party under Rule 19(b).

The core of Diomed's claims is its allegation that Arnold breached a non-disclosure agreement with Diomed, by disclosing Diomed trade secrets to VSI, and that VSI subsequently used those trade secrets to make its Vari-Lase™ kit and compete unfairly with Diomed. Arnold is the *only* party to that core claim of breach of contract. It is that claim - that Arnold breached the non-disclosure agreement - that provides the essential predicate for many of Diomed's other claims. It is also that claim that forms the basis for Diomed's contention that Arnold and VSI embarked on a "deliberate campaign" of "unfair competition," which included the misappropriation of Diomed trade secrets, tortious interference with Diomed's customers, false advertising, and trademark infringement.

12

Given the centrality of the allegations and claims against Arnold to Diomed's Complaint, this Court should dismiss the entire case pursuant to Fed. R. Civ. P. 19(b). Diomed has an adequate alternative remedy: the District of Minnesota can assert jurisdiction over all parties and grant complete relief resolving the entire controversy. That is a far superior alternative to piecemeal litigation, with claims against Arnold proceeding in Minnesota while this Court proceeds on the same claims against VSI. Proceeding to judgment in Massachusetts, without Arnold, would be very prejudicial to her; it is Nancy Arnold's reputation and conduct that is at stake here, and any finding in this action would severely impair her rights and interests in any subsequent or parallel proceeding. Proceeding without Arnold would also be very prejudicial and unfair to VSI (and to Diomed for that matter), as it would expose VSI to the cost and expense of duplicative litigation and the possibility of inconsistent results. The prejudice cannot be avoided—the prejudice is simply unavoidable if the same controversy is proceeding in two courts at the same time. Finally, as noted above, any "judgment" rendered without Arnold as a party will not be adequate. Diomed seeks both damages and injunctive relief against Arnold and cannot obtain either unless she is a party.

## II. THE COURT SHOULD DIMISS OR TRANSFER THE CASE BECAUSE VENUE IS IMPROPER

Diomed must also prove that this judicial district is the proper venue. The tests for jurisdiction and venue are not the same. Johnson Creative Arts, Inc. v. Wool Masters, Inc., 743 F.2d 947, 952 (1st Cir. 1984). Venue concerns *where* a case should be heard and is designed "to protect the defendant against the risk that a plaintiff will select an unfair or inconvenient place of trial." Leroy v. Great Western United Corp., 443 U.S. 173, 183-84 (1979). The fact that a court determines it is "fair" to exercise personal jurisdiction over a defendant does not necessarily mean that it is fair to hold the trial there. Johnson Creative Arts, Inc., 743 F.2d at 952.

13

Jurisdiction in this case is not founded solely on diversity, so the Court must apply the narrower venue statute, 28 U.S.C. § 1391(b). Section 1391(b) states that venue is proper only in:

> (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(b) (2003). Venue must be proper for each claim. General Bedding Corp. v. Angel Echevarria, 714 F.Supp 1142, 1144 (D. Kan. 1989).

Diomed cannot satisfy any of these requirements. Although the Complaint is not always entirely clear on the point, Diomed has asserted at least four claims against Arnold:

Count I:   Arnold and VSI misappropriated Diomed trade secrets obtained under the non-disclosure agreement;

Count IX:  Arnold breached the non-disclosure agreement;

Count X:   VSI and Arnold have engaged in unfair competition against Diomed by, among other things, misappropriating trade secrets, interfering with Diomed's business relationships with its customers, and violating the non-disclosure agreement; and

Count XII: VSI and Arnold have engaged in unfair competition against Diomed under Massachusetts law by the acts alleged in the Complaint, presumably including, among other things, misappropriating trade secrets, interfering with Diomed's business relationships with its customers, and violating the non-disclosure agreement.

Section 1391(b)(1) is not satisfied for any of the above claims because not all defendants are residents of Massachusetts. "Resident" in this context means citizen or domiciliary of the state. Schultz v. McAfee, 160 F.Supp 210, 212 (D. Me. 1958). As discussed above, Ms. Arnold is a resident of Minnesota. In addition, § 1391(b)(3) cannot apply because venue would be proper in Minnesota; Ms. Arnold is a Minnesotan, and VSI is a Minnesota company. Third, as

14

described in greater detail below, § 1391(b)(2) cannot apply because the substantial part of the alleged events and omissions occurred outside of Massachusetts.

In assessing where a substantial part of the alleged events and omissions occurred, courts should consider the weight of the events or omissions with relation to the claim and jurisdiction. Charles Alan Wright, Fed. Practice and Procedure, Jurisdiction § 3806 (2d ed. 1986). This Court has considered the location of decisions, actions and alleged wrongs pertaining to a claim to determine the jurisdiction where substantially all of the acts or omissions took place. Guest Quarters Hotels Ltd. P'ship v. Kaufman, 1990 WL 98407 at *2 (D. Mass. 1990).

For all of the above claims, the factors discussed in Guest Quarters point to Minnesota not Massachusetts as the proper venue.[7] All of VSI's employees, except for some sales staff, reside in Minnesota, and Ms. Arnold has resided in Minnesota for her entire life. Thus, all of the decisions regarding alleged disclosure and use of trade secrets happened in Minnesota. In addition, all of defendants' actions with respect to alleged unfair trade practices and trade secrets would have been taken in Minnesota. Any claim based on the non-disclosure agreement is governed by Minnesota law. But perhaps most importantly, no events or omissions occurred in Massachusetts. Ms. Arnold has not been to Massachusetts in many years, and VSI has no offices or employees in Massachusetts. The only factor tying these claims to Massachusetts is that two

---

[7] None of these claims pertain to "property" in the sense contemplated by § 1391(b). The comments to § 1391(a)(2), which is the same as § 1391(b)(2), state that the "property" clause is an alternative, permitting venue to be grounded on the physical presence of property in a district when the property is the subject of the suit. Cases involving intangible property, such as patents, trademarks and trade secrets, are analyzed under the first clause of (b)(2). See, e.g., Cotton Transmission Systems, Inc. v. Martino, 36 F.3d 291, 295 (3rd Cir. 1994) (stating that the focus of assessing venue for a trademark claim is the location of the alleged misuse); Johnson Creative Arts, Inc. v. Wool Masters, Inc., 573 F.Supp. 1106 (D. Mass. 1983) (analyzing venue for a trade secret claim strictly with regard to events and omissions); and Drayton Enter., LLC v. Dunker, 142 F.Supp.2d 1177 (D. N.D. 2001) (applying the first clause of (b)(2) to misappropriation of trade secrets claims under facts similar to this case). Moreover, according to plaintiffs, Diomed Ltd, a UK company, owns the relevant patent application and, presumably, the trade secret.

15

of the three Diomed entities are located in Massachusetts, and that is not enough. Leroy, 443 U.S. at 185.

The most efficient solution to the venue problem is for the Court to transfer the entire case to the District of Minnesota pursuant to the Court's authority to cure defects in venue under 28 U.S.C. § 1406(a). "Where venue is appropriate as to some defendants but not as to others, courts prefer a transfer to an appropriate venue over severance of the case." Celsion Corp. v. Stearns Mgmt. Corp., 2001WL55456 (D. Md. 2001). This is particularly true in cases such as this where the claims are intertwined. In Lighting Systems, Inc. v. Int'l Merch. Assoc., 464 F.Supp. 601 (W.D. Penn. 1979), the court determined that venue was improper for a patent infringement claim and that the claim had to be transferred to another jurisdiction. In determining whether to retain jurisdiction over the remaining related claims of unfair competition, misappropriation of trade secrets and breach of a confidential relationship, the court held that severing the patent infringement claim would be "absurd" and would lead to "intolerable judicial inefficiency" and the possibility of inconsistent results. Id. at 606.

The same negative results would occur here. Moreover, transferring the action to Minnesota would have the additional benefit of placing the claims pertaining to the non-disclosure agreement in a jurisdiction that could compel arbitration,[8] should Arnold decide to make such a motion. Faced with the prospect of piecemeal litigation on these claims, defendants believe the clear choice is to transfer the entire action to Minnesota pursuant to 28 U.S.C. § 1406(a).

---

[8] "A federal court may only order arbitration in the district in which it sits." Dempsey v. George S. May Int'l Co., 933 F.Supp. 72, 75 (D. Mass. 1996).

16

## CONCLUSION

For the reasons cited above, Defendants respectfully request that the Court:

1) Dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(2) and 19 for lack of personal jurisdiction over Nancy Arnold, an indispensable party; and

2) Dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(3) and 28 U.S.C. § 1391(b) for improper venue, or, in the alternative, transfer the case to Minnesota pursuant to 28 U.S.C. § 1406(a).

          Respectfully submitted:

          VASCULAR SOLUTIONS, INC.
          AND NANCY L. ARNOLD

          By their Attorneys,

          */s/ Steven L. Feldman*
          Steven L. Feldman (BBO #162290)
          slf@riw.com
          John R. Bauer (BBO #630742)
          jrb@riw.com
          Ruberto, Israel & Weiner, P.C.,
          100 North Washington Street
          Boston, MA 02114
          (617) 742-4200

          J. Thomas Vitt
          vitt.thomas@dorseylaw.com
          Todd R. Trumpold
          trumpold.todd@dorseylaw.com
          Dorsey & Whitney LLP
          Suite 1500
          50 South Sixth Street
          Minneapolis, MN 55402-1498
          (612) 340-5675
          (Applications for *pro hac vice* admissions pending)

Dated: January 26, 2004

## CERTIFICATE OF SERVICE

I, Steven L. Feldman, hereby certify that on January 26, 2004, I caused to be served by hand upon the attorneys of record for the Plaintiff a true copy of the above document.

_____
Steven L. Feldman

U:\JRB\Vascular Solutions\Pleadings\Memo in Support of Motion to Dismiss or Transfer.doc