UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DIOMED INC., DIOMED
HOLDINGS INC. and DIOMED
LIMITED,

        Plaintiffs,

v.

VASCULAR SOLUTIONS, INC.
and NANCY L. ARNOLD,

        Defendants.

Civil Action No. 03 CV 12498RWZ

**DECLARATION OF
NANCY ARNOLD**

I, Nancy Arnold, declare as follows:

1. I am the Senior Director of Marketing and Business Development for Vascular Solutions, Inc. ("VSI"). I joined VSI on September 16, 2002 as the Director of Business Development. I was promoted to my current position on March 14, 2003. I offer this Declaration in connection with Defendants' Motion to Dismiss.

2. From November 11, 1994 to September 13, 2002, I worked for Laser Peripherals, LLC. I served as the President of Laser Peripherals from 1995 until I left the company. I also had a 3% ownership interest in Laser Peripherals, which I sold after I left the company. During my time at Laser Peripherals, Laser Peripherals manufactured and distributed laser fiber optics for use in medical applications. A general description of Laser Peripherals' products can be found at its website, http://www2.pro-ns.net/~afurst/.

3. I live in Andover, Minnesota. I have lived and worked in Minnesota my entire life.

4. I do not have any personal business contacts with Massachusetts. I do not

own any property in Massachusetts. I have never transacted any business personally in Massachusetts. I visited Massachusetts once on vacation nearly ten years ago. I do not remember ever traveling to Massachusetts for my employers, though it is possible that I attended one trade show there years ago for Laser Peripherals or SciMed Life Systems.

5. Laser Peripherals sold laser fibers to Diomed during the last 2-3 years of my time at the company. In my official capacity as President of Laser Peripherals, I would occasionally have telephone calls and exchange correspondence with Diomed personnel in Massachusetts and in the United Kingdom. I never traveled to Massachusetts or the United Kingdom to visit Diomed. To the best of my recollection, my contacts with Diomed personnel are the only business contacts I have ever had with Massachusetts residents. All of those contacts were in my capacity as the President of Laser Peripherals.

6. I have reviewed the allegations of Diomed's Complaint. I have never disclosed any Diomed trade secrets or confidential information to VSI, and Diomed's claims are false. I will explain briefly here the general course of the dealings between Diomed and Laser Peripherals.

7. Peter Klein, who was then the Chief Executive Officer of Diomed, came to Minnesota to visit Laser Peripherals in late 2001. At that time, he raised the possibility that Diomed might be interested in acquiring Laser Peripherals. There was no significant discussion of that possibility at that time.

8. In early 2002, Peter Klein initiated a more serious discussion of a potential acquisition of Laser Peripherals by Diomed. As I recall, he brought up the possibility by phone first, and then in either January or February, 2002 he came to Minnesota to visit

Laser Peripherals to discuss the potential transaction. (I should note that I am not familiar with Diomed's corporate structure, so I am not sure which of the three Diomed entities named in the complaint were to be involved in the transaction.)

9. I generally recall that Laser Peripherals and Diomed agreed to a non-disclosure agreement at some point in the spring of 2002. I note that Diomed's Complaint alleges, in Paragraph 28, that I signed a non-disclosure agreement dated April 2, 2002 on behalf of Laser Peripherals. I do not remember whether I signed the non-disclosure agreement for Laser Peripherals, and I do not have a copy.

10. It is my understanding that my counsel obtained a copy of a non-disclosure agreement dated April 2, 2002 from counsel for Diomed. I have reviewed that agreement, and a copy of what was provided by Diomed's counsel is attached as Exhibit 1 to this Declaration. Exhibit 1 is signed by Diomed, but does not have a signature from Laser Peripherals. Exhibit 1 appears to be based on the form of non-disclosure agreement Laser Peripherals used while I was there. It states in Paragraph 15 that "This Agreement is made in and shall be interpreted in accordance with the laws of the State of Minnesota." Paragraph 15 also states that any dispute or claim for damages under this agreement shall be resolved by arbitration in Minneapolis, Minnesota.

11. On or about April 30, 2002, I signed a letter of intent relating to the proposed transaction between Diomed and Laser Peripherals. To the best of my recollection, I signed the letter of intent while I was at the Park Hotel in Atlanta, Georgia attending a trade show for Laser Peripherals. A true and correct copy of that letter of intent is attached as Exhibit 2 to this Declaration.

12. During the time period approximately April-June 2002, Diomed conducted

due diligence for its proposed acquisition of Laser Peripherals. Diomed personnel made at least three trips to Laser Peripherals' office in Minnesota to conduct due diligence. In addition to his visit in early 2002, Mr. Klein led a due diligence visit from a group including Doug Song, who I understood to be a representative of Diomed's venture firm Verus International, and Kevin Stearn, who I believe was Diomed's Vice President of Operations. The three of them came to Minnesota and spent the day at Laser Peripherals' offices, and had dinner with me and Scott Sundet, the majority owner of Laser Peripherals. Diomed also sent a financial employee, whose first name was Sean but whose last name I cannot remember, to Minnesota to spend several days at Laser Peripherals to study its books and records.

13. I did not travel to Massachusetts during the course of the due diligence.

14. Mr. Klein did not disclose to me Diomed's alleged plans to have a marked sheath. He did not disclose to me anything about the details of the "improved" EVLT system, and I certainly do not recall any discussion of the plans for the launch of such a system, or receiving information about its projected sales and market. In short, I never had a conversation with Mr. Klein that is anything like the conversation described in Diomed's Complaint.

15. There would be no reason for Mr. Klein to discuss Diomed's plans for a marked sheath with me. Laser Peripherals sold laser fibers, not sheaths. Diomed obtained its sheath from other sources. There was no plan under discussion for Laser Peripherals to manufacture a sheath of any type for Diomed.

16. Howard Root, Vascular Solutions' Chief Executive Officer, had the idea to use a marked sheath with VSI's Vari-Lase system. It is my understanding that the

4

marked sheath used in our Vari-Lase system is very similar to the marked sheath VSI has been using for years with its Duett product.

17.  Diomed's Complaint alleges, in Paragraph 42, that I called Mr. Klein to "pitch VSI as the manufacturer and distributor of EVLT products in certain market segments." That is a misstatement of my conversation with Mr. Klein. After I joined VSI, Mr. Klein called me to tell me that he was coming to Minnesota and wanted to take me to dinner as a way to thank me for all the work I'd done on the failed Diomed-Laser Peripherals transaction. I agreed, and Mr. Klein and I had dinner at Manny's restaurant in Minneapolis, Minnesota. My recollection is that this dinner took place in either October or November of 2002.

18.  At the dinner, Mr. Klein apologized for the fact that the transaction between Laser Peripherals and Diomed did not go through. He also asked me if I would be interested in coming to work for Diomed and helping them start up their own fiber operation in the United Kingdom. I told Mr. Klein I was not interested, and that I was happy about the opportunities I had at VSI. I also told him that VSI was considering entering the endovenous laser therapy market. I asked him if Diomed would consider selling its laser console to VSI, to be sold under VSI's label. (Two other competitors in this market have a similar arrangement. Biolitec manufactures and private labels a laser for AngioDynamics. Both Biolitec and AngioDynamics sell lasers to the endovenous laser market.)

19.  Mr. Klein told me that he was not interested in selling the Diomed laser console to VSI because VSI was too small. Mr. Klein suggested at the end of our dinner that maybe VSI and Diomed could cross-promote each other's products. Although he

5

thought he was not interested in having us distribute their laser, he would consider giving us some kind of finder's fee if we promoted Diomed's EVLT products at shows and through our sales force and they would do the same with the VSI's Duett and D-Stat products. I told him I was not sure that our CEO would consider that. Mr. Klein wished me good luck, apologized again, and paid for my dinner.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 22 day of January, 2004.

*[signature]*

Nancy Arnold

## CERTIFICATE OF SERVICE

I, John R. Bauer, hereby certify that on January 26, 2004, I caused to be served by hand upon the attorneys of record for the Plaintiff a true copy of the above document.

_____
John R. Bauer