UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

---

DIOMED INC., DIOMED HOLDINGS INC.
AND DIOMED LIMITED,

                Plaintiffs,

- against -

VASCULAR SOLUTIONS, INC. and
NANCY L. ARNOLD,

                Defendants.

Civil Action No. 03 CV 12498 RWZ

**AFFIDAVIT OF
SCOTT SUNDET**

---

STATE OF MINNESOTA  )
                            ) ss.:
COUNTY OF HENNEPIN  )

SCOTT SUNDET, being duly sworn, states:

1. I am the Chief Executive Officer of Laser Peripherals, LLC ("Laser Peripherals"). During 2002, Diomed Holdings, Inc. ("Diomed") explored the possibility of acquiring Laser Peripherals, but the transaction never closed. I am familiar with the events surrounding the proposed acquisition.

2. I have reviewed a copy of the Declaration of Nancy Arnold, sworn to January 22, 2004 ("Arnold Declaration").

3. Diomed first expressed an interest in acquiring Laser Peripherals in mid-2001 and earnestly pursued an acquisition in the second quarter of 2002. Because she was the Laser Peripherals officer responsible for day-to-day operations, I tasked Arnold with taking the lead on the acquisition. As the designated point person at Laser Peripherals to deal with Diomed, Arnold had substantial communications with Diomed personnel located in Massachusetts, including responding to Diomed's various requests for information, most especially in assisting with

Diomed's due diligence review of Laser Peripherals. As I recall, Arnold first identified the need for a non-disclosure agreement with Diomed and initiated negotiation of the NDA by forwarding a draft to Diomed in Massachusetts.

4. In paragraph 5 of the Arnold Declaration, Arnold attests that she had only "occasional[]" contact with Diomed in Massachusetts. During the course of Laser Peripherals' discussions with Diomed, I had periodic and regular discussions with Arnold who related to me that she was having a great deal of contact with Diomed personnel over the telephone and via email in Massachusetts, both in connection with Laser Peripherals' ordinary course of business with Diomed, in connection with Diomed's possible acquisition of Laser Peripherals and the negotiation of the terms of her possible employment agreement with Diomed.

5. The acquisition was not Arnold's first contact with Diomed. Rather, Diomed's interest in acquiring Laser Peripherals grew out of a preexisting business relationship whereby Laser Peripherals supplied Diomed with fibers for its fiber-optic products. Over a period of about four years – throughout which Arnold was the President of Laser Peripherals – Laser Peripherals did business with Diomed. As a result, Arnold had regular telephone conversations with Diomed personnel located in Massachusetts regarding, among other things, the quality specifications, and FDA requirements for the fibers.

6. As part of her contacts with Diomed in connection with Laser Peripherals matters, Arnold attempted to secure employment for herself with Diomed – indeed, Arnold's employment with Diomed as a senior executive responsible for development and marketing was a condition to Diomed's acquisition of Laser Peripherals. Thus, Arnold conducted negotiations with Diomed personnel located in Massachusetts regarding the terms of such an employment contract, including length of term, stock options and to whom she would be reporting. I recall that at one

point in her negotiations, Arnold informed me that she would be reporting to Peter Klein, the then Chief Executive Officer of Diomed and located in Massachusetts. Arnold later was informed that a new COO was going to be added to the staff and she expressed concern to me as to how that would affect her reporting responsibilities. Moreover, around the time that Diomed was conducting its due diligence, Arnold prepared a business plan for Fibersdirect Inc., the entity that was to have emerged from Diomed's acquisition of Laser Peripherals. In addition, Arnold provided a revised sales forecast for Laser Peripherals through the end of 2002 and, with the assistance of Diomed personnel, a 2002 annual revised sales forecast for the consolidated company was generated.

7. Laser Peripherals does not have any backup email files from when Arnold was employed. Moreover, a review of the hard drive to the computer assigned to her revealed that at some point prior to her termination with Laser Peripherals, all of her files, including email files, appear to have been deliberately purged from the hard drive and subsequent efforts by independent information technology professionals to recover the data have been unsuccessful.

_____
SCOTT SUNDET

Sworn to before me
this 10th day of February 2004

_____
Notary Public

\\COM\388936.2



BETTY LOU JERNELL
NOTARY PUBLIC - MINNESOTA
MY COMMISSION EXPIRES
JANUARY 31, 2005

3