UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DIOMED INC., DIOMED HOLDINGS INC. AND DIOMED LIMITED,<br><br>                        Plaintiffs,<br><br>- against -<br><br>VASCULAR SOLUTIONS, INC. and NANCY L. ARNOLD,<br><br>                        Defendants. | Civil Action No. 03 CV 12498 RWZ<br><br>**AFFIDAVIT OF PETER KLEIN** |

STATE OF MAINE              )
                                         ) ss.:
COUNTY OF ANDROSCOGGIN  )

PETER KLEIN, being duly sworn, states:

1. I respectively submit this affidavit in opposition to the motion of defendants Vascular Solutions, Inc. and Nancy Arnold to dismiss the Complaint for lack of personal jurisdiction as to Arnold or, in the alternative, to transfer the action to the United States District Court for the District of Minnesota for the convenience of the defendants.

2. I am a member of the Board of Directors of Plaintiff Diomed Holdings Inc. ("Diomed") and often travel to Massachusetts for board meetings and to attend to other Diomed business. From 1999 to 2003, I was Diomed's Chief Executive Officer and worked from Diomed's office in Andover, Massachusetts. Many witnesses and much of the documentation relevant to Diomed's claims in this action are located in Massachusetts.

3. I first met Nancy Arnold approximately four years ago when she was the President of Laser Peripherals, LLC ("Laser Peripherals"), a manufacturer of laser fiber-optic products for use in medical applications. I also came to know Arnold when I would see her at

trade shows held two to three times per year around the world, one of which may have been in Massachusetts.

4. In early 2002, Diomed began exploring a possible acquisition of Laser Peripherals (the "Transaction"). At that time Arnold was the President of and, as I later learned, owned a three percent (3%) interest in Laser Peripherals.

5. In her declaration, Arnold states that she "occasionally" had telephone calls and correspondence with Diomed in Massachusetts. Arnold Dec. at ¶ 5.[1] In fact, Arnold was heavily involved in the negotiations for the Transaction, both in her individual and representative capacities.

6. For example, I recall engaging in at least 30 telephone calls with Arnold and exchanging at least 75 email messages with her, email being the primary means of our written communication. Approximately half of my calls and emails with Arnold related to the Transaction and Diomed's employment of Arnold. I estimate that Arnold initiated approximately one third of the calls. A sampling of emails, bearing bates numbers DIO-0012 to DIO-0044 and with confidential material not relevant to this motion redacted, showing Arnold's contact with Massachusetts to assist with the Transaction is attached hereto as Exhibit A. These emails demonstrate, among other things, that

    a. Arnold initiated the NDA (DIO-0012);

    b. Arnold had a high degree of responsibility for the Transaction (DIO-0013, DIO-0014);

    c. Arnold initiated telephone calls with and sent due diligence material to Diomed personnel located in Massachusetts (DIO-0012, DIO-0013, DIO-0015, DIO-0028); and

---

[1] "Arnold Dec." refers to the Declaration of Nancy Arnold, sworn to January 22, 2004.

2

  d.  Arnold engaged a Massachusetts auditor, which was BDO Seidman, to perform the audit of Laser Peripherals (DIO-0029 to DIO-0044).

  7.  As negotiations between Diomed and Laser Peripherals progressed, the parties signed a Mutual and Reciprocal Non-Disclosure Agreement (the "NDA") with Arnold signing on behalf of Laser Peripherals. Arnold Dec., Ex. 1. Arnold circulated the initial draft of the NDA, and I recall that we negotiated its terms via email.

  8.  Arnold negotiated the terms of the letter of intent with me, both via email and over the telephone, and circulated drafts of the letter of intent via email. On or about April 30, 2002, when the Transaction had become likely, each of the parties with an ownership interest in Laser Peripherals, including Arnold, signed the letter of intent individually as well as in his or her representative capacity ("Letter of Intent"). Arnold Dec., Ex. 2 at p.5. One condition of the Transaction was an audit of Laser Peripherals, for which Arnold engaged auditors from the Boston, Massachusetts office of BDO Seidman. Arnold Dec., Ex. 2 at VIII(e); Klein Aff. Ex.A (DIO-0029) In section X, the Letter of Intent incorporated the confidentiality terms of the NDA, as follows:

> All parties executing this agreement agree to be bound by the terms of the [NDA] executed between Diomed and Laser Peripherals dated April 2, 2002, the terms of which are incorporated herein.

Arnold Dec., Ex. 2 at § X.

  9.  In addition to her ownership interest in Laser Peripherals, Arnold had a personal stake in the Transaction because its consummation was conditioned on Diomed hiring Arnold as a senior executive with Diomed. Arnold Dec., Ex. 2 at § V. In that capacity, Arnold was to head up Fibersdirect, the business unit through which Diomed intended to offer direct sales of its improved endovenous laser treatment branded disposable procedure kit ("Improved EVLT® System") containing Diomed's improved and marked sheath ("EVLT® Marked Sheath").

10. Arnold negotiated the terms of her future employment with me and other Diomed employees via email and telephone. A sampling of emails, bearing bates numbers DIO-0045 to DIO-0053 and with confidential material not relevant to this motion redacted, indicating that Arnold repeatedly contacted Diomed personnel located in Massachusetts in an effort to secure her employment with Diomed is attached hereto as Exhibit B. A draft of Arnold's employment agreement with Diomed, bearing bates numbers DIO-0054 to DIO-0056, and providing that the terms of her employment "will be interpreted in accordance with and governed by the laws of The Commonwealth of Massachusetts," is attached hereto as Exhibit C. Arnold's direct report would have been either me or a new Chief Operating Officer, who would have also been located in Massachusetts at the time.

11. In paragraphs 14 and 15 of her declaration, Arnold denies that I disclosed information to her regarding Diomed's manufacturing of the EVLT® Marked Sheath and marketing plans for the Improved EVLT® System, which included the EVLT® Marked Sheath. Arnold also denies that I had any reason to disclose such information.

12. In fact, I did discuss Diomed's EVLT® Marked Sheath with Arnold. My reasons for doing so were three-fold. First, I needed assurances that Laser Peripherals had the know-how to manufacture the Improved EVLT® System. Diomed's need for assurances stemmed from the fact that its interest in acquiring Laser Peripherals was largely based on its desire to acquire a manufacturer of laser disposables to support its Improved EVLT® System. As Arnold was the President of Laser Peripherals and responsible for its day to day operations, I divulged the technical details of the EVLT® Marked Sheath to her so that she could assess and make an accurate representation to me as to whether Laser Peripherals had the necessary expertise to manufacture it.

4

13. Second, Arnold wanted assurances from me that her decision to join Diomed and work on the marketing and development of its accessory products would be financially rewarding for her personally. Arnold wanted these assurances because her executive compensation package was to include 100,000 shares of Class A Preferred Stock of Diomed that would vest over a four year period. Ex. C at 3 (DIO-0054). Given her personal stake in Diomed's future business success, she wanted as much information as possible about Diomed's marketing plan and projected sales of Diomed products, including the improved kit.

14. Third, Arnold was in charge of preparing a business plan for Fibersdirect (the "Arnold Plan"). To enable Arnold to prepare this plan I provided her with Diomed's strategic plan for Fibersdirect, the marketing plans for the Improved EVLT® System, and Diomed's assumptions as to price and volume of sales for the Improved EVLT® System. One of Arnold's goals in preparing the Arnold Plan was to determine production costs and anticipated profits of the Improved EVLT® System that Diomed could expect from acquiring Laser Peripherals.

15. For these reasons, Arnold and I had many conversations about Diomed's business during which I provided Arnold with detailed information about the development of the EVLT® Marked Sheath and the marketing plans and projected sales of the Improved EVLT® System. As is my practice when discussing any confidential information related to Diomed, I prefaced my comments to Arnold with the statement that what I was about to say was confidential and asked Arnold to keep the information in confidence. I then disclosed to Arnold the development of the EVLT® Marked Sheath, Diomed's plans to distribute it as part of the Improved EVLT® System, and how Diomed anticipated distinguishing its product from those of its competitors.

16. In the course of drafting the Arnold Plan, Arnold solicited information from me, circulated drafts of the Arnold Plan and solicited feedback from me and other Diomed representatives in Massachusetts via email and over the telephone. A true and correct copy of

the Arnold Plan, with confidential material not relevant to this motion redacted, is annexed hereto as Exhibit D.

17. I disagree with some of Arnold's statements regarding our discussions in late 2002 about the possibility of VSI manufacturing and distributing Diomed's EVLT® products. Arnold Dec. at ¶¶ 17-19. I recall having dinner with Arnold in Minnesota. However, in addition to our dinner meeting, Arnold subsequently called me at my office in Massachusetts. I cannot recall which details were discussed on which occasion, but both conversations included portions of a dialogue in which Arnold asked me whether Diomed would sell its laser console to VSI and whether Diomed would be interested in having VSI manufacture and distribute its EVLT® products. We failed to reach an agreement on these matters and I have not had any subsequent discussions with Arnold regarding the possibility of Diomed and VSI doing business together. Thus, the Complaint is accurate when it states that Arnold called me in Massachusetts to pitch VSI as a manufacturer and distributor of EVLT® products.

_____
PETER KLEIN

Sworn to before me
this _11_ day of February 2004

_____
Notary Public

\\COM\387831.4

William W. Perry, Notary Public
State of Maine
My Commission Expires 7/11/2008