*2-24-04*

*CMB*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

---

DIOMED INC., DIOMED HOLDINGS INC.
AND DIOMED LIMITED,

                    Plaintiffs,

       - against -

VASCULAR SOLUTIONS, INC. and
NANCY L. ARNOLD,

                    Defendants.

: Civil Action No. 03 CV 12498 RWZ

---

## MEMORANDUM OF LAW IN OPPOSITION
## TO DEFENDANT'S MOTION TO DISMISS OR TRANSFER VENUE

WOLF, GREENFIELD & SACKS, P.C.
Michael A. Albert
600 Atlantic Avenue
Boston, MA 02210-2206
(617) 720-3500

*Pro Hac Vice*:

McGUIREWOODS LLP
Hollis Gonerka Bart
Christine M. Fecko
65 East 55th Street
New York, New York 10022
(212) 421-5555

*Of Counsel:*

Duane A. Cranston

### Preliminary Statement

Defendants' motion to dismiss or transfer venue should be denied in its entirety.

As is evident from a *prima facie* review of the credible evidence plaintiffs have proffered in opposing this motion, the exercise of personal jurisdiction over Nancy Arnold ("Arnold") under the Massachusetts long-arm statute is proper in all respects. Indeed, Arnold has conceded in her affidavit that she "would occasionally have telephone calls and exchange correspondence with personnel of Diomed in Massachusetts." This admission alone is more than sufficient to satisfy the "transacting business" requirement under the expansive reach of the long-arm statute. Any lingering doubt as to the sufficiency of Arnold's contact is readily dispelled by the sworn statements of the CEO of Arnold's former employer and the former CEO of Diomed, both of whom attest to the *extensive* contacts Arnold had with Diomed personnel in Massachusetts via email, telephone and facsimile during due diligence on a potential acquisition of her former employer by Diomed and during Arnold's negotiation of an employment relationship with Diomed. When viewed under the controlling test, which looks at the entire sequence of events leading up to Diomed's injuries, it is evident that Diomed's claims arise out those contacts.

The exercise of personal jurisdiction over Arnold also comports with due process. Arnold's contacts with Diomed personnel were instrumental in the formation of oral and written agreements in which she agreed not to use or divulge Diomed's confidential information. As Arnold's contacts also form key elements of, or at the very least, provide a meaningful link to, Diomed's tort claims, the requisite nexus has been shown. Thus, under the "flexible, relaxed" relatedness standard applicable in this Circuit, Diomed has carried its burden on the relatedness prong of the due process analysis.

Given the overwhelming and credible evidence of Arnold's substantial and purposeful contacts with Massachusetts, before, during and after the acquisition fell through, no weight should be given to defendants' unsubstantiated, and now disputed, claim that Arnold "did *nothing* to purposefully avail herself of Massachusetts law, and she conducted *no* activities." (Emphasis added). Indeed, Arnold's contacts were purposefully directed toward establishing a confidential relationship with Diomed, so as to facilitate the free exchange of confidential information both to aid her former employer in assessing the proposed acquisition and to gain the information she needed to negotiate the value of her compensation package with Diomed. From the totality of Arnold's contacts, it was foreseeable that she would be haled into Massachusetts to defend claims that she misappropriated the trade secret and other confidential information Diomed disclosed to her in confidence.

By electing not to address the reasonableness prong of the due process test, defendants must be deemed to have conceded this point since defendants are required to present a compelling case for avoiding personal jurisdiction on reasonableness grounds. Moreover, as controlling cases make clear, the absence of physical presence in Massachusetts (a fact that is *not* conceded), a Minnesota choice of law provision or the situs of defendants' tortious acts are not determinative of personal jurisdiction, as defendants urge.

As Diomed has carried its burden on the personal jurisdiction issue, joinder of Arnold in this action is proper. As such, defendants cannot rely on the necessary and indispensable party rules as a basis for transferring this case to a forum more to their liking. In any event, the law does not require joinder of all joint tortfeasors in a single forum; complete relief can be obtained on all of Diomed's claims against VSI; and defendants, whose interests are aligned, have failed to show that VSI could be subject to "inconsistent obligations" if the case were to proceed

2

without Arnold. That Arnold's improprieties, such as misappropriation of trade secrets and the deliberate elimination of electronic files from the computer she used during her former employment, will be exposed in this action is not a protectible interest that elevates her to the status of an indispensable party.

Finally, in light of the strong presumption in favor of plaintiffs' forum, defendants' motion to transfer venue should be denied since venue challenges are to be decided on the basis of a holistic approach which takes into consideration the entire sequence of events leading up to the claim. Defendants' reliance on cases which were decided before the venue rule was amended in 1990 is misplaced since, decisions issued post-amendment have repeatedly rejected requests to transfer, such as this, that are based solely on the defendants' residence, the situs of defendants' wrongful acts and defendants' forum preferences.

Accordingly for the reasons set forth herein and in the accompanying affidavits, defendants' motion should be denied in all respects.

## FACTS DETERMINATIVE OF JURISDICTION AND VENUE

### Arnold's Purposeful Contacts with Diomed in Massachusetts

Arnold Signs Letter of Intent *Both* Individually and as a Representative

As detailed in the Complaint and in the accompanying affidavits of Peter Klein ("Klein"), the former Chief Executive Officer of Diomed, and Scott Sundet, the chief Executive Officer of Laser Peripherals, LLP, Arnold was given access to trade secrets and other confidential and proprietary information of Diomed in connection with the due diligence phase of a potential acquisition in which her former employer, Laser Peripherals, would be acquired by an entity to

be formed by Diomed (the "Transaction").  Complaint at ¶¶ 24-40; Klein Aff. at ¶¶ 12-15;

Sundet Aff. at ¶ 6; Arnold Dec. at EX 2.[1]

Before any disclosures of confidential information were made to Arnold, however,

Arnold and Klein, on behalf of their respective employers, agreed to enter into a Mutual and

Reciprocal Non-Disclosure Agreement dated April 2, 2002 (the "NDA").[2]  *See* Complaint at ¶¶

25-28; Klein Aff. at ¶ 7; Arnold Dec. at EX 2.  Emails Arnold sent to Diomed representatives

confirm that Arnold initiated the idea of having the parties enter into the NDA before exchanging

confidential information and that she circulated the initial draft of the NDA to Diomed in late

March 2002.  Klein Aff. at EX. A, (DIO-0012).  In the email forwarding the NDA, Arnold

stated: "We will look for receipt of the signed NDA and the Due Diligence checklist

tomorrow."); Sundet Aff. at ¶ 3.  Arnold also negotiated the language of the NDA via email

exchanges with Diomed representatives.  *See, e.g.*, Klein Aff. at ¶ 7.

Arnold Takes the Lead in Negotiations with Diomed and
Signs Letter of Intent *Both* Individually and as a Representative

Arnold, President of Laser Peripherals, was primarily responsible for negotiating the

terms and conditions of the contemplated Transaction on behalf of Laser Peripherals.  *See*

Complaint at ¶ 28; Sundet Aff. at ¶ 3; Klein Aff. at EX. A, (DIO-0013 to DIO-0028).  In that

role, Arnold sought confidential and proprietary information, and responded to due diligence

inquiries from Diomed representatives by mailing.  *See, e.g.*, Sundet Aff. at ¶ 3; Klein.  Aff. at ¶

---

[1]  "Arnold Dec." refers to the Declaration of Nancy Arnold sworn to on January 22, 2004.  "Klein Aff." refers to the Affidavit of Peter Klein sworn to on February 11, 2004.  "Sundet Aff." refers to the Affidavit of Scott Sundet sworn to on February 10, 2004.  "Bart Aff." refers to the Affidavit of Hollis G. Bart sworn to February 12, 2004.  "Complaint" refers to the complaint the plaintiffs filed in this action on December 11, 2003.  "D. Mem." refers to the Memorandum in Support of Defendants' Motion to Dismiss or Transfer dated January 26, 2004.

[2]  Plaintiffs have submitted and relied on certain confidential and proprietary documents.  By agreement with defendants' counsel, irrelevant information has been redacted.  The submission of these documents in redacted form is without waiver of the confidential designation by Diomed and Laser Peripherals or the assertion of any claim that disclosure to, or use by, any third party is strictly prohibited, such rights being hereby expressly reserved.

6 and EX. A (DIO-0015) (5/3/02 email sent to Diomed representatives in Massachusetts in which Arnold confirms mailing of a packet of due diligence materials to Diomed in Massachusetts).

While Arnold concedes that she "occasionally" had telephone calls and correspondence with Diomed in Massachusetts (Arnold Dec. at ¶ 5), the fact is Arnold exchanged more than 75 emails with Diomed representatives and participated in at least 30 telephone calls in the three-month period in which the parties were assessing the Transaction.[3]  Klein Aff. at ¶ 6 and *see, e.g.*, EX A; *see also* Sundet Aff. at ¶ 4.

Arnold's contacts with Diomed culminated in the execution of a letter of intent dated April 30, 2002 (the "LOI"). *See* Complaint at ¶¶ 38-39; Arnold Dec. at EX 2.  Although Arnold concedes that she signed the LOI, she does not disclose to this Court that she signed it *both* individually, and as the authorized representative of Laser Peripherals. *See* Arnold Dec. at ¶ 11 and EX 2, p.5.  Nor does Arnold mention in her declaration that she circulated drafts of the LOI to Diomed and negotiated its terms via email and telephone. *See* Klein Aff. at ¶ 8.  The LOI does not contain a choice of law, forum or venue provision. *See* Arnold Dec. at EX 2.  Arnold was in Georgia when she signed the LOI and she faxed a signed copy to Diomed's offices in Massachusetts. Arnold Dec. at ¶ 11.

Arnold Actively Sought and Negotiated an Employment Relationship with Diomed

It was contemplated that Arnold could serve as the Vice President of the post-acquisition entity. *See* Klein Aff. at EX 2, ¶ VIII(d).  As confirmed by emails Arnold exchanged with Diomed representatives, Arnold, acting on her own behalf, actively negotiated the terms of her

---

[3]  The contacts Arnold had with Diomed in connection with the Transaction were not her first contacts with Diomed. Sundet Aff. at ¶ 5.  They were instead, an out-growth of a four-year preexisting business relationship in which Laser Peripherals supplied Diomed with fibers for Diomed's fiber-optic products. *Id.*  Throughout this period, Arnold was the President of Laser Peripherals and, in that capacity, regularly had telephone conversations with Diomed

anticipated employment through emails and telephone calls with Diomed representatives, many of which Arnold initiated. *See Id.* at ¶ 10 and EX. 3C; *see also* Sundet Aff. at ¶ 6.

It was during the course of the negotiations of her contract that Arnold sought assurances from Klein that Diomed would be able to maintain its competitive advantage in the endovenous market. *See* Klein Aff. at ¶ 13; *see also* Complaint at ¶¶ 29-32. Arnold sought this information from Klein because she wanted to be certain that the 100,000 shares of Class A Preferred Stock of Diomed she was to receive as part of her compensation package would retain their value over the four-year vesting period. *See* Klein Aff. at ¶ 13 and EX C.

After securing Arnold's express agreement to keep the content of his response confidential, Klein addressed Arnold's concern by telling her about Diomed's plans for launching an improved laser procedure kit that would contain a marked sheath. Klein Aff. at ¶ 14-15; Complaint at ¶¶ 30-31. Because of the unique way the subject arose, Klein is without doubt that he conveyed to Arnold the trade secret and other confidential information which are the basis of Diomed's misappropriation of trade secrets claim. *See* Klein Aff. at ¶ 12.

The employment agreement Arnold was negotiating for herself contained a clause which provided that both the offer letter and the terms of her employment would be "interpreted in accordance with and governed by Massachusetts law." Klein Aff. at EX C, ¶ 10. Arnold would have reported directly to either Klein or the incoming Chief Operating Officer, both of whom were located in Massachusetts at the time. Klein Aff. at ¶ 10; *see also* Sundet Aff. at ¶ 6.

Arnold's Preparation of a Business Plan Using Diomed's Confidential Information

Arnold prepared a detailed business plan of the business of the post-acquisition entity. *See* Klein Aff. at ¶ 14 and EX D (entitled, "Fiberdirect Inc. Business Plan 2002 by Nancy L.

---

personnel located in Massachusetts regarding, among other things, the quality specifications and FDA requirements for the fibers. *Id*

Arnold") (the "Arnold Plan"); Sundet Aff. at ¶6; Complaint at ¶¶ 34-36. In order to compile

this document, Arnold solicited and obtained information from Diomed through emails and

telephone calls with Diomed representatives, including Diomed's strategic plan, its marketing

plans and its assumptions as to price and volume of sales for the Improved EVLT® System. *Id.*

at Klein Aff. at ¶ 14 and EX D; *see also* Complaint at ¶¶ 34-36. Arnold also circulated drafts of

the Arnold Plan via emails in which she solicited comments from Diomed representatives. Klein

Aff. at ¶ 16; *see also* Complaint at ¶ 35.

Arnold also initiated and participated in numerous meetings and telephone conversations

in which Diomed's confidential marketing and business plans, including the marketing strategy

and anticipated launch date for the Improved Kit were disclosed to Arnold in confidence and for

the sole purpose of enabling her to incorporate that information into the Arnold Plan. Klein Aff.

at ¶ 16; *see also* Complaint at ¶ 37.

Arnold Worked with Massachusetts Accounting Firm to Prepare Transaction Financials

As a condition to the closing of the Transaction, Laser Peripherals was required to submit

dedicated financial statements to Diomed. Arnold handled the engagement of the Boston,

Massachusetts office of BDO Seidman for this purpose. *See* Arnold Dec. at EX. 2, p.VIII(e);

Klein Aff. ¶ 8; EX. A (DIO-0029). Arnold also provided information for, and commented on,

the audited financial statements prepared by the Boston office of BDO Seidman. *See* Klein Aff.

at EX A (DIO-0030).

Arnold Purges Her Computer Before Leaving Laser Peripherals

After Arnold left Laser Peripherals to join VSI, Laser Peripherals discovered that all of

the files on the computer Arnold used for business, including all email files, had been

deliberately purged from the hard drive to such a degree that subsequent efforts by independent

technology professionals retained by Laser Peripherals to recover the data have been

unsuccessful.  Sundet Aff. at ¶ 7.  *Testa v. Wal-Mart Stores, Inc.,* 144 F.3d 173, 177 (1st Cir.

1998) (finding that a party's destruction of a relevant document permits a finder of fact to infer

that the contents of the document were unfavorable to that party).

**VSI Regularly Conducts Business in Massachusetts and Throughout the World**

According to the web-site VSI maintains, VSI "markets its products throughout the

world, directly and through distributors."  *See* Bart Aff. Ex. B

(http://www.vascularsolutions.com/international.php).  In the United States, VSI utilizes a direct

sales force, which, as of December 31, 2002, consisted of approximately 50 employees.  *See* Bart

Aff. Ex. A at 4.  The VSI sales force includes clinical specialists who provide on-sight training

for physicians and other professionals who use VSI products.  *Id.* at 4-5.  VSI's marketing

initiatives also include participation at trade shows and other industry organizations and events in

the United States and abroad.  *See* Complaint at ¶ 60; Bart Aff. Ex. A at 5.

Among the hospitals, clinics and professionals to which VSI has been selling its

accessory kits containing a copycat marked sheath are two Massachusetts-based companies,

Brigham & Woman's Hospital, located in Boston, and Emerson Hospital, located in Concord.

Both of these companies have since stopped ordering Diomed's accessory kits.  *See* Swank Aff.

at ¶ 8.

VSI also has ongoing contractual relationships with companies throughout the United

States.  *See,* e.g., Bart Aff. Ex. A *passim.*  One of VSI's key contracts is a patent license

agreement with Tepha, Inc., a company whose principal place of business is Cambridge,

Massachusetts.  *See* Bart Aff. Ex. A at preamble.  The Tepha license agreement designates

Massachusetts as the forum for resolving all disputes.  *Id.* at ¶13.1.

VSI has attempted to establish a business relationship with Diomed.  Shortly after joining

VSI, Arnold called Klein to inquire whether Diomed would be interested in having VSI

8

manufacture and distribute Diomed's EVLT® products.  Complaint at ¶ 42; Klein Aff. at ¶ 17;

*see also* Arnold Dec. at ¶ 18-19.  Klein indicated that Diomed was not interested.  Klein Aff. at ¶

17; Arnold Dec. at ¶ 19.

In its Fourth Quarter 2003 Earnings Conference Call, VSI's Chief Executive Officer,

Howard Root, advised that the company's liability insurance carrier has accepted coverage, and

that the costs of defending the instant litigation should not effect VSI's operating expenses.[4]

**Diomed's Key Witnesses and Documents are in Massachusetts**

Klein is a member of the Board of Directors of VSI and therefore travels to

Massachusetts to attend board meetings and deal with the business of Diomed.  Klein Aff. at ¶ 2.

Other witnesses and documentation relevant to the claims in this action are also located in

Massachusetts.

---

[4]  An audio tape of the January 28, 2004 Conference Call can be accessed on VSI's website,
http://www.vascularsolutions.com.

## ARGUMENT

### I. THIS COURT HAS PERSONAL JURISDICTION OVER ARNOLD

Diomed concurs that, in the absence of any disputed fact which warrants limited jurisdictional discovery and a hearing, this Court may properly decide defendants' jurisdictional challenge by application of the "prima facie" method of determining personal jurisdiction. In so doing, however, this Court must evaluate the jurisdictional issue by considering "specific facts affirmatively alleged by plaintiff as true (whether or not disputed) and construe them in the light most congenial to the plaintiff's jurisdictional claim . . . [and] *then* add to the mix facts put forward by the defendants, to the extent that they are uncontradicted." *Workgroup Technology Corp. v. MGM Grand Hotel, LLC*, 246 F. Supp. 2d 102, 108 (D. Mass 2003) (emphasis added) *citing Massachusetts Sch. of Law v. American Bar Ass'n.*, 142 F.3d 26, 34 (1st Cir. 1998) (cited with approval by defendants (D. Mem. at 5)). Upon a review of the Complaint, the affidavits and other evidence Diomed has proffered on this motion, this Court will conclude that Arnold, both personally and as a representative, transacted business in the Commonwealth, such that the exercise of personal jurisdiction over Arnold in this action is proper in all respects.

### A.    Jurisdiction Exists Under Section 3(a) Long-Arm Statute by Reason of the Business Arnold Has Transacted in Massachusetts

Section 3(a) of the Massachusetts Long-Arm Statute, which confers personal jurisdiction as to any claim arising from the defendant's "transacting *any* business" in Massachusetts, "is not modest in its reach." *Foster-Miller, Inc. v. Babcock & Wilcox Canada*, 46 F.3d 138, 144 (1st Cir. 1995) (emphasis added) (cited with approval in D. Mem. at 5, 6). "Its language is expansive, and its words are to be *generously* applied in order to determine whether a given defendant fairly can be said to have participated in the forum's economic life." *Id.* (emphasis added).

The facts submitted by Diomed on this motion show that:

- Arnold, acting solely on her own behalf, pursued and negotiated the terms of an employment relationship with an entity to be formed by Diomed via telephone calls and emails with Diomed representatives in Massachusetts.

- In a meeting in which Arnold solicited assurances from the former Diomed CEO that Diomed's stock would retain its value over the four-year vesting period, Arnold was told about the details of Diomed's development of a marked sheath and how it was projected to impact the value of Diomed stock. Before that information was provided to her, however, Arnold assured Diomed's CEO that she would keep it confidential.

- Arnold, acting on behalf of her former employer, solicited information from Diomed representatives in Massachusetts via emails and telephone, including revenue projections and marketing plans for the EVLT® Marked Sheath.

- Arnold prepared a business plan for the post-acquisition entity she was to head, which included incorporated projections for the marked sheath.

- Arnold circulated via email to Diomed representatives in Massachusetts drafts and the final version of the LOI, the terms of which included an agreement to be bound by the confidentiality provisions of the NDA.

- Arnold executed the LOI both individually and as the President of Laser Peripherals and then faxed a copy of the signed document to Diomed in Massachusetts.

This factual backdrop, together with the affidavits and other evidence Diomed has

proffered on this motion, clearly establishes that Arnold transacted business in Massachusetts.

None of the factors defendants cite in support of their jurisdictional challenge serve to defeat

personal jurisdiction.

1.    Arnold Need Not Be Physically Present in the Forum

While it may be that Arnold has not set foot in Massachusetts in 10 years (a fact which is

not conceded), the absence of physical presence in Massachusetts does not foreclose a finding

that Arnold transacted business here, as defendants have urged. *Burger King Corp. v.*

*Rudzewicz*, 471 U.S. 462, 476 (1985) (jurisdiction "may not be avoided merely because the

defendant did not *physically* enter the forum State.") (emphasis in original); *see also* D. Mem. at

6. As the United States Supreme Court has observed, "it is an inescapable fact that a substantial

11

amount of business is transacted solely by mail and wire communications across state lines, thus

obviating the need for physical presence within a State in which business is conducted." *Id. See*

*also Massachusetts Sch. of Law*, 142 F.3d at 36 ("the transmission of facts or information into

Massachusetts via telephone or mail would *of course* constitute evidence of a jurisdictional

contact directed into the forum state") (emphasis added); *Workgroup*, 246 F. Supp. 2d at 109-10;

*Champion Exposition Servs., Inc. v. Hi-Tech Elect., LLC*, 273 F. Supp. 2d 172, 176 (D. Mass.

2003). "When physical presence is lacking, the Court looks for some other indication that the

defendant reached into the forum, such as mail or telephone contacts." *Workgroup*, 246 F. Supp.

2d at 113.

Here, there is ample evidence that Arnold had many email and telephone contacts with

Diomed representatives in Massachusetts, a significant number of which were for the purpose of

establishing a relationship with Diomed for her personal benefit or were instrumental in the

formation of agreements Arnold made personally and as a representative that she would not

divulge or use the trade secret and other confidential information which Diomed disclosed to her.

Thus, even if Arnold in fact was not physically present in Massachusetts in her dealings with

Diomed, these facts are sufficient to satisfy the "transacting business" requirement. *See, e.g., Id.*

at 110.

Although Arnold attempts to downplay the frequency of her phone and email contacts

with Diomed representatives by describing them as "occasional," only a handful of contacts are

needed to establish "transacting business" requirement. *See, e.g., Workgroup*, 246 F. Supp. 2d at

110 (four phone calls, five emails and three faxes to forum state found sufficient); *Champion*,

273 F. Supp. 2d at 176 (forwarding a term sheet and business plan in furtherance of a negotiation

satisfied transacting business requirement).

2.    Contacts Initiated by Either Party Serve to Establish Jurisdiction

Nor is it determinative for jurisdictional purposes whether Arnold initiated the contacts

with Diomed representatives. *See Massachusetts Sch. of Law*, 142 F.3d at 36 ("it is

uninformative as to who initiated the call"). Courts in this Circuit have found that where a

defendant has responded to contacts initiated by a Massachusetts plaintiff by sending telephone

calls, e-mails, and faxes to the plaintiff, the "transacting business" requirement is satisfied, even

in cases where the defendant purportedly never set foot in Massachusetts. *See, e.g.*, *Champion*,

273 F. Supp. 2d at 176, discussing *Workgroup*, 246 F. Supp. 2d at 110 (transacting business

requirement satisfied where some contacts initiated by plaintiff in Massachusetts and others by

defendant in Nevada). Thus, Arnold's numerous and substantial exchanges with Diomed

representatives in Massachusetts via telephone, email and fax, are more than sufficient to

establish the "transacting business" requirement.

3.    Contacts Arnold Made as an Agent are as Equally Dispositive of
the "Transacting Business" Requirement as Her Personal Contacts

Arnold's transaction of business while acting as a representative of her former employer

does not shield Arnold from the reach of the Massachusetts long-arm statute, as defendants urge.

*See* D. Mem. at 6-7. In construing the "transacting business" requirement broadly, courts have

held that "[i]t includes any purposeful acts of a defendant, whether personal, private or

commercial." *Yankee Group, Inc. v. Yamashita*, 678 F. Supp. 20, 21 (D. Mass. 1988). While

defendants are correct that "'there must be an independent basis for asserting long-arm

jurisdiction' over Arnold,"[5] that "requirement is satisfied when the officer himself transacts

business within the foreign state, whether or not the business is personal or solely on behalf of

the corporation." *Id.* at 22.

_____

[5] D. Mem. at 6 *citing Escude Cruz v. Ortho Pharmaceutical Corp.*, 619 F.2d 902, 906 (1st Cir. 1980).

13

Indeed, as the court in *Escude*, the case defendants cite as the sole support for this point, has held: "It is the general rule that if an officer or agent of a corporation directs or participates actively in the commission of a tortious act *or an act from which a tort necessarily follows or may reasonably be expected to follow*, he is personally liable to a third person for injuries proximately arising therefrom." *Escude Cruz v. Ortho Pharmaceutical Corp.*, 619 F.2d 902, 906 (1st Cir. 1980) (citations omitted) (emphasis added). Thus, under the holding of *Escude*, personal jurisdiction would exist over Arnold based solely on the contacts made in her representative capacity because those contacts gave her access to Diomed's confidential and trade secret information and formed her written agreement not to divulge them, and thus, are necessary elements of Diomed's claims against her. *Yankee Group*, 678 F. Supp. at 23.

In any event, the evidence proffered by Diomed on this motion clearly establishes that Arnold's negotiations of an employment relationship with Diomed and her oral agreement to keep confidential the information Diomed's then CEO conveyed to her in confidence during those negotiations were personal contacts because they were made solely to further her own interests. *See* Klein Aff. at ¶¶ 14-15 and EX B. Thus, even under defendants' interpretation of Section 3 of the Massachusetts long-arm statute, these personal contacts of Arnold are enough to satisfy the "transacting business" requirement. *See* D. Mem. at 6 (arguing that "[n]either aspect of Section 3a is met here, because Arnold has never transacted business *personally* in Massachusetts . . . .") (emphasis added).

4.    Diomed's Claims Against Arnold Arise From Her Business Activities

Defendants attempt to dismiss as "irrelevant" the "contacts Arnold had with Diomed as President of Laser Peripherals" on the theory that "the claims against her *arise* out of her alleged disclosure of Diomed trade secrets to VSI *in Minnesota*." D. Mem. at p.7 (emphasis in original). Defendants cite no authority for this proposition and the reason is obvious. "The 'arising from'

14

clause in Mass. Gen. Laws, ch. 223A, § 3(a) is to be *generously* construed in favor of asserting

personal jurisdiction, by applying a 'but for' causation test." *Workgroup*, 246 F. Supp. 2d at 112

(emphasis added).

In the case of a claim for breach of an agreement, courts inquire whether the business

transacted was "instrumental in the formation" of the agreement. *Champion*, 273 F. Supp. 2d at

176 citing *Lyle Richards Int'l, Ltd. v. Ashworth, Inc.*, 132 F.3d 111, 114 (1st Cir. 1997) (cited

with approval in D. Mem. at 6-7). As demonstrated above and in the accompanying affidavits,

the business Arnold conducted in Massachusetts was instrumental in the formation of the oral

agreement Arnold made during the negotiation of an employment relationship with Diomed and

in the formation of the written agreement Arnold made, that she would not divulge the

confidential information disclosed to her. In other words, the dispute as to whether she breached

those agreements would never have come to exist "but for" all the telephone calls, emails and

faxes Arnold exchanged with Diomed representatives. *See, e.g., Workgroup*, 246 F. Supp. 2d at

112; *see also* Complaint at ¶¶ 82-94, 131-137.

The same is true for the trade secret misappropriation claim. "But for" the business

Arnold transacted with Diomed in Massachusetts, Arnold would not have been duty-bound not to

use the confidential information Diomed revealed to her during the course of the business she

transacted individually and on behalf of her former employer. *Foster-Miller*, 46 F.3d at 144

(Business contacts with a Massachusetts firm wherein confidential information was disclosed

made personal jurisdiction under Section 3(a) "plainly available").

**B.    Arnold's Contacts with Massachusetts Also Establish Jurisdiction
        Under Section 3(d) of the Massachusetts Long-Arm Statute**

Arnold's contacts with Diomed in Massachusetts are also sufficient to satisfy the criteria

set forth in Section 3(d) of the Massachusetts Long-Arm Statute. In evaluating whether there has

been "tortious injury" for purposes of this sub-section, "economic injury in the form of lost sales in the forum state is sufficient to satisfy the injury requirement for jurisdiction." *Keds Corp. v. Renee Int'l Trading Corp.*, 888 F.2d 215, 218 (1st Cir. 1989) (citing *Buckeye Associates v. Fila Sports, Inc.*, 616 F. Supp. 1484, 1493 (D. Mass. 1985). Arnold's misappropriation of the Diomed's confidential information regarding its EVLT® Marked Sheath resulted in such an injury, where, as a direct consequence of her divulgence of these plans to VSI, Diomed lost the economic benefits to be derived from being the first to market with its Improved EVLT® System, including the lost revenues from sales of customers who have switched to VSI, at least two of which are located in Massachusetts. *See* Swank Aff.¶ 8.

As the second clause of section 3(d) is to be read in the disjunctive, "the plaintiff need only satisfy one of its prongs." *Mecred v. JLG Indus., Inc.*, 170 F. Supp. 2d 65, 71 (D. Mass. 2001). In this instance, Arnold's transacting business contacts are also sufficient to constitute a "persistent course of conduct," thus allowing for personal jurisdiction under 3(d). *Hologic Inc. v. Lunar Corp.*, 36 U.S.P.Q.2d (BNA) 1182 (D. Mass. 1995) (where substantial contacts satisfy both 3(a) and 3(d), courts will accept evidence proferred by a plaintiff for purposes of both sections). Arnold's substantial contacts with Diomed in Massachusetts, as described above, together with her contacts during the preceding four-year period, when viewed as whole, rise to the level of a "persistent course of conduct" for purposes of establishing personal jurisdiction under Section 3d. *See, e.g., Extra Fresh, LLC v. Groupe Guillen*, No. 01-30011-MAP, 2001 U.S. Dist. Lexis 18268, at *16 (D. Mass Oct. 19, 2001) (making hundreds of business contacts with a Massachusetts business was "ample evidence of 'a persistent course of conduct' in Massachusetts").

**C.    Exercise of Jurisdiction Over Arnold Comports with Due Process Standards**

1.    Arnold's Contacts Satisfy the Relatedness Requirement

Given the substantial proof which establishes that Arnold's contacts in Massachusetts were instrumental in the formation of her confidentiality agreements, coupled with the absence of any compelling argument by defendants to the contrary, Diomed has carried its burden on the relatedness prong as to its contract claims. *See infra* at 1-3. Defendants' argument that "Arnold's sparse contacts with Massachusetts had nothing to do with the formation of the NDA" because [t]he agreement recites that it was 'made in Minnesota,' not Massachusetts" (D.Mem. at 8) does not compel a different result. While the clause may bear some relevance in determining a choice of law dispute, it is "far from dispositive of the personal jurisdiction issue." *Champion*, 273 F. Supp. 2d at 176. The choice of law clause is particularly irrelevant in this case since Arnold admits that she cannot remember whether she ever even signed the NDA and that she signed the LOI, which obligates her to be bound by the NDA, in Georgia. Arnold Dec. at ¶ 9, 11.

For tort claims, such as Diomed's trade secret misappropriation claim, the relatedness requirement of the due process analysis "focuses on the nexus between the defendant's contacts and the plaintiff's cause of action." *Nowak v. Tak How Inv.*, 94 F.3d 708, 714 (1st Cir. 1996) citing *Ticketmaster-New York, Inc. v. Alioto*, 26 F.3d 201, 206 (1st Cir. 1994). While the First Circuit has held that courts are to use the proximate cause standard to determine whether the requisite nexus exists, it also has recognized that the standard is a flexible one, such that the absence of legal causation would not be fatal where the contacts form a "meaningful link" to plaintiff's cause of action. *Nowak*, 94 F.3d at 715. Under either standard, Arnold's contacts with Massachusetts are more than sufficient to establish the requisite nexus.

Defendants make the conclusory claim – without citing any authority – that there is "no legal cause arising from Arnold's contacts with Massachusetts." D. Mem. at 9. Then they cite to four isolated factors, none of which is dispositive of the relatedness prong, even when viewed in the aggregate.

First, defendants take note of the place where the contract was made, which as discussed above, is not dispositive of the jurisdictional issue. *See infra* at 7-10, 12-13. Nor is it determinative that one of Arnold's contacts, a meeting at which some, but not all, misappropriated information was disclosed to Arnold, took place in Minnesota. Once again, defendants are improperly applying proximate causation standards to contract formation contacts, which, as they concede in their memorandum of law, are to be assessed under the formation standard discussed above. *See infra* at 11-12; *see also* D. Mem. at 8.

In any event, case law addressing the relatedness prong in the context of tort claims, establishes that physical presence in the forum state is not required to establish relatedness. *See, e.g., Nowak*, 94 F.3d at 711, 715-16 (solicitation sent by Hong Kong hotel to Massachusetts resident, provided sufficient nexus to losses suffered in Massachusetts for wrongful death in Hong Kong); *Workgroup*, 246 F. Supp. 2d at 113 (in deciding relatedness prong, court found that defendant's "lack of physical presence in Massachusetts is not fatal to the case for jurisdiction"). In such cases, courts look for some other indication that the defendant reached into the forum, such as mail or telephone contacts. *Workgroup*, 246 F. Supp. 2d at 113 (citing *Burger King*, 471 U.S. at 476).

Here, there was ample indicia that Arnold reached into the forum through emails and telephone calls to Massachusetts by which she solicited and received confidential information concerning the marketing, launch and sales projections for the marked sheath and by which she

18

agreed, in writing, not to divulge or use for any purpose other than in connection with the due diligence on the transaction. It is also the case that by agreeing to maintain the confidence of information revealed to her, Arnold induced the disclosure in order to obtain information she required in order to assess whether to enter into an employment relationship with Diomed. *See Phillips Exeter Acad.*, 196 F.3d at 290 ("It is not the relationship itself, but the content of the parties' interactions that creates constitutionally significant contacts.") (cited with approval in D. Mem. at 8).

Defendants also note that the misappropriation occurred in Minnesota. While it is true that this fact would have conferred jurisdiction over Arnold in Minnesota with respect to Diomed's tort claim (had Diomed chosen that forum), this does not mean that Minnesota is the only appropriate forum. As the First Circuit has held, "jurisdiction that is premised on a contact that is a legal cause of the injury underlying the controversy – *i.e.*, that "forms an 'important, or [at least] material, element of proof' in the plaintiff's case," [citation omitted] – is *presumably reasonable*, assuming of course, purposeful availment." *Nowak*, 94 F.3d at 715 (emphasis added).

What is more, the First Circuit has soundly rejected the formulaic approach defendants endorse for applying the proximate cause standard in assessing the sufficiency of the relatedness of the contacts for due process purposes. As the First Circuit has cautioned:

> strict adherence to a proximate cause standard in all circumstances is unnecessarily restrictive. The concept of proximate cause is critically important in the tort context because it defines the scope of a defendant's liability. In contrast, the first prong of the jurisdictional tripartite test is not as rigid: it is, "relatively speaking, . . . a 'flexible, relaxed standard.'"

*Id.* (citations omitted).

Under these standards, then, the relatedness requirement is satisfied because, as defendants have conceded (D. Mem. at 11), Arnold's contacts with Massachusetts form an

19

important, or at least material, element of proof in Diomed's claim that Arnold was given access to, and was under a legal duty not to disclose, Diomed's trade secrets and other confidential information to VSI. *See* Complaint at Count I.

At the very least, Arnold's contacts in which she solicited, received and agreed not to use or divulge Diomed's confidential information provide a "meaningful link" to the harm Diomed has suffered such that the requisite relatedness requirement has been satisfied. *See Nowak,* 94 F.3d at 716; *see also Id.* at 715 ("We see no reason why, in the context of a relationship between a contractual or business association and a subsequent tort, the absence of proximate cause *per se* should always render the exercise of specific jurisdiction unconstitutional.").

2.    Arnold Purposefully Availed Herself of the
      Privilege of Conducting Business in Massachusetts

Defendants' unsubstantiated claim that Arnold "did *nothing* to purposefully avail herself of Massachusetts law, and she conducted *no* activities there" is belied by Arnold's own admission that she "occasionally" had telephone calls and exchange[d] correspondence with Diomed personnel in Massachusetts and the United Kingdom." Arnold Dec. at ¶ 5. While Diomed disputes whether Arnold's contacts were in fact "occasional," even a few contacts are more enough to satisfy the "purposeful availment" prong of the personal jurisdiction due process inquiry as a matter of law. *See Daynard,* 290 F.3d at 54 (noting that defendant "did have some contacts with Massachusetts, however minimal," and holding that transmission of information via telephone or mail "would of course constitute evidence of a jurisdictional contact directed into the forum state," citing *Massachusetts Sch. of Law,* 142 F.3d at 36); *see also Burger King,* 471 U.S. at 476.

Here, the totality of Arnold's contacts establish that a significant portion of them, before, during and after the Transaction fell through, were intended to build and maintain both a business

and employment relationship with a Massachusetts corporation. *See* Klein Aff. at ¶ 5-8, 10, 16-17; Sundet Aff. at ¶ 3-6; Arnold Dec. at ¶¶ 17-19. From the very first phone call in which Diomed and Laser Peripherals decided to explore the possibility of a Transaction until that relationship ended, Arnold's contacts were purposefully directed toward establishing a confidential relationship with Diomed so as to facilitate the free exchange of trade secret and confidential information. By reason of her stated willingness to be bound by confidential restraints, both written and oral, and her efforts to create an executive level employment relationship with a Diomed entity, Arnold was given access to information she needed to develop a post-Transaction business plan and to assess the value of the compensation package she was negotiating for herself. Even after Arnold left Laser Peripherals to join VSI, she continued to have contacts with Diomed's CEO that were purposefully directed towards establishing a business relationship between VSI and Diomed in which VSI would, among other things, distribute Diomed's Improved EVLT® System. On these facts, which must be deemed to be true for this motion, Arnold has purposefully and voluntarily directed her activities toward the forum so as to avail herself of the privilege of conducting business in Massachusetts, such that she could reasonably anticipate being haled into court here. *See, e.g., Champion,* 273 F. Supp. 2d at 178 ("contacts intended to build and maintain a relationship with a Massachusetts corporation, rendered foreseeable the possibility of being haled into a Massachusetts court"); *Workgroup,* 246 F. Supp. 2d at 113-14; *Digital Equip. Corp. v. Altavista Tech, Inc.,* 960 F. Supp. 456, 470 (D. Mass. 1997) (where a party causes injury in Massachusetts, even though activities outside of the state, it should anticipate being haled into Massachusetts);[6] *see also Nowak,* 94 F.3d at 715 (due process requirement that persons have "fair warning" that activity may subject them to jurisdiction in foreign state "is satisfied if the defendant has 'purposefully directed' his activities at residents of the forum,

---

[6] Defendants concede that in-state injury is the appropriate test to show foreseeability, where, as here, the relatedness prong has been satisfied. D. Mem. at 9.

and the litigation results from alleged injuries that 'arise out of or relate to' those activities") citing *Burger King*, 471 U.S. at 472.

Thus, when viewed in the context of the totality of the record, which establishes that Arnold's contacts with Massachusetts were far more substantial than the picture she has painted for this Court, it is without doubt that Arnold purposefully availed herself of the benefits and protections of Massachusetts law. *See Workgroup*, 246 F. Supp. at 114-15 ("court may look at all of the communications between the parties, before, during, and after the consummation of the contract, to determine the degree and type of contacts the defendant has with the forum, apart from the contract alone."); *see also Nowak*, 94 F.3d at 716-717 (Defendant's ongoing contacts with Massachusetts, "whether prompted or unprompted," made personal jurisdiction foreseeable).

3.    Exercise of Jurisdiction is Reasonable

Where, as here, evidence of purposeful availment is strong, the Gestalt factors courts use to determine that the exercise of jurisdiction is reasonable are less important and defendant must present a compelling case that it would. *Burger King*, 471 U.S. at 477. Here, defendant elected to put in no evidence of reasonableness. As such, the reasonableness of conferring jurisdiction has been conceded. See D. Mem. at 10.[7]

---

[7] In any event, defendants cannot demonstrate that exercising personal jurisdiction over Arnold would be "unreasonable" under the five-part Gestalt factor test. *Workgroup*, 246 F. Supp. at 114-115. First, defendants cannot demonstrate any "special or unusual burden," especially since VSI regularly conducts business in Massachusetts. *Pritzker v. Yari*, 42 F.3d 53, 64 (1st Cir. 1994); *see also supra* at 8. Second, Massachusetts has an interest in protecting its residents under the terms of a contract to which they are a party. (*Jet Wine & Spirits, Inc. v. Bacardi & Co.*, 298 F.3d 1, 10 (1st Cir. 2002)), and also when a tortuous injury is incurred within its borders. (*Nowak*, 94 F.3d at 718). Third, courts give deference to the plaintiff's choice of venue for purposes of determining the most convenient forum. *Daynard*, 290 F.3d at 62. Fourth, there is not other forum state that demonstrates a greater interest than Massachusetts to adjudicate this dispute. *Workgroup*, 246 F. Supp. at 115. And fifth, there are no relevant policy considerations that would constitute unreasonableness. *Id.*

## II.    INDISPENSABLE PARTY RULE AFFORDS
##         DEFENDANTS NO BASIS TO DISMISS THIS ACTION

As this prong of defendants' motion to dismiss is premised on the notion that personal

jurisdiction is lacking as to Arnold, whom defendants claim is an indispensable party (D. Mem.

at 10-13), this Court need not consider this prong of defendants' motion since, as demonstrated

above, the exercise of personal jurisdiction over Arnold is proper.  But even if this prong is

considered for the sake of completeness, defendants cannot sustain their burden on this point.

Diomed elected to join Arnold in this action because personal jurisdiction exists as to

both defendants, a decision which serves the interests of judicial economy.  Having established

that the exercise of personal jurisdiction is proper as to Arnold, Diomed's right to control its own

litigation and choose its own forum should not be disturbed unless defendants have "produc[ed]

evidence which shows the nature of the interests possessed by [Arnold] and that protection of

that interest will be impaired by [her] absence." *Generadora de Electricidad del Caribe, Inc. v.*

*Foster Wheeler Corp.*, 92 F. Supp. 2d 8, 14 (D.P.R. 2000); *see also Delgado v. Plaza las*

*Americas, Inc.*, 139 F.3d 1, 3 (1st Cir. 1998).  Defendants have wholly failed to make such a

showing.

What is more, Diomed's decision to join Arnold in its action against VSI does not

automatically elevate her from a permissive party to an indispensable party, as defendants seem

to suggest.  *See Temple v. Synthes Corp., Inc.*, 498 U.S. 5, 7-8 (1991) ("It has long been the rule

that it is not necessary for all joint tortfeasors to be named as defendants in a single lawsuit.");

*Goldman, Antonetti, Ferraiuoli, Axtmayer & Hertell, A Partnership v. Medfit Int'l, Inc.*, 982 F.2d

686, 691 (1st Cir. 1993) (affirming that where defendants and absent party are alleged to be

jointly and severally liable, joinder of the absent party is not mandatory).  D. Mem. at 12.

Rather, defendants must show that Arnold is necessary to the action, unable to be joined and her

presence in the case is indispensable. Fed. R. Civ. P. 19(a), (b). *Generadora*, 92 F. Supp. 2d at 14. Even assuming, for purposes of this discussion only, that jurisdiction could be said to be lacking as to Arnold, defendants cannot make the requisite showing that Arnold is either necessary or indispensable.

A.    **Arnold is Not a Necessary Party Under Rule 19(a)**

The theories on which defendants premise their view that Arnold is "necessary party" find no support in controlling case law. First, the test used to show that "complete relief cannot be accorded" is not, as defendants urge, whether Diomed can obtain complete relief on all of its claims. *See* D. Mem. at 11 The "complete relief" examination under Rule 19(a)(1) focuses instead on whether "complete relief" can be granted as between Diomed and VSI if Arnold is absent from this action. *See, e.g., Jay's Drug Stores, Inc. v. Aetna Cas. and Sur. Co.*, Civ. A. No. 92-11857-Z, 1993 WL 427460, at *2 (D. Mass. Sept. 29, 1993) (Zobel, J.) (denying motion to dismiss for failure to join insurance agent since "[insurance agent's] absence does not preclude [insured] from fully recovering for its damages against [insurer]").

In any event, as Arnold is an agent of VSI, and is alleged to have disclosed the trade secret information to VSI while employed by VSI, both parties would be entitled to discovery of Arnold and to compel her to testify in any trial in this case. In this sense, Arnold is no different from any other witness who can shed light on the events leading up to VSI's misappropriation of Diomed's trade secrets or any of the other claims Diomed has asserted against VSI. Moreover, Arnold's status as an officer, employee and agent of VSI, means that Arnold, like any other VSI representative, would, by definition, be subject to an order granting the injunctive relief Diomed has requested in its Complaint. *See* Complaint at 33-34; Fed. R. Civ. P. 65(d). Clearly, then, Arnold's absence from the case as a party would in no way affect plaintiffs' ability to obtain

complete relief on its claims against VSI. On these facts, defendants cannot establish that

Arnold is a necessary party. *See Jay's Drug*, 1993 WL 427460, at *2.

Nor have defendants shown that Arnold has an interest which would be impaired if the

case were to proceed without her as a party. Indeed, defendants admit that, as a non-party,

Arnold would not be bound by this Court's ruling. D. Mem. at 11. The fact that Arnold's

improprieties will figure prominently in this litigation does not create any risk of prejudice such

that she should be considered a necessary party under Rule 19(a)(2)(i). In a leading case, Justice

Breyer, writing for the First Circuit explained that:

> [t]he mere fact, however, that Party A, in a suit against Party B,
> intends to introduce evidence that will indicate that a non-party, C,
> behaved improperly does not, by itself, make C a necessary party.
> Given the vast range of potential insults and allegations of
> impropriety that may be directed at non-parties in civil litigation, a
> contrary view would greatly expand the universe of Rule 19(a)
> necessary parties. It is therefore not surprising that cases
> interpreting Rule 19 consistently hold that such "slandered
> outsiders" need not be joined.

*Pujol v. Shearson/American Express, Inc.*, 877 F.2d 132, 136 (1st Cir. 1989) (finding that

plaintiff's intent to introduce evidence showing that non-party "engaged in improper, possibly

criminal, behavior" and was "an active participant in the overall sequence of events leading to

the lawsuit" does not make the absentee a necessary party). Clearly, then, Arnold's centrality to

this case as a material witness and joint tortfeasor does not create prejudice for purposes

necessary party analysis.

Moreover, Arnold's interest in defending plaintiffs' claims is virtually aligned with her

employer, VSI, as is evident from the fact that they are jointly represented by the counsel. Thus,

as a practical matter, VSI's counsel would have the same motives and ability to defend VSI as

Arnold, which courts have found mitigate any possible prejudice. *Pujol*, 877 F.2d at 135; *see*

*also* *Townsend v. Walter Kidde & Co.*, 7 F.R.D. 166, 167 (D. Mass. 1945) (denying defendant's motion to dismiss for failure to join an indispensable party, reasoning that "[i]f a principal-agent relationship is established in the trial on the merits the plaintiff may proceed against the defendant without formal joinder of the agent").

Defendants recite, without discussion, language from *Gonzalez v. Cruz*, 926 F.2d 1 (1st Cir. 1991) to suggest that Arnold's likelihood of success in some unspecified future litigation or settlement might be impaired by the decision. D. Mem. at 11. However, "[a] mere theoretical possibility that a non-party's ability to reach a more favorable settlement will be affected should not be sufficient to base a finding that said non-party is a necessary party under Rule 19." *Generadora*, 92 F. Supp. 2d at 16. *Gonzalez* is inapposite for the further reason that questions of liability as to the parties in the pending action would remain unresolved, which is not the case here with respect to Diomed's claims against VSI.

Nor have defendants shown how allowing the instant case to proceed without Arnold would pose a "*substantial* risk" to VSI of "inconsistent *obligations*", as is required to establish necessary party status under Rule 19(a)(2)(ii). The First Circuit has explained that "inconsistent obligations occur when a party is unable to comply with one court's order without breaching another court's order concerning the same incident." *Delgado v. Plaza las Americas, Inc.*, 139 F.3d 1, 3 (1st Cir. 1998). Inconsistent adjudications, in contrast, arise where a defendant successfully defends a claim in one forum, but loses on another claim arising out of the same incident in a second forum. "[T]he mere possibility of inconsistent *results* in separate actions does not make the plaintiff in each action a necessary party to the other." *Id.* (emphasis added). Accordingly, VSI's stated concerns about the potential for "inconsistent *results*" (D. Mem. at 13)

(emphasis added), is not determinative of whether Arnold is a necessary party pursuant to Rule 19(a)(2). *See Delgado*, 139 F.3d at 3.

Defendants also complain about "the cost and expense of duplicative litigation" that would result if Diomed's claims against VSI and Arnold were to proceed in different forums. Yet, this is precisely the result defendants' seek on their motion since defendants have intimated an intent to compel arbitration of Diomed's claim for breach of the NDA. *See* D. Mem. at 13 n.1. As <u>none</u> of the other claims Diomed has asserted in this case are arbitrable, including Diomed's claim for breach of Arnold's oral agreement not to divulge confidential information, those claims would proceed in a forum of *defendants'* choosing. Such a result is wholly untenable and contrary to controlling authority.[8]  In any event, whether VSI would in fact incur additional costs is questionable since, according to the statements made in its last earnings conference call, the costs of this litigation are not likely to impact VSI's earnings since they are being born by VSI's liability carrier.[9]

## B.    <u>Arnold Is Not Indispensable</u>

Because Arnold is not necessary and, in any event, able to remain as a party to this action, this Court need not reach the question of whether Arnold is indispensable under Rule 19(b).  In any event, defendants' arguments under Rule 19(b) amount to the same unavailing arguments they advanced in support of Rule 19(a). *See* D. Mem. at 11-13.  Thus, for the reasons set forth above showing that Arnold is not a necessary party, defendants have failed to show that Arnold is an indispensable party.

---

[8]  Certainly, the risk of unnecessary costs would be mitigated for all parties if Arnold were to simply remain a party in this action. *See Generadora*, 92 F. Supp. 2d at 17 (noting, *in dicta,* joinder would not affect court's subject matter jurisdiction and personal jurisdiction exists, party can remain in case).

[9]  An audio tape of the January 28, 2004 Conference Call can be accessed on VSI's website, http://www.vascularsolutions.com.

**III.    AS VENUE IS PROPER IN THIS DISTRICT, DEFENDANTS'
         MOTION TO TRANSFER OR DISMISS SHOULD BE DENIED**

Defendants concede that venue in this District is proper as to VSI.  *See* D. Mem at Point

VI.  Thus, this Court need only determine whether venue in this District is proper as to Arnold on

the grounds that "a substantial part of the events or omissions" giving rise to the claims Diomed

has asserted against Arnold occurred in this District.[10]

The First Circuit adheres to the well-settled venue principle that "[t]he Plaintiff's choice

of forum will be disturbed only rarely."  *Champion*, 273 F. Supp. 2d at 180 citing *Nowak*, 94

F.3d at 719.  Indeed, because "there is a *strong* presumption in favor of a plaintiff's forum, the

defendant must bear the burden of proving both the availability of an adequate alternative forum

*and* that considerations of convenience and judicial efficiency *strongly* favor litigating the claim

in the alternative forum."  *Nowak* 94 F.3d at 719 (emphasis added).  As the Supreme Court has

stated:

> Where there are only two parties to a dispute, there is good reason why it should be tried in
> the plaintiff's home forum if that has been his choice.  He should not be deprived of the
> presumed advantages of his home jurisdiction except upon a *clear showing* of facts which
> either (1) establish such oppressiveness and vexation to a defendant as to be out of all
> proportion to *plaintiff's* convenience, or (2) make trial in the chosen forum inappropriate
> because of considerations affecting the court's own administrative or legal problems.

*Koster v. Lumbermens Mut. Co.*, 330 U.S. 518 (1947) (emphasis added).

In deciding venue challenges, the First Circuit has adopted a "holistic" approach.  *Uffner*

*v. La Reunion Francaise, S.A.*, 244 F.3d 38, 42 (1st Cir. 2001).  Under this approach, courts in

this Circuit are to look "not to a single 'triggering event' prompting the action, but to the entire

sequence of events underlying the claim."  *Id.* (noting that "an event need not be a point of

---

[10] Although the Conclusion to their Memorandum seeks a dismissal of the Complaint for improper venue, the request is nowhere
addressed in their submission, suggesting that the request has been abandoned.  In any event, dismissal of the entire case is
inappropriate since venue could be sustained in Minnesota.  *See Workgroup*, 246 F. Supp. 2d at 115.  However, as venue in this

28

dispute between the parties in order to constitute a substantial event giving rise to the claim.").[11]

Thus, while it may be the case that the actual acts of misappropriation and breach occurred in

Minnesota, as defendants suggest (D. Mem. at 5-16), these events are not the focus of the Court's

inquiry into the events or omissions giving rise to the claim.  Against this framework for judicial

analysis, defendants have not satisfied and cannot satisfy this heavy burden.

A review of the record before this Court establishes that the following sequence of events

occurred substantially in Massachusetts:

- Diomed, a Massachusetts company, agreed with Arnold's former employer, a Minnesota company, to explore the Transaction.

- Before any confidential information was exchanged, Arnold sent an email to Diomed in Massachusetts advising that the parties would need to enter into a non-disclosure agreement and Diomed agreed to this condition.  Klein Aff. Ex. A (DIO-0012).

- Arnold negotiated via email and telephone with Diomed in Massachusetts regarding the LOI in which she agreed, individually and as a representative, to be bound by the non-disclosure agreement.  Klein Aff. ¶ 8.

- Throughout the course of due diligence on the Transaction, Arnold placed phone calls and sent emails and faxes to Diomed representatives in Massachusetts in which she, among other things, requested confidential information that she then incorporated in the business plan she was writing for the post-Transaction business that incorporated Diomed's strategic plan, marketing plans, and assumptions as to price and volume of sales of the Improved EVLT® System.  Klein Aff. ¶ 14.

- Diomed representatives sent much of the confidential information Arnold requested to her from Massachusetts.  Klein Aff. ¶¶ 6, 15-16.

- The EVLT® Marked Sheath and other confidential information disclosed to Arnold was designed, developed and/or generated in Massachusetts utilizing substantial resources of a Massachusetts company.  Swank Aff. at ¶ 4.

---

District is proper and defendants cannot establish a compelling reason for transferring the case to Minnesota, their motion to transfer venue also should be denied.  *See infra* at Point III.

[11] The cases cited by defendants in support of their venue arguments are inapposite because each of them was decided before Section 1391(a) was amended in 1990.  Pre-amendment cases were decided on varying tests which were used to find a single venue.  *See Uffner*, 244 F.3d at 42.  These tests have been rejected by post-amendment cases, which apply the holistic approach that focuses on the entire sequence of events.  *Id.*

- The injuries resulting from the actions Arnold were sustained in Massachusetts by a Massachusetts company. Swank Aff. at ¶¶ 5-8.

These factors, when viewed as a whole, clearly establish that venue in this District is proper as to Arnold, thereby rendering moot defendants' request to transfer venue to Minnesota in order to avoid "piecemeal litigation." In any event, a transfer to Minnesota would not eliminate the likelihood of piecemeal litigation since defendants have suggested that Diomed's claim for breach of the NDA must be arbitrated. *See* D. Mem. at 1, n.2 and 16 n.8. As the arbitration clause applies, if at all, solely to that one claim, all other claims, including breach of the oral agreements Arnold made, would still be resolved in a judicial forum, thereby resulting in the very "piecemeal" litigation they claim to want to avoid.

## CONCLUSION

Accordingly, for all of the reasons set forth herein, the Court should deny defendants' motion in all respects because (1) the Complaint and evidence plaintiffs have proffered demonstrate that Arnold transacted business in the Commonwealth such that this Court has personal jurisdiction as to Arnold; (2) even assuming, *arguendo,* that the Court lacks jurisdiction over Arnold, defendants have not and cannot meet their burden of showing that Arnold is an indispensable party; (3) defendants do not dispute that venue in this District is proper as to VSI and defendants have not and cannot meet their burden of showing that venue is improper as to Arnold since a substantial part of the events or omissions giving rise to the claims asserted against Arnold occurred in this District; and (4) such further relief as the Court deems just and proper.

DIOMED, INC.
DIOMED HOLDINGS, INC. and
DIOMED LIMITED

Michael A. Albert
Wolf, Greenfield & Sacks, P.C.
600 Atlantic Avenue
Boston, MA 02210-2206
(617) 720-3500

*Pro Hac Vice:*
Hollis Gonerka Bart
Christine M. Fecko
McGuireWoods LLP
65 East 55th Street
New York, New York 10022
(212) 421-5555

Of Counsel:
Duane A. Cranston

Attorneys for Plaintiffs Diomed Holdings
Inc. and Diomed Inc.

31