IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

DIOMED INC., DIOMED HOLDINGS
INC. and DIOMED LIMITED,

                 Plaintiffs,

v.

VASCULAR SOLUTIONS, INC. and
NANCY L. ARNOLD,

                 Defendants.

Civil Action No. 03 CV 12498 RWZ

**REPLY MEMORANDUM IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS OR
TRANSFER**

## I.      INTRODUCTION

In their Memorandum in Opposition ("Plaintiffs' Memo"), Plaintiffs do not refute the most

relevant facts regarding the Court's lack of jurisdiction over Nancy Arnold ("Arnold"). More

importantly, Plaintiffs do not identify a single contact with Massachusetts pertaining to the receipt or

disclosure of Plaintiffs' confidential information, the central issue of Plaintiffs' claims against Arnold.

Because Plaintiffs have failed to meet their burden of proof regarding jurisdiction, Arnold must be

dismissed from this action. Because Arnold is an indispensable party, the entire action should be

dismissed pursuant to Fed. R. Civ. P. 19.

In addition, Plaintiffs have failed to prove that venue is proper in Massachusetts pursuant to 28

U.S.C. § 1391. As a result, this action should be dismissed or transferred to the U.S. District Court of

Minnesota, where venue is proper.

## II.      FACTS

**A.      The Most Relevant Facts Regarding the Lack of Personal Jurisdiction Are Undisputed.**

All of the claims against Arnold involve the alleged receipt and disclosure of trade secrets in

breach of the Non-Disclosure Agreement dated April 2, 2002 ("the NDA"), thus, the most relevant issues

are:

(1)    The formation of the NDA;
(2)    The alleged receipt of confidential information/trade secret; and
(3)    The alleged disclosure/misuse of the confidential information/trade secret and/ breach of
        the NDA.

Plaintiffs have not offered any facts tying Arnold and these issues to Massachusetts. Peter Klein, Diomed's former Chief Executive Officer, does not even describe when or where he allegedly revealed the confidential information to Arnold. See Affidavit of Peter Klein ("Klein Aff.") at ¶¶ 12-15. Indeed, Plaintiffs don't refute that the most relevant facts pertaining to these issues all occurred in Minnesota, not Massachusetts:

- Plaintiff initiated contact with Arnold in Minnesota.
- Arnold maintained contacts with Massachusetts only because Plaintiffs wanted to purchase Laser Peripherals, LLP ("Laser Peripherals"), Arnold's employer.
- The NDA was:
  - drafted in Minnesota;
  - created to allow Plaintiffs to conduct due diligence;
  - explicitly agreed to as being "made" in Minnesota
  - governed by Minnesota law, and
  - to be arbitrated in Minnesota in the event of a dispute.
- Arnold allegedly learned of the trade secret in Minnesota.
- Arnold allegedly disclosed the trade secret in Minnesota.
- Arnold allegedly has profited from the misuse of this trade secret through her current employer, VSI, a Minnesota corporation, by the manufacture of competing products in Minnesota.

**B.     Plaintiffs' Allegations of Arnold's Contacts are Insufficient to Establish Jurisdiction.**

Instead of discussing the most relevant and undisputed facts, Plaintiffs attempt to establish Arnold's contacts with Massachusetts by boldly taking Arnold's actions out of context. Plaintiffs claim:

- **Arnold actively sought employment with Diomed.** Plaintiffs' Memo at 5-6. To the contrary, it was Diomed that actively sought Arnold's employment. Plaintiffs don't tell the Court that Plaintiffs' acquisition of Laser Peripherals was conditioned on the continued employment of Arnold and several other key employees. Second Declaration of Nancy Arnold ("Second Arnold Dec.") at ¶ 5. Nor do Plaintiffs tell the Court that, as President of Laser Peripherals, Arnold negotiated the employment agreements of all employees Diomed insisted remain with the proposed new company, FibersDirect.
- **Arnold prepared a business plan using Diomed's confidential information.** Plaintiffs don't reveal that Diomed requested Arnold prepare the business plan for the proposed new company. Second Arnold Dec. at ¶ 7. Nor do Plaintiffs fully explain how the marketing plan, which nowhere mentions the "Improved EVLT kit," "marked sheaths" or sheaths of any kind, relates to their claims.
- **Arnold worked with a Massachusetts accounting firm.** Again, Plaintiffs omit the fact that Plaintiffs recommended Arnold use the BDO Siedman accounting firm to conduct the accounting. Second Arnold Dec. at ¶ 6.

Viewed in the proper context, these facts demonstrate that Arnold did not "purposefully avail" herself of the benefits and protections of Massachusetts law.[1]

## III.    ARGUMENT

**A.    The Court Lacks Personal Jurisdiction Over Arnold.**

    *1.    Arnold's contacts do not satisfy the Massachusetts long-arm statute.*

        a.    <u>**Arnold has not transacted business in the state.**</u>

It is well established that "transacting business" under M.G.L. c. 223A, § 3(a) (hereinafter "Section 3" or "§ 3") is designed to identify "deliberate" contacts with the state which are "part of a larger systematic effort on [the nonresident's] part to obtain business from Massachusetts businesses and residents." <u>Aub. v. Technicolor Entm't Serv.</u>, 224 F.Supp. 2d 371, 373 (D. Mass. 2002). As such, it is important to consider who initiated the contact. <u>Lyle Richards Int.'l, Ltd. v. Ashworth, Inc.</u>, 132 F.3d 111, 113 (1st Cir. 1997).

Plaintiffs rely heavily on telephone calls and e-mails as the source of Arnold's contacts with Massachusetts. However, it is unrefuted that <u>Plaintiffs</u> initiated the contacts with Arnold, and that Arnold's contacts with Massachusetts were entirely for the purpose of assisting Plaintiffs in acquiring Arnold's employer.[2] Indeed, Plaintiffs provide less than ten (10) e-mails from Arnold to Diomed, all of which relate to Arnold's efforts to assist Diomed in the transaction. Klein Aff. Exs. A & B. Even the few e-mails regarding Arnold's potential employment with Plaintiffs were sent because Plaintiffs conditioned

---

[1]    Plaintiffs' Memo contains numerous other facts that are completely irrelevant to the determination of jurisdiction: 1) Plaintiffs accuse Arnold of "purging" her computer before leaving Laser Peripherals. Plaintiffs' Memo at 7. This unjustified accusation, which Arnold vehemently denies, has no connection to Arnold's contacts with Massachusetts or the determination of jurisdiction. Second Arnold Dec. at ¶ 9; 2) Plaintiffs use VSI's contacts with Massachusetts in a bald attempt to pad the facts. Plaintiffs' Memo at 8. Defendants have not challenged jurisdiction over VSI, and VSI's contacts cannot be imputed to Arnold simply because she is a VSI employee; and 3) Plaintiffs' claim that the key witnesses are in Massachusetts is wrong factually and is legally irrelevant. The only key witness identified by Plaintiffs, Peter Klein, does not live in Massachusetts, and the other key witnesses, such as Arnold, live in Minnesota. Moreover, neither jurisdiction nor venue is based on the location of witnesses. Even if it were, this case would clearly belong in Minnesota.

[2]    Plaintiffs also allege that Arnold had contacts with Diomed personnel in Massachusetts over a period of four years prior to the transaction with Laser Peripherals. Plaintiffs' Brief at 5. This is incorrect. Arnold's contacts with Diomed prior to the transaction were primarily with Diomed's office in the United Kingdom, because Diomed did not establish its Massachusetts office until shortly before the transaction. Second Arnold Dec. at ¶ 9. In any event, these contacts are irrelevant as they are unrelated to the claims against Arnold. <u>See</u> Section A(2) infra.

the acquisition of Laser Peripherals on the continued employment of key employees such as Arnold. Second Arnold Dec. at ¶ 5. The same is true for the business plan prepared by Arnold. Arnold drafted the plan at Plaintiffs' request so that Diomed could assess whether Laser Peripheral's merger with FibersDirect would be profitable. Id. at ¶ 8. It can hardly be said that any of these contacts were Arnold's deliberate, "systematic efforts" to obtain business in Massachusetts.[3]

In addition, Arnold's contacts with Massachusetts should be discounted, because these contacts were all made in Arnold's capacity as Laser Peripheral's president. Courts in Massachusetts and the First Circuit – not just the First Circuit in Escude Cruz v. Ortho Pharmaceutical Corp., 619 F.2d 902, 906 (1st Cir. 1980) – have rejected jurisdiction over a corporate officer, in part, because the officer was acting as a representative of the corporation. See, e.g., Mass. School of Law at Andover, Inc. v. Amer. Bar Ass'n, 142 F.3d 26, 34 (1st Cir. 1998) (affirming a decision to dismiss for lack of personal jurisdiction individual members of the American Bar Association's review board whose only contact with Massachusetts was through their positions on the board); Roy v. Roy, 715 N.E.2d 70, 71-72 (Mass. App. Ct. 1999) (finding that checks drawn and correspondence written by defendant as an officer of defendant corporation were insufficient for jurisdiction); Kleinerman v. Morse, 533 N.E.2d 221, 224-25 (Mass. App. Ct. 1989) (holding that jurisdiction did not exist over a corporate officer simply because he attended and voted at corporate meetings in Massachusetts). Indeed, this case is distinguishable from the cases relied on by Plaintiffs (Champion Exposition Serv. Inc. v. Hi-Tech Elect. LLC, 273 F.Supp.2d 172 (D. Mass. 2003) and Working Group Tech. Corp. v. MGM Grand Hotel, LLC, 246 F.Supp.2d 102 (D. Mass. 2003), because the issue is whether the Arnold's contacts on behalf of Laser Peripherals are enough to constitute "transacting business" for Arnold, not Laser Peripherals.

### b.  Arnold's contacts don't satisfy § 3(d).

Plaintiffs also have failed to satisfy the second prong of § 3(d) by failing to demonstrate that Arnold had a persistent course of conduct in the Commonwealth. As discussed above, Arnold's contacts

---

[3]  Massachusetts courts have rejected similar contacts of defendants who have been pulled into the Commonwealth because of Plaintiffs' attempts to sell them goods or services. See, e.g., New Hampshire Ins. Guaranty Ass'n v. Markem Corp, 676 N.E.2d 809, 812-13 (Mass. 1997); Stanton v. AM General Corp., 735 N.E.2d 407, 410 (Mass. App. Ct. 2000).

with Massachusetts, which were more sporadic than persistent, were entirely on behalf of her employer, Laser Peripherals. Her actions fall far short of the regular, personal solicitation of business directed at Massachusetts' residents that is envisioned by § 3(d). See, e.g., High County Investor, Inc. v. McAdams, Inc., 221 F.Supp. 2d 99, 103, (D. Mass. 2002) (holding that maintaining a web-site and sending advertisements to Massachusetts residents did not constitute a persistent course of conduct). Since Plaintiffs initiated and perpetuated the contacts, this lack of persistent conduct on the part of Arnold is even more true.

### 2. The claims against Arnold do not "arise out of" nor are they "related to" Arnold's contacts.

Plaintiffs have not established that the few contacts Arnold had in Massachusetts were sufficiently related to Plaintiffs' claims to satisfy the requirements of § 3 or due process.[4] Under § 3, Plaintiffs must prove that "but for" Arnold's contacts with Massachusetts, Plaintiffs' claims would not have arisen. Lyle, 132 F.3d at 114. To satisfy "relatedness" under due process, Plaintiffs must prove that Arnold's actions were the "proximate cause" of Defendants' injuries. Nowak v. Tak How Inv., Ltd., 94 F.3d 708, 715 (1st Cir. 1996). Plaintiffs have failed to satisfy either of these standards.

Contrary to Plaintiffs claims, Plaintiffs would not have been injured "but for" Arnold's contacts with the Commonwealth. Arnold's contacts were not "instrumental to the formation" of the NDA - the standard used by courts in assessing contacts under a breach of contract claim (Phillips Exeter Acad. v. Howard Phillips Fund, 196 F.3d 284, 289 (1st Cir. 1999)); they were incidental. Scott Sundet, Arnold's former boss at Laser Peripherals, states only that Arnold "identified the need" for the NDA and "forward[ed] the draft to Plaintiffs. Affidavit of Scott Sundet at ¶ 6. Similarly, Peter Klein, Diomed's former CEO, states that Arnold conceived of the idea and circulated drafts and revisions. Klein Aff. at ¶¶ 6-7. These contacts indicate only that Arnold acted as the conduit between Laser Peripherals in Minnesota and Diomed in Massachusetts. Because the NDA was integral to Diomed's due diligence, it would have been entered into even without Arnold's involvement. Plaintiffs' trade secret claims are even

---

[4] In the interests of brevity, these separate elements under § 3 and the 14th Amendment are discussed together. However, each must be satisfied separately for the Court to exercise jurisdiction over Arnold.

less related to Arnold's contacts with Massachusetts as all aspects of the trade secret claim – receipt, disclosure and misuse – all occurred in Minnesota.

Plaintiffs' claims fall even further short of satisfying the standards of "relatedness" under due process. As Plaintiffs admit, the First Circuit has imposed the higher standard of "proximate cause" for due process. Plaintiffs' Memo at 17. While the First Circuit has also agreed that this should be a flexible standard, it is only a "small overlay" on the "proximate cause" standard and has no application here. Nowak, 708 F.3d at 716.

The alleged disclosure of confidential information is both the factual and legal cause of Plaintiffs' breach of contract and trade secret claims. Numerous courts have held that a claim for misappropriation of a trade secret and violation of a confidentiality provision arise out of the disclosure of the alleged secret and, therefore, are based on the location of the disclosure. See, e.g., Drayton Enter., L.L.C. v. Dunker, 142 F.Supp.2d 1177, 1184 (D. N.D. 2001) (holding that for the purposes of personal jurisdiction the relevant contact was where the trade secret was disclosed); Hicklin Eng'g, L.C. v. R.J. Bartell, 116 F.Supp.2d 1107, 1111 (S.D. Iowa 2000) (holding the same under facts very similar to this case); Patriot Systems, Inc. v. C-Cubed Corp., 21 F.Supp.2d 1318, 1325 (D. Utah 1998) (same); Xedit Corp. 456 F.Supp. 725, 729 (S.D.N.Y. 1978) (same). As Plaintiffs admit that this disclosure occurred in Minnesota (Plaintiffs' Memo at 19), Arnolds' contacts with Massachusetts cannot be the proximate or legal cause of Plaintiffs injury.[5]

3.    *Exercising jurisdiction over Arnold would violate concepts of fair play and substantial justice.*

The "constitutional touchstone" of personal jurisdiction and due process is "whether the defendant purposefully established 'minimum contacts' in the forum State." Asahi Metals Ind. Co., Ltd. v. Sup. Ct. of Cal., Solano County, 480 U.S. 102, 108-09 (1987). This principle is so strong that it is unreasonable to exercise jurisdiction over a defendant even if minimum contacts with the forum exist, if

---

[5]    There is no need for the Court to resort to applying the gloss of "but-for" analysis to this case as Plaintiffs suggest. The special circumstances that existed in Nowak do not apply to this case. As discussed below, unlike in Nowak, Arnold does not "reach into" Massachusetts to avail herself of the rights and privileges of the Commonwealth.

the defendant did not purposefully establish those contacts. See generally Id.; see also Jana Brands, Inc. v. Nexifm, Inc., 2003 WL 164251 (D. Mass. 2004); High County Investor, 221 F.Supp. at 104.

- Although Plaintiffs have tried to spin the facts to make it appear as if Arnold "reached into" the Commonwealth, the complete and undisputed facts, as discussed above, show Plaintiffs pulled Arnold into the forum. Diomed initiated contact with Arnold and directed her actions during the course of the transaction. Moreover, Arnold could not have foreseen being hauled into a Massachusetts court: 1) The NDA stated that any dispute would be arbitrated in Minnesota; and 2) no other agreement, including Arnold's nascent employment agreement, was finalized or signed. Because she specifically agreed to arbitrate in Minnesota it is unreasonable to argue that she availed herself of the rights of Massachusetts law. See Champion, 273 F.Supp.2d at 176.

Indeed, close examination of Plaintiffs' evidence of purposeful availment indicates that it is based on nothing more than the fact that Arnold participated in planning the proposed Diomed acquisition of Laser Peripherals. Viewed in a broad context, it is clear Arnold did not personally purposefully direct her actions toward Massachusetts. Without more, Plaintiffs' conclusory offering of proof is not enough to withstand the rigors of due process.

### 4.    *Exercising jurisdiction over Arnold would be unreasonable.*

Plaintiffs cannot escape their burden of proving jurisdiction over Arnold by simply arguing that Arnold "waived" her constitutional rights to due process by not briefing the issue of reasonableness in detail. The reasonableness of personal jurisdiction is always a consideration, but "[t]he weaker the plaintiffs showing on the first two prongs (relatedness and purposeful availment), the less a defendant need show in terms of unreasonableness to defeat jurisdiction." Nowak, 94 F.3d at 717.

The purpose of "reasonableness" is to assist the court in achieving substantial justice when determining jurisdiction. In this case, substantial justice would be done by denying jurisdiction over Arnold. This action is against a Minnesota resident over confidential information allegedly relayed in Minnesota during the attempted acquisition of a Minnesota corporation. The alleged disclosure occurred in Minnesota, and the alleged offending products are designed and manufactured in Minnesota by a Minnesota corporation. It is a burden on Arnold to travel to Massachusetts for this action. It is further a

burden on this Court to try this action when the Commonwealth has no interest in the issues.  None of the cases cited by Plaintiffs regarding jurisdiction involve facts similar to this case where a corporate officer is pulled into the forum by a transaction initiated by Plaintiffs and despite contractual provisions stating another state is the proper forum.  The interests of justice and efficiency would be best served if the entire action were dismissed or transferred to the U.S. District Court in Minnesota.

**B.      The Court Should Dismiss This Action as Arnold is an Indispensable Party.**

Plaintiffs' sole opposition to dismissing this action under Fed. R. Civ. P. 19(a) is that Arnold is not a "necessary" party.[6]  Plaintiffs' characterization of "necessary" is far too narrow.  As Defendants have demonstrated, Arnold is a necessary party, because: 1) Arnold has an interest that may be effected by the outcome of the litigation; and 2) Plaintiffs cannot obtain complete relief without her.

Plaintiff first argue that it is "merely a theoretical possibility" that Arnold's interest will be effected by the outcome of this litigation.  Plaintiffs' Brief at 26 (citing Generadora de Electricidad v. Foster Wheeler, 92 F.Supp.2d 8, 16 (D. Puerto Rico 2000)).  The threat to Arnold's interest is hardly theoretical.  In Generadora, Plaintiffs had not alleged that the "necessary" defendant was responsible for all of the wrongs resulting in plaintiff's injuries, and the necessary defendant merely feared that evidence would come out in the case that might indicate it was responsible for other damages.  Id.  Here, Plaintiffs' have alleged that Arnold stole trade secrets from Plaintiffs and was involved in a conspiracy with VSI to unfairly compete with them.  The prospect of Arnold being accused of wrongdoing if she is not a party to this action is not theoretical; it is inevitable.

Next, Plaintiffs argue that Arnolds' interest is not at risk, because she potentially would be subject to merely "inconsistent adjudications" not "inconsistent obligations."  Plaintiffs' Memo at 26.  Plaintiffs again are incorrect.  As Plaintiffs' Memo emphasizes, as an employee of VSI, Arnold would be bound by any injunctive relief granted by the Court even if she were not a party.  Arnold would also be bound by any injunctive relief issued in a separate action.  The outcome of the two separate adjudications

---

[6]      Despite filing an over-length brief of thirty pages, Plaintiffs' address the second prong of Rule 19 – whether Arnold is an "indispensable" party – with nothing more than a conclusory statement that Defendants' arguments are "unavailing."  Plaintiffs' Memo at 27.  Defendants will therefore presume that Plaintiffs have waived their arguments regarding whether Arnold is indispensable and not address the subject further here.

could be more than inconsistent; it could impose inconsistent obligations. Conversely, if Arnold did not remain an employee of VSI and was not a party to this litigation, injunctive relief against VSI would not bind Arnold, and Plaintiffs would be without complete relief.

Plaintiffs have crafted a theory that Arnold and VSI conspired against Diomed and have requested injunctive relief to end the conspiracy. Granting an injunction without Arnold could leave Plaintiffs without complete relief or impose inconsistent obligations on Arnold. Thus, this Court should dismiss this action pursuant to Rule 19 if it finds it has no jurisdiction over Arnold.

**C.     The Court Should Dismiss Or Transfer The Case Because Venue Is Improper.**

In their Memo, Plaintiffs attempt to bend the law and freight the facts regarding venue but still fail to establish that venue is proper in Massachusetts. First, Plaintiffs attempt to twist the standards for venue. Contrary to Plaintiffs' assertions, a plaintiff's choice of forum is not "rarely disturbed" when considering whether venue is proper pursuant to 28 U.S.C § 1391. Plaintiffs' Memo at 28. Section 1391 strictly limits a plaintiff's choice of venue to protect defendants from litigation in unfair or inconvenient locations. Leroy v. Great Western United Corp., 443 U.S. 173, 183-84 (1979). For this reason, Congress did not make the plaintiff's residence the basis for venue under § 1391. Id. The cases relied on by Plaintiffs pertain to the doctrine of forum non conveniens under 28 U.S.C. § 1404 and are inapposite. Forum non conveniens is a discretionary doctrine unrelated to the venue limitations imposed by § 1391.

Second, Plaintiffs attempt to obscure the substantial acts and omissions outside of Massachusetts by arguing that the transaction should be viewed as a whole and then by omitting the most substantial acts. Properly viewed as a whole, substantially all of the acts occurred *outside* of Massachusetts, including: 1) the formation of the NDA; 2) the alleged receipt of confidential information subject to the NDA; 3) the alleged disclosure of the confidential information (trade secret); and 4) the alleged misuse of the confidential information (trade secret). See Hicklin, 116 F.Supp.2d at 1111 (holding the location of these acts to be critical in a case involving nearly identical claims). None of these acts, much less a substantial part of them, occurred in Massachusetts. They all occurred in Minnesota. Moreover, unlike Uffner v. La

Reunion Franchaise, 244 F.3d 38, 43 (1st Cir. 2001), relied on by Plaintiffs, there is a forum

selection clause requiring the breach of the NDA to be arbitrated in Minnesota. See id. (noting

the absence of a forum selection clause in making its venue determination).

Third, Plaintiffs offer facts to establish venue that are either not acts or not substantial.

Half of Plaintiffs' acts are insubstantial, such as the fact that Diomed sent Arnold information

from Massachusetts and that Plaintiff made the decision to pursue the transaction in

Massachusetts. Plaintiffs' Memo at 29. If the location where Plaintiff made decisions or sent

information was considered substantial, Plaintiffs' home forum would nearly always be the

proper venue. As discussed above, Congress clearly chose not to make Plaintiffs' home forum

the basis for venue.

Many of the other acts offered by Plaintiffs are not acts at all but rather contacts. For

example, the act of Arnold sending e-mails or placing phone calls to Massachusetts is an act that

occurred in Minnesota and only a contact with Massachusetts. The law is very clear that the

determination of venue is based on the location of acts and not the existence of contacts. See

Cottman Transmission Sys., Inc. v. Martino, 36 F.3d 291, 294-95 (3d Cir. 1994). Plaintiffs have

not proven that a substantial portion of the acts or omissions occurred in Massachusetts. Venue is

therefore not proper in Massachusetts, and the act should be dismissed or transferred to the U.S.

District Court of Minnesota.

**CONCLUSION**

For the reasons cited above, Defendants respectfully request that the Court grant its Motion

pursuant to Fed. R. Civ. P. 12 and 19.

Dated: April 5, 2004                          VASCULAR SOLUTIONS, INC.
                                              AND NANCY L. ARNOLD

                                              By their Attorneys,

J. Thomas Vitt                                /s/ John R. Bauer
Todd R. Trumpold                              Steven L. Feldman (BBO #162290)
Dorsey & Whitney LLP                          John R. Bauer (BBO #630742)
50 South Sixth Street Suite 1500              Ruberto, Israel & Weiner, P.C.
Minneapolis, MN  55402-1498                   100 North Washington Street
(612) 340-5675                                Boston, MA 02114
                                              (617) 742-4200

10