IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DIOMED INC., DIOMED HOLDINGS INC. and DIOMED LIMITED,<br><br>                    Plaintiffs,<br><br>v.<br><br>VASCULAR SOLUTIONS, INC. and NANCY L. ARNOLD,<br><br>                    Defendants. | Civil Action No. 03 CV 12498 RWZ<br><br>**MEMORANDUM IN SUPPORT OF DEFENDANT VASCULAR SOLUTIONS, INC.'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND ANSWERS TO INTERROGATORIES 4, 5, AND 6** |

## INTRODUCTION

Defendant Vascular Solutions, Inc. ("VSI") moves to compel Diomed[1] to produce documents and answer interrogatories pursuant to Fed. R. Civ. P. 26(a)(1)(B) and Fed. R. Civ. P. 37.  Diomed's Complaint claims that Diomed disclosed trade secret information to Nancy Arnold under the terms of an April 2, 2002 Non-Disclosure Agreement ("NDA") between Diomed Holdings Inc. and Arnold's former employer, Laser Peripherals, LLC ("Laser Peripherals").  Diomed claims that Arnold breached the NDA by disclosing Diomed's trade secrets to her new employer, Defendant VSI.

The NDA has very specific requirements regarding the disclosure and treatment of confidential information, designed to protect both parties from spurious claims:

>   (1)  For documentary information to be protected under the NDA, it "must be marked" as Confidential Information at the time of its disclosure or within 10 business days thereafter.

---

[1]  Plaintiffs' Complaint refers to Diomed Inc., Diomed Holdings Inc., and Diomed Ltd. collectively as "Diomed."  Defendants will do so also, except when necessary to distinguish among the Diomed entities.

> (2) For information disclosed verbally to be protected under the NDA, it must be "confirmed in writing" within 3 business days of the verbal disclosure.

NDA, attached to the Declaration of J. Thomas Vitt ("Vitt Dec.") as Exhibit 1.

Therefore, to file its Complaint alleging that Arnold breached the NDA, Diomed must have documentary evidence showing either: 1) the written disclosure of confidential information marked as such at the time of disclosure or within 10 business days; or 2) the written confirmation of the confidential nature of a verbal disclosure, given within three business days of the disclosure.

Since early July, VSI and Arnold have requested that Diomed identify and produce this documentary evidence as part of Diomed's initial disclosures. In addition, VSI has served three interrogatories on Diomed (Numbers 4, 5, and 6) which ask Diomed to specifically identify three categories of information:

> 1) confidential information or trade secrets allegedly disclosed to Arnold in documents that were *marked* as confidential at the time as required by the NDA;
>
> 2) confidential information or trade secrets allegedly disclosed verbally to Arnold and *confirmed in writing* as required by the NDA; and
>
> 3) confidential information or trade secrets allegedly disclosed verbally to Arnold, but not confirmed in writing as required by the NDA.

Interrogatories 4 and 5 also ask Diomed to identify the documentary evidence required by the NDA. Vitt Dec. Ex. 5.

Diomed has failed to answer Interrogatories 4, 5, and 6. Diomed has also failed to specifically identify and produce the documentary evidence called for by Interrogatories 4 and 5, and also required to be produced as part of Diomed's initial disclosures.

Defendants respectfully request the Court order Diomed to immediately:

> 1) specifically identify and produce the *marked documents*, if any in fact exist, evidencing disclosure of confidential information in documentary form under the NDA;
>
> 2) specifically identify and produce the *written confirmation*, if any exists, of verbal disclosures made under the NDA;
>
> 3) provide complete, sworn answers to Interrogatories 4, 5, and 6; and
>
> 4) pay Defendants' attorneys' fees and costs incurred in bringing this motion.

## **FACTS**

### I.  THE NON-DISCLOSURE AGREEMENT

In 2002, while Arnold was serving as President of Laser Peripherals, Diomed approached Laser Peripherals about buying the company. Complaint ¶ 24. To facilitate Diomed's due diligence review of Laser Peripherals, Diomed and Laser Peripherals signed an NDA to protect confidential information disclosed during due diligence. *See* NDA, Vitt Dec. Ex. 1. The NDA specifically requires that:

> 1. To be protected by this Agreement, Confidential Information must be marked (or confirmed in writing within 3 business days in the case of verbal disclosures or facility visits as required herein) as such by each party at the time of its disclosure or delivery to the other party or within 10 business days thereafter. In the case of disclosure by way of inspection of the facilities of one party, the other party shall be advised at the time of such inspection, or within 10 business days thereafter, as to those aspects which include Confidential Information.

*Id.* The NDA governed all issues regarding confidentiality between the parties. It states:

> 10. This Agreement constitutes the entire agreement of the parties with respect to the subject matter hereof, and supersedes all previous proposals, oral and written, and all negotiations, conversations or discussions heretofore had between the parties related to this Agreement. Each party acknowledges that it has not been induced to enter this Agreement by any

representations or statements, oral or written, not expressly contained herein.

*Id.*

Thus, to be considered confidential and be protected under the NDA, information disclosed in writing had to be marked confidential (at or within 10 days of disclosure or delivery) and information disclosed verbally had to be confirmed in writing as confidential within 3 days of disclosure.

## II.    THE COMPLAINT

All of Diomed's claims against Arnold and many of its claims against VSI are based on Arnold's alleged breach of the NDA. Diomed claims it disclosed to Arnold trade secret information about the design of its Improved Endovenous Laser Therapy (EVLT®) Kit and confidential marketing information. Complaint ¶¶ 29-40, 131-37. Count IX of the Complaint (Breach of the NDA) specifically alleges that "all of [Diomed's Trade Secrets] were provided to [Arnold] *pursuant to the Diomed-LP NDA, were marked confidential* or were provided to her with the express understanding that they would not be disclosed to third parties…." Complaint ¶134.

The Complaint was filed on December 11, 2003. Therefore, before December 11, 2003, Diomed's counsel must have reviewed *marked documents* evidencing the disclosure of confidential information under the NDA or *written confirmation* of verbal disclosures made under the NDA. If they did not do so, Diomed and its counsel had no evidentiary basis for alleging that Nancy Arnold breached the NDA. *See* Fed. R. Civ. P. 11(b)(3).

4

**III.   DIOMED REFUSES TO ANSWER INTERROGATORIES OR PROVIDE DOCUMENTARY EVIDENCE OF DISCLOSURES UNDER THE NDA**

    **A.   Defendants Request the NDA Documents**

On July 2, 2004, counsel for Defendants requested that Diomed provide an itemized list of the specific confidential and trade secret information allegedly disclosed by Diomed to Arnold.  Defendants also requested that Diomed produce the marked documents or the written confirmations under the NDA.  *See* Vitt Dec. ¶ 3 and Ex. 2.

Defendants' counsel explained to Diomed's counsel that the reason for the request was two-fold.  First, pursuant to its initial disclosure requirements under Fed. R. Civ. P. 26(a)(1)(B), Diomed was required to provide the documents evidencing disclosures under the NDA as evidence supporting its claims.  Second, under established legal precedent, Diomed was required to identify the trade secrets it alleges were disclosed and misappropriated prior to VSI's production of documents.  See Email from J. Vitt to H. Bart, cc M. Albert, July 2, 2004 (Vitt Dec. Ex. 2).  Defendants' counsel sent counsel for Diomed a letter on July 15, 2004 further explaining the basis for the request and providing citations to supporting case law.  *See* Letter from J. Vitt to M. Albert, July 15, 2004 (Vitt Dec. Ex. 3).[2]  Counsel for Diomed never provided any substantive response to the July 15, 2004 letter.  Diomed also ignored Defendants' request for production of the NDA documents.

---

[2]   The letter contained cites to the following cases supporting Defendants' position that Diomed must identify the trade secrets allegedly misappropriated early in the litigation: Microwave Research Corp. v. Sanders Assoc., Inc., 110 F.R.D. 669, 673 (D. Mass. 1986); Smithkline Beecham Pharm. Co., v. Merch, 766 A.2d 442, 447 (Del. 2000); *also* Porous Media Corp. v. Midland Brake Inc., 187 F.R.D. 598, 600 (D. Minn. 1999); Automated Tech., Inc. v. Eller, 160 F.Supp.2d 915, 926 (S.D. Cal.

### B. Diomed Fails to Produce the NDA Documents in its Initial Disclosures.

Fed. R. Civ. P. 26(a)(1)(B) requires Diomed to provide a copy of documents that it "may use to support its claims." The *marked documents* and *written confirmation documents* therefore must be disclosed as part of Diomed's Rule 26 disclosures. These are documents that Diomed *must use* to support its claims, because without such documents Diomed has no claim for breach of the NDA.[3] Diomed's Rule 26 disclosures, served on July 7, 2004, did not identify any marked documents or written confirmations. *See* Diomed's Initial Disclosures (Vitt. Dec. Ex. 4). Despite VSI's repeated requests, Diomed has never produced these documents.

### C. To Obtain A Discovery Extension, Diomed Promises to Provide the NDA Documents "As Soon As Possible."

After Diomed failed to voluntarily disclose the trade secret information allegedly disclosed to Arnold, Defendants served Diomed with discovery requests seeking the same information. *See* VSI's First Set of Interrogatories and Requests for the Production of Documents and Things to Plaintiffs ("Discovery Requests") (Vitt. Dec. Ex. 5). Three Interrogatories (Numbers 4, 5 and 6) specifically sought separate identification of three categories of information: 1) confidential information disclosed to Arnold in writing and marked confidential in accordance with the NDA; 2) confidential information disclosed to Arnold orally and confirmed in writing in accordance with the NDA; and 3) confidential information disclosed to Arnold verbally, but not confirmed in writing in

---

2001); Del Monte Fresh Produce Co. v. Dole Food Co., Inc., 148 F.Supp.2d 1322, 1323-25 (S.D. Fla. 2001).

[3] It is a question for another day whether Diomed has any legitimate legal basis for a claim based on alleged verbal disclosures that were not confirmed in writing as

accordance with the NDA:

> **INTERROGATORY NO. 4:** Identify and describe in detail each alleged item of Confidential Information (as defined in the Diomed-LP NDA) or Trade Secrets that Diomed claims was disclosed to Nancy Arnold and was marked pursuant to Paragraph 1 of the Diomed-LP NDA, state the date on which each such alleged disclosure and marking of Confidential Information or Trade Secrets took place, and identify all documents establishing the marking and the date of the marking of the Confidential Information or Trade Secrets allegedly disclosed to Arnold.
>
> **INTERROGATORY NO. 5:** Identify and describe in detail each alleged item of Confidential Information (as defined in the Diomed-LP NDA) or Trade Secrets that Diomed claims was disclosed to Nancy Arnold verbally and was confirmed in writing pursuant to Paragraph 1 of the Diomed-LP NDA, state the date on which each such alleged disclosure and confirmation in writing took place, and identify all documents establishing the confirmation in writing of the alleged Confidential Information or Trade Secrets allegedly disclosed to Arnold.
>
> **INTERROGATORY NO. 6:** Identify and describe in detail each alleged item of Confidential Information (as defined in the Diomed-LP NDA) or Trade Secrets that Diomed claims was disclosed to Nancy Arnold verbally and was not confirmed in writing pursuant to Paragraph 1 of the Diomed-LP NDA, state the date on which each such alleged disclosure took place, and identify all documents concerning the alleged verbal disclosure to Arnold.

*Id*.

On August 6, 2004, the day Diomed's discovery responses were due, counsel for Diomed called Defendants' counsel and requested two additional weeks to respond to the requests. Vitt Dec. at ¶ 7. Defendants' counsel stated that he would grant the extension if Diomed would produce the NDA documents as soon as possible. *Id*.

Michael Albert, Diomed's Boston counsel, informed Defendants' counsel during this August 6 phone call that he did not know if any such documents even existed, because he had only recently taken over as lead counsel from Diomed's New York

---

required by the NDA.

7

counsel. *Id*. at ¶ 8. Defendants' counsel pointed out that, under Fed. R. Civ. P. 11, Diomed's New York counsel must have reviewed the NDA documents prior to filing the Complaint on December 11, 2003, and therefore Diomed should be able to obtain the documents simply by calling New York counsel. *Id*. Diomed's counsel agreed to produce the NDA documents "as soon as possible", and Defendants' counsel agreed to the requested two-week extension of discovery. *See* Email chain between M. Albert and T. Vitt, August 6 and 13, 2004 (Vitt Dec. Ex. 6).

### D. Diomed Breaks its Promise and Fails to Comply with Discovery.

Diomed took the two week extension but never produced the NDA documents, despite repeated requests by counsel for Defendants. *Id.* More importantly, Diomed failed to answer Defendants' interrogatories relating to the confidential and trade secret information allegedly disclosed to Arnold. *See* Diomed's Answers to VSI's First Set of Interrogatories to Plaintiffs (Vitt Dec. Ex. 7).

Diomed failed to specifically and separately identify the three categories of information requested by VSI's interrogatories. Diomed also failed to specifically identify and produce the *marked documents* and *written confirmation* required by the NDA. Instead, for its answer to all three interrogatories, Diomed relied on its answer to Interrogatory Number 4, which stated:

> **RESPONSE NO.4**
>
> During the discussions between Diomed and Laser Peripherals, a significant amount of confidential information was provided by Diomed personnel to Arnold under the protection of the Diomed-LP NDA to maintain certain Diomed information confidential. In addition separate oral agreements between Arnold and Diomed existed in which Arnold agreed to maintain the confidentiality of certain Diomed information disclosed to her. Included in that information disclosed to Arnold were

8

the following items:

- Diomed's planned enhancements to EVLT® sheath, including markers on fibers, markers on sheath, technical details of the sheath and other improvements intended to assure proper delivery of energy.

- Diomed's pursuing of patent protection covering a number of improvements to its EVLT® kit.

- Diomed's anticipated launch date for its improved EVLT® products.

- Diomed's proprietary overall marketing and strategy plans.

- Diomed's proprietary estimates made anticipating the size of the potential EVLT® market.

- Diomed's proprietary sales projects for its sheath product.

- Diomed's proprietary assumptions regarding future pricing and sales.

- Diomed's proprietary production costs.

- Diomed's proprietary anticipated profits.

- The confidential strategic plan for using the potential merged entity FibersDirect for web-based sales.

This confidential information was provided to Arnold for purposes of Diomed's acquisition of Laser Peripherals ("LP") as well as to assure Arnold that Diomed was well-positioned to maintain its status as an industry leader after the acquisition. Arnold requested this information on behalf of herself and LP for purposes of evaluating the acquisition on behalf of LP and for the purposes of evaluating Arnold's future employment with the acquired entity.

The information was provided by Diomed for purposes of ensuring that LP, and the eventual acquired entity, could handle the expected business activities of Diomed after the merger. The information was also provided to provide LP's employees, including Arnold, a smooth transition from transacting business on behalf of LP to transacting business on behalf of a Diomed subsidiary.

9

> This information was exchanged throughout the spring and summer of 2002.
>
> Throughout the exchange of this information Arnold was acting under the Diomed-LP NDA as well as under oral agreements to maintain Diomed information confidential. The Letter of Intent signed by Diomed and Arnold incorporated this agreement of confidentiality and provided written confirmation that these sensitive materials were to be kept confidential. The actions of both Diomed personnel and Arnold throughout the acquisition discussions reflect the knowledge and intent by all parties to maintain this information in the strictest confidence. Arnold understood the need for her to take steps to ensure the information's confidentiality and to uphold her fiduciary duty to Diomed.
>
> Pursuant to Fed. R. Civ. Pro. 33(d), the answer to this interrogatory is also reflected in one or more documents which will be produced by Diomed to VSI.

Although Diomed's answer states that it will produce documents in response to this interrogatory, it never has.[4] Defendants' counsel objected to Diomed's answer to these interrogatories in an email to Diomed's counsel on August 27 and asked Diomed to supplement its responses with a full answer to each interrogatory. *See* Email from T. Vitt to M. Albert, August 27, 2004 (Vitt Dec. Ex. 8). Counsel for Diomed never responded to this request. A meet and confer telephonic conference was held on September 3, 2004 without resolving the issues in this motion.

---

[4]   Defendants have pressed Diomed for a date to mutually exchange all documents requested in discovery, but Diomed has not offered Defendants a specific date. Documents responsive to Interrogatory Numbers 4, 5, and 6 were to be produced immediately and ahead of the overall production, however.

10

## ARGUMENT

I. **DIOMED IS REQUIRED TO PRODUCE THE NDA DOCUMENTS AS PART OF ITS INITIAL DISCLOSURES.**

Federal Rule of Civil Procedure 26(a)(1)(B) requires a party "without awaiting a discovery request, provide to other parties…(B) a copy of, or a description by category and location of all documents…[and] things that are in the possession, custody, or control of the party…that may [be] use[d] to support its claims or defenses…." Diomed's core claim is that Diomed disclosed confidential and trade secret information to Arnold while Diomed was considering acquiring Arnold's former employer, Laser Peripherals, and that Arnold and VSI misappropriated that information. During the period in which the disclosure allegedly occurred, the NDA exclusively governed all exchanges of confidential information and required that all written confidential information be marked confidential and any confidential information disclosed orally be identified in writing within three days of the disclosure. *See* NDA (Vitt Dec. Ex 1). Thus, there must be a written record of every piece of confidential information Diomed disclosed to Arnold under the NDA. Counsel for Diomed was required to inquire into such evidence in accordance with Fed. R. Civ. P. 11 before filing the Complaint alleging breach of the NDA.[5] Defendants are entitled to have this information – it is central to the claims against them. The Court should therefore compel Diomed to produce immediately: 1) the marked documents, if any exist, evidencing the written disclosure of confidential information in accordance with the NDA; and 2) the written confirmation, if any exists,

---

5   In addition, counsel for Diomed promised to provide this documentation in exchange for an additional two weeks to respond to Defendants' discovery requests.

of confidential information disclosed orally in accordance with the NDA.

II. **UNDER THE FEDERAL RULES OF CIVIL PROCEDURE, DIOMED MUST COMPLETELY AND SPECIFICALLY ANSWER DEFENDANTS' INTERROGATORIES REGARDING THE CONFIDENTIAL INFORMATION ALLEGEDLY DISCLOSED TO ARNOLD.**

Federal Rule of Civil Procedure 33(b)(1) requires a party to answer each interrogatory separately and fully. Diomed's answers to Defendants' Interrogatory Numbers 4, 5 and 6 fail to meet this requirement. First, Diomed has not answered the interrogatories separately. Interrogatory Numbers 4, 5, and 6 ask Diomed to identify three distinct categories of confidential and trade secret information allegedly disclosed to Arnold:

> 1) Interrogatory Number 4 asks for information allegedly disclosed to Arnold in *writing* and *marked* in accordance with the NDA;
>
> 2) Interrogatory Number 5 asks for information allegedly disclosed to Arnold *verbally* and *confirmed in writing* in accordance with the NDA; and
>
> 3) Interrogatory Number 6 asks for information allegedly disclosed to Arnold *verbally* but not *confirmed in writing* in accordance with the NDA.

Diomed answered only Interrogatory Number 4 (and incompletely, as discussed below) and referred to its answer to Interrogatory Number 4 for its response to Interrogatories 5 and 6. This is unacceptable. The differences in how the information allegedly was disclosed to Arnold and whether the alleged disclosures complied with the procedures specified in the NDA is critical to Diomed's claim of breach of the NDA. Defendants deserve an answer to these specific questions, and Diomed is obligated to provide Defendants with the answer.

Second, Diomed did not answer Interrogatories Numbers 4, 5 and 6 fully.

12

Interrogatory 4 requests "the date on which each such alleged disclosure [was made]…[the] identity [of] all documents establishing the marking and the date of the marking of the Confidential Information or Trade Secrets…." *See* Discovery Requests (Vitt. Dec. Ex. 5).  Similarly, Interrogatory 5 requests the date of the oral disclosure, the identity of the confidential or trade secret information, and the date on which the oral disclosure was confirmed in writing, if at all.  *Id*.  Interrogatory 6 asks for the date of oral disclosures not confirmed in writing and the identity of the trade secret and confidential information disclosed.  *Id*.  Diomed does not answer any of these questions.

Diomed's answer to Interrogatory Number 4 gives only a general description of the type of information allegedly disclosed.  The NDA requires that any confidential information be specifically marked "confidential" or confirmed in writing after the disclosure has been made.  It does not permit general topics of information to be given blanket confidential treatment.  Defendants are entitled to know what confidential information was allegedly disclosed in marked documents under the NDA, what information was allegedly disclosed orally and confirmed under the NDA and what information was allegedly disclosed orally without written cvonfirmation as required by the NDA.  The Court should therefore compel Diomed to answer Interrogatories Numbers 4, 5 and 6 separately and fully.

## III.     Diomed Should Pay Defendants' Costs in Bringing this Motion.

Pursuant to Fed. R. Civ. P. 37(a)(4)(A), Diomed is required to pay Defendants' reasonable expenses in bringing this motion unless its nondisclosure was "substantially justified."  Diomed's failure to respond to Defendants' requests was not substantially justified.  Defendants made a good faith effort to obtain this information for two months,

and Diomed's obligation to produce this information is clear. There is no excuse for Diomed not to have complied with Defendants' request.

Defendants are entitled to have Diomed compensate Defendants for their reasonable attorneys' fees and costs in bringing this Motion. As of the filing of this Motion, Defendants estimate they have spent approximately 19 hours on this motion at a rate of $285 an hour for a total of $5,415.00. Vitt Dec. ¶ 13.

## CONCLUSION

For the reasons cited above, Defendants respectfully request that the Court order Diomed to:

1) specifically identify and produce the *marked documents*, if any in fact exist, evidencing disclosure of confidential information in documentary form under the NDA;

2) specifically identify and produce the *written confirmation*, if any exists, of verbal disclosures made under the NDA;

3) provide complete, sworn answers to Interrogatories 4, 5, and 6; and

4) pay Defendants' attorneys' fees and costs incurred in bringing this motion.

Respectfully submitted:

Dated:  September 7, 2004

                DORSEY & WHITNEY LLP


                By _____
                J. Thomas Vitt
                Todd Trumpold
                50 South Sixth Street, Ste. 1500
                Minneapolis, MN 55402-1498
                Telephone:  (612) 340-5675/7895
                Fax:            (612) 340-8856


                  /s/ Eric R. Barber-Mingo
                Steven L. Feldman (BBO #162290)
                Eric R. Barber-Mingo (BBO #564031)
                Ruberto, Israel & Weiner, P.C.
                100 N. Washington St.
                Boston, MA 02114
                Telephone: (617) 742-4200

                Attorneys for Defendant Vascular Solutions, Inc.