UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---

DIOMED, INC., DIOMED HOLDINGS, INC., and DIOMED LIMITED,

      Plaintiffs,

v.

VASCULAR SOLUTIONS, INC. and NANCY L. ARNOLD,

      Defendants.

Civil File No. 03 CV 12498 RWZ

---

# DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

J. Thomas Vitt (MN No. 183817)
Todd R. Trumpold (MN No. 0313890)
50 South Sixth Street, Ste. 1500
Minneapolis, MN 55402-1498
Telephone: (612) 340-2600

Steven L. Feldman (BBO No. 162290)
Ruberto, Israel & Weiner, P.C.
100 N. Washington St.
Boston, MA 02114
Telephone: (617) 742-4200

**Attorneys for Defendants Vascular Solutions, Inc. and Nancy L. Arnold**

## **INTRODUCTION**

Diomed's[1] twelve count Complaint arises from three sets of allegations: 1) Diomed's claim that Nancy Arnold ("Arnold") violated a Non-Disclosure Agreement ("NDA") between Diomed and Arnold's former employer, Laser Peripherals, by disclosing Diomed's concept for a marked sheath and other alleged "trade secrets" to Vascular Solutions, Inc. ("VSI"); 2) Diomed's claim that VSI infringed Diomed's "EVLT" trademark and trade dress rights through VSI's use of the abbreviation "ELT" for the endovenous laser therapy procedure and in the "look and feel" of its website and patient information brochure; and 3) Diomed's claim that VSI's Assurance of Compatibility deceived physicians into believing that Diomed would not service, even for a fee, Diomed lasers used with other laser fibers or that Diomed's warranty was illegal.

The undisputed facts, set forth more fully in Defendants' Local Rule 56.1 Statement ("56.1 ¶ __"), establish that Defendants are entitled to judgment as a matter of law on all twelve counts, and on VSI's counterclaim that Diomed's EVLT trademark is invalid. To briefly summarize:

1) Diomed has no claim for breach of the NDA, because it is undisputed that Diomed did not provide any documents marked "confidential" or confirm any verbal disclosures in writing as "confidential" to Arnold under the terms of the NDA.

2) Diomed has no claim for misappropriation of trade secrets, because: a) the NDA bars Diomed's claim; b) the marked sheath is not a trade secret, but instead is simply a ruler that was both "readily ascertainable" and "generally known"; c) Diomed publicly disclosed the marked sheath in its patent application six months before VSI's product came on the market; and d) Diomed has no evidence that Arnold disclosed or VSI used the alleged trade secrets.

---

[1]  Plaintiffs Diomed, Inc., Diomed Holdings, Inc., and Diomed Limited will be collectively referred to as "Diomed."

3) Diomed's trademark and unfair competition claims should be dismissed, because VSI had the absolute legal right to use the abbreviation "ELT" to describe the endovenous laser therapy procedure, and Diomed cannot establish a likelihood of confusion.

4) VSI is entitled to judgment on its counterclaim, because Diomed's EVLT mark has become generic, due to Diomed's own actions.

5) Diomed's claims based on the Assurance of Compatibility are barred, because Diomed has no evidence that the Assurance of Compatibility was deceptive.

6) All of Diomed's claims are barred, because Diomed has no provable damages.

Viewing the facts in a light most favorable to Diomed, no "trier of fact reasonably could find in [Diomed's] favor." <u>DeNovellis v. Shalala</u>, 124 F.3d 298, 306 (1st Cir. 1997). Defendants, therefore, respectfully request a judgment dismissing Diomed's Complaint with prejudice and awarding VSI judgment on its counterclaim.

## ARGUMENT

**I.    DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON THE TRADE SECRET (COUNT I), BREACH OF CONTRACT (COUNT IX), AND TORTIOUS INTERFERENCE (COUNT VIII) CLAIMS.**

    **A.    Arnold Did Not Breach The NDA.**

No reasonable jury could find that Arnold breached the NDA. The NDA establishes detailed provisions for handling confidential information. 56.1 ¶¶ 29-30. Specifically, the NDA required:

> 1. To be protected by this Agreement, *Confidential Information must be marked (or confirmed in writing within 3 business days in the case of verbal disclosures or facility visits as required herein)* as such by each party at the time of its disclosure or delivery to the other party or within 10 business days thereafter.

56.1 ¶ 29 (emphasis added). Diomed purposely inserted the language requiring oral disclosures of confidential information to be confirmed in writing. 56.1 ¶¶ 21-28. Indeed, the Chairman of

Diomed's Board, James Arkoosh, who is also an attorney and professor of business law, suggested adding the provision requiring written confirmation of oral disclosures. 56.1 ¶¶ 23-28. He did so to protect *both parties* against exactly the kind of spurious, he-said-she-said claims that Diomed now asserts. 56.1 ¶ 28.

Diomed also agreed that the NDA exclusively would govern the handling of all confidential information disclosed to Laser Peripherals or Arnold:

> 10. This Agreement constitutes the entire agreement of the parties with respect to the subject matter thereof, and supercedes all previous proposals, oral and written, and all negotiations, conversations or discussions heretofore had between the parties related to this Agreement. Each party acknowledges that it has not been induced to enter this Agreement by any representations or statements, oral or written, not expressly contained herein.
>
> 11. This Agreement will not be deemed or construed to be modified, amended, rescinded, canceled or waived, in whole or in part, other than by written instrument signed by both of the parties hereto.

56.1 ¶¶ 31-32. Those provisions confirm that the NDA was a completely integrated contract and bar any oral agreements seeking to modify or contradict its terms. See Alpha Real Estate Co. of Rochester v. Delta Dental Plan of Minn., 664 N.W.2d 303, 312-13 (Minn. 2003).

Diomed admits it has no documents which were disclosed to Arnold and were marked confidential. 56.1 ¶¶ 37-38. Diomed also admits that it did not confirm any oral disclosures in writing. 56.1 ¶ 36. Diomed cannot produce a single witness who can testify that documents marked confidential were provided to Arnold. 56.1 ¶ 37.

In short, no fact finder could conclude Arnold breached the NDA, because Diomed did not mark or confirm in writing that any information disclosed to Arnold was confidential. See Knapp Schenck & Co. v. Lancer Mgt. Co., 2004 WL 57086, at *9 (D. Mass. Jan. 13, 2004); Rainbow Nails Enters., Inc. v. Maybelline, Inc., 93 F. Supp. 2d 808, 825-26 (E.D. Mich. 2000).

As a result, there is no evidence to support Count IX, and the Court should grant summary judgment in Arnold's favor.  Because there is no evidence that Arnold breached the NDA, there is also no evidence that VSI induced Arnold to breach the NDA.  Count VIII, alleging that VSI tortiously interfered with the NDA, must also be dismissed.

  **B.** **Diomed Cannot Establish Its Trade Secret Claim.**

To prevail on its trade secrets claim[2] Diomed must prove: (i) the existence of a trade secret; (ii) a confidential relationship that gives rise to a duty not to use or disclose the secret; and, (iii) use or disclosure of the secret in breach of such a duty.  Electro-Craft v. Controlled Motion, Inc., 332 N.W.2d 890, 898 (Minn. 1983); Minn. Stat. §325C.01 (2004).  Diomed's claim fails for four reasons.

  **1.** **Diomed's Failure To Comply With The NDA Bars Diomed's Trade Secret Claim.**

Peter Klein, Diomed's former CEO, is its sole witness on the trade secret claims.  Klein alleges he verbally disclosed the concept of the marked sheath and other alleged trade secrets to Nancy Arnold, but admits that he and Diomed never confirmed those verbal disclosures in writing as required by the NDA.  56.1 ¶¶ 39, 46.  Klein and Diomed also admit they have no evidence of any documents that were disclosed to Arnold and marked confidential as required by the NDA.  56.1 ¶ 36.

---

[2] Because Minnesota has adopted the Uniform Trade Secrets Act, Minn. Stat. §§325C.01-325C.08 (2004), ("MUTSA") and Massachusetts has not, a conflict of law exists.  The Court should apply the law of the state with the most significant relationship to the transaction.  See Bradley v. Dean Witter Realty, Inc., 967 F. Supp. 19, 24-25 (D. Mass. 1997).  Minnesota unquestionably has the more significant relationship to the trade secret allegations.  All of the keys events occurred in Minnesota: the alleged disclosures took place in Minnesota as did the alleged misappropriation.  Moreover, the NDA provides that Minnesota law governs.  56.1 ¶ 20.

Diomed's failure to follow the NDA precludes its trade secret claim. Without compliance with the NDA, Diomed cannot establish that Arnold had any duty to maintain confidentiality. Nilssen v. Motorola, Inc., 963 F. Supp. 664, 680-81 (N.D. Ill. 1997). Diomed's failure to mark or confirm in writing that information was "confidential" also establishes that Diomed did not take the required "reasonable measures to protect secrecy." Electro-Craft, 332 N.W.2d at 901; see also Gemisys Corp. v. Phoenix Am. Inc., 1999 WL 417411 (N.D. Ca. March 18, 1999).

The parties agreed that the NDA is "the entire agreement of the parties with respect to the subject matter" of confidential information. 56.1 ¶ 31. The parties further agreed that the NDA could not be "modified, amended, rescinded, canceled or waived, in whole or in part" except by a written instrument signed by both Laser Peripherals and Diomed. Id. The NDA states – *three separate times* – that for information to be protected as "confidential," verbal disclosures must be confirmed in writing within three business days, and written disclosures must be marked confidential. 56.1 ¶¶ 29-30.

Thus, the NDA specifically sets forth the duties of both parties with respect to confidential information, a broad term which the NDA explicitly defines as including "trade secrets." 56.1 ¶ 19. The NDA defines what will be "reasonable measures" to protect any confidential information or trade secrets. The NDA is the sole source of Arnold's alleged duty – she was never a Diomed employee – and the purpose of the NDA, clearly, was to impose duties and give clear notice of those duties to employees of both Diomed and Laser Peripherals that they would not otherwise owe. Nilssen, 963 F. Supp. at 680-81.

Parties are free to define by contract the scope of their duties with respect to trade secrets and confidential information, a point that the Minnesota Uniform Trade Secrets Act makes

explicit.  See Minn. Stat. § 325C.07, subd. (b)(1); see also Nilssen, 963 F. Supp. at 680.  As Diomed's former Chairman James Arkoosh admits, the prime purpose of these provisions, carefully drawn by Diomed itself, was to protect *both parties* from exactly the kind of unsubstantiated claims now advanced by Diomed.  56.1 ¶ 28.  Diomed cannot "modify, amend, rescind, cancel, or waive" the NDA's clear and explicit provisions by means of Peter Klein's oral testimony, and Diomed's failure to comply with the NDA bars its trade secret claims as a matter of law.[3]  See Nilssen, 963 F. Supp. at 680.

### 2. The Marked Sheath Is Not A Trade Secret.

Peter Klein, Diomed's sole witness, testified that he verbally disclosed to Nancy Arnold only the concept of marking a sheath; no specific details were disclosed.  56.1 ¶ 43.  To avoid summary judgment, Diomed must offer evidence from which a reasonable jury could find that the concept of marking a sheath: (a) was not generally known; and (b) was not readily ascertainable to those of ordinary skill in the field.  Minn. Stat. §325C.01; Electro-Craft, 332 N.W.2d at 899.  Diomed cannot meet this burden.

First, the marked sheath is readily ascertainable, as it is nothing more than a ruler to assist the physician in measuring distance.  56.1 ¶¶ 50-52.  James Wylie, Diomed's CEO, stated: "The new sheath will have calibrated markings much like a ruler."  56.1 ¶ 51.  It was public knowledge that physicians needed to withdraw the sheath and laser fiber a certain distance during the procedure.  56.1 ¶¶ 53-55.  For example, Diomed's public, February 2002 instructions for use instructed physicians to withdraw the sheath 2-3 millimeters between pulses of the laser.

---

[3] Touchpoint Solutions, Inc. v. Eastman Kodak Co., 345 F. Supp.2d 23 (D. Mass. 2004) is not to the contrary. In Touchpoint, the district court held that the failure to mark some information did not require summary judgment for failure to take reasonable measures, under the facts and circumstances of that case.  The holding relied on the fact that the confidentiality agreement was not an integrated contract and the confidentiality agreement and a related license agreement specifically defined the information at issue as confidential.

56.1 ¶ 54. Diomed's chief promoter, Dr. Min, publicly instructed physicians to withdraw at a rate of three millimeters per second. 56.1 ¶ 53.

The concept of using a ruler to help physicians measure distance is so simple it is hard to imagine serious dispute on the point. See Walker v. Univ. Books, 602 F.2d 859, 865 (9th Cir. 1979) ("vague and obvious" improvements to playing cards not trade secrets); Hutchison v. KFC Corp., 883 F. Supp. 517, 521 (D. Nev. 1993) (method for frying chicken obvious). Mike Irvine, Diomed's Research and Development Director, testified that any school child would know that a ruler could be used to measure distance. 56.1 ¶ 52. Irvine agreed that what is obvious to a child is also obvious to a person of ordinary skill: "It is obvious that a ruler can be used, in this situation, to measure two to three millimeters." Id.

Second, the use of a marked sheath to measure distance is well-known in the medical device industry. Since 1998, VSI itself has used a marked sheath with its Duett™ products that is very similar to its Vari-Lase marked sheath. 56.1 ¶¶ 55-59. VNUS, one of Diomed's and VSI's competitors, has used a marked catheter in its product for treating varicose veins with RF energy since 1999. 56.1 ¶ 56. Diomed's Irvine testified that there were "plenty" of other examples of marked sheaths in the medical device field. 56.1 ¶ 57.

Diomed cannot contend that the marked sheath is a trade secret merely because Diomed may have been the first to think of using it for endovenous laser treatment. "Mere variations on widely used processes cannot be trade secrets." Electro-Craft, 332 N.W.2d at 899. Such variations must involve "superior advances" and "substantial research or experimentation" to justify trade secret status. Jostens, Inc. v. Nat'l Computer Sys., 318 N.W.2d 691, 698-99 (Minn. 1982); see also Storage Tech. Corp. v. Cisco Sys., Inc., 2003 WL 22231544 (D. Minn. Sept. 25, 2003), aff'd, 395 F.3d 921 (8th Cir. 2005). Diomed cannot claim that using a ruler to measure

distance is a "superior advance," and it certainly did not involve "substantial research and experimentation." The only issue Diomed faced was how to space the markings, and Diomed spent a tiny amount of money to develop the marked sheaths. 56.1 ¶ 60. Because the marked sheath is readily ascertainable and generally known, Defendants are entitled to summary judgment.

### 3. Diomed's Patent Application Extinguished The Marked Sheath As A Trade Secret.

A device described in a published patent or patent application cannot be a trade secret. See, e.g., Coenco, Inc. v. Coenco Sales, Inc., 940 F.2d 1176, 1179 (8th Cir. 1991); 1-1 Milgrim on Trade Secrets § 1.06 (2004). Patents "put the world on notice" and destroy the secrecy of any trade secrets they disclose. Medtronic Vascular, Inc. v. Advanced Cardiovascular Sys., Inc., 2005 WL 388592, at *1 n. 4 (D. Del. Feb. 2, 2005).

The first page of Diomed's '707 Patent application states that the sheath would contain "graduated markings to enable the sheath (40) to be withdrawn at a controlled rate." 56.1 ¶ 62. The '707 Patent application was published on December 27, 2002, *six months* before the commercial launch of VSI's Vari-Lase kit. 56.1 ¶ 61. Klein's alleged disclosure of the marked sheath concept to Arnold thus cannot be the basis of liability; the same information was public months before VSI released its product.

### 4. There Is No Evidence Arnold Disclosed The Alleged Trade Secrets To VSI Or That VSI Used Them.

To survive a motion for summary judgment, Diomed must present *some* evidence that Arnold disclosed the alleged trade secrets to VSI and that VSI used them. Sip-Top, Inc. v. EKCO Group, Inc., 86 F.3d 827, 831 (8th Cir. 1996). Mere inference and speculation is not enough. Id. Diomed has no such evidence. Because there is no evidence Defendants

misappropriated the alleged trade secrets, see 56.1 ¶¶ 64-67, the Court should grant Defendants summary judgment on Count I.

## II. DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON THE TRADEMARK CLAIMS (COUNTS II, III, AND X(B) & (C)).

Diomed alleges federal trademark infringement (Count II), false designation of origin and palming off (Count III), and federal and common law unfair competition (Count X(b),(c)). All of those claims fail as a matter of law. Diomed's trademark infringement and unfair competition claims fail, because VSI's limited use of "ELT" was a "fair" use, and there is no likelihood of confusion in relation to Diomed's "EVLT" trademark.

### A. VSI's Use Of "ELT" Was A Fair Use.

VSI has never labeled its products with "ELT." 56.1 ¶ 73. Diomed's sole complaint is that VSI used "ELT" in its Reimbursement Newsletter, on the veins.nu website, and in the Olson article. See 56.1 ¶ 74. In all three of the allegedly infringing materials, VSI used "ELT" not as a mark for its Vari-Lase products or as a source indicator, but rather in its purely descriptive sense, as an abbreviation for the endovenous laser therapy procedure. 56.1 ¶¶ 73-87. Diomed is not the sole source of endovenous laser therapy. 56.1 ¶ 117.[4]

VSI's isolated and descriptive use cannot support Diomed's trademark infringement claims. "A junior user is always entitled to use a descriptive term in good faith in its primary sense." 2 McCarthy § 11:45 (1996). "When the plaintiff chooses a mark with descriptive qualities, the fair use doctrine recognizes that he cannot altogether exclude some kinds of competing use, particularly those which use words in their primary descriptive and non-

---

[4] In fact, Diomed is not a source for the procedure at all. Diomed sells kits and trains doctors, but does not market itself as a provider of the procedure to patients.

trademark sense." Id., quoting U.S. Shoe Corp. v. Brown Group, Inc., 740 F. Supp. 196, 198 (S.D.N.Y. 1990), aff'd, 923 F.2d 844 (2d Cir. 1990).

Diomed admits that it cannot prevent VSI, or any other competitor, from using the phrase "endovenous laser therapy" to describe the procedure. 56.1 ¶ 72 . A customer viewing the Reimbursement Newsletter, the veins.nu website, or the Olson article would know that VSI is using the abbreviation "ELT" to refer generally to endovenous laser therapy and not as a designation of source or origin. 56.1 ¶¶ 73-87.

### B.      There Is No Likelihood Of Confusion.

Diomed claims that VSI's isolated and descriptive use of "ELT" as an abbreviation for the procedure is likely to confuse sophisticated, highly trained professionals as to the source of VSI's Vari-Lase kit or as to affiliation between Diomed and VSI. Such confusion is unlikely as a matter of law.

To avoid summary judgment, Diomed must "adduc[e] significantly probative evidence tending to show that an appreciable number of prospective" purchasers are likely to be confused. Int'l Ass'n of Machinists & Aerospace Workers v. Winship Green Nursing Ctr., 103 F.3d 196, 201 (1st Cir. 1996) (citations omitted). Diomed "must show more than the theoretical possibility of confusion . . . . [T]he law has long demanded a showing that the allegedly infringing conduct carries with it a likelihood of confusing an appreciable number of reasonably prudent purchasers exercising ordinary care." Winship Green, 130 F.3d at 200-01. If Diomed fails to meet this threshold, summary judgment is warranted. See, e.g., Winship Green, 103 F.3d at 203-07; Astra Pharm. Prods., Inc. v. Beckman Instruments, Inc., 718 F.2d 1201, 1208 (1st Cir. 1983); Pignons S.A. de Mechanique de Precision v. Polaroid Corp., 657 F.2d 482, 492 (1st Cir. 1981).

The First Circuit uses the Polaroid factors as tools for analyzing in detail the marketplace realities. An analysis of the relevant factors establishes that no reasonable jury could find that VSI's isolated use of "ELT" is likely to cause confusion.

**Lack of Similarity In Packaging.** VSI's use of "ELT" as an abbreviation for the procedure is not similar to Diomed's use of "EVLT" on its products. VSI has never used ELT on its product packaging. 56.1 ¶¶ 73, 88. VSI labels its kits with its own Vari-Lase mark, and all of VSI's products also bear the VSI name. 56.1 ¶ 88. That single fact – that VSI sells its products in clearly labeled packaging under an entirely different trademark than Diomed's – makes source confusion impossible and should be dispositive. Pignons, 657 F.2d at 487; see also Nora Beverages, Inc. v. Perrier Group of Am., Inc., 269 F.3d 114, 123 (2d Cir. 2001).

**The Manner In Which The Products Are Sold.** Diomed and VSI each sell their products through sales representatives, in a personal, often lengthy, sales process. 56.1 ¶¶ 90-94. To be confused, a purchaser would have to be confused not only about the products, but about the employment of the sales person. The manner in which the products are sold prevents any likelihood of source confusion. Fisher Stoves, Inc. v. All Nighter StoveWorks, Inc., 626 F.2d 193, 194 (1st Cir. 1980).

**The Classes Of Purchasers.** The parties' products are purchased by highly educated physicians. 56.1 ¶¶ 95-97. Sophisticated purchasers greatly reduce any chance of confusion. See Pignons, 657 F.2d at 489. In this case, the high level of care exercised by highly trained medical professionals purchasing devices for use in a medical procedure should be dispositive. See Astra, 718 F.2d at 1206.

**No Evidence Of Actual Confusion.** Diomed admits that it has no evidence that any doctor has been confused in any way by VSI's use of "endovenous laser therapy" or "ELT."

56.1 ¶¶ 98-103.  Where there is no evidence of actual confusion after a period of allegedly infringing use, "there is a strong presumption that there is little likelihood of confusion."  Pignons, 657 F.2d at 490.

**VSI's Intent.**  VSI's prominent labeling of its kits with its Vari-Lase mark and the VSI name demonstrate that VSI did not intend to confuse customers.  56.1 ¶ 88.  To avoid controversy, VSI agreed years ago to stop using "ELT," even as a description of the procedure, and has not used the abbreviation since September 2003.  56.1 ¶¶ 104-106.

**The Weakness Of Diomed's Trademark.**  As detailed in Section III below, due to Diomed's own actions, "EVLT" is nothing more than a generic abbreviation for endovenous laser therapy and is thus not entitled to any protection as a trademark.  56.1 ¶ 107.  In addition, many third parties use marks similar to "EVLT" to market their own endovenous laser therapy kits, and Diomed has not objected to any of those marks.  56.1 ¶ 108.

Those Polaroid factors are dispositive.  There is no likelihood of confusion as to source, and no risk that the sophisticated consumers of the parties' products would be confused into thinking that there is a connection between VSI and Diomed.

**C.  The Reimbursement Newsletter And Olson Article Are Not Confusing As To The Source Of The Clinical Studies.**

Diomed bases a separate claim for unfair competition on VSI's use of the abbreviation "ELT" in its Reimbursement Newsletter and the Olson article concerning certain clinical studies.  Compl. ¶¶ 62-68.  Contrary to Diomed's claim, VSI has no legal obligation to use Diomed's trademark in referring to clinical studies.  56.1 ¶ 82.  Those studies, moreover, are not Diomed's studies at all, but rather are physician studies performed using products from several companies.  56.1 ¶¶ 83-84.  Diomed cannot prove that a single study cited by Dr. Olson was performed using

an EVLT kit. Id. VSI never claimed that the studies were performed using its Vari-Lase kits, and thus no confusion was likely to occur. 56.1 ¶ 82.

### D. Diomed's Trade Dress Claims Should Be Dismissed.

Diomed claims that the veins.nu website and VSI's patient information brochure have a "look and feel" confusingly similar to Diomed's materials. See Compl. ¶ 67. In addition to the reasons set forth in the Polaroid analysis above, it is clear that the overall look and feel of the veins.nu website and the Diomed website are not confusingly similar. 56.1 ¶¶ 111-112. With respect to the parties' patient information brochures, there is no way to analyze the similarity because, despite VSI's requests, Diomed has not identified the Diomed brochure that is allegedly similar to VSI's patient information brochure. 56.1 ¶ 115. No reasonable jury could conclude that VSI's materials are confusingly similar to Diomed's website or unidentified patient information brochure. The trade dress claims should be dismissed.

## III.   VSI IS ENTITLED TO SUMMARY JUDGMENT ON ITS COUNTERCLAIM THAT THE EVLT TRADEMARK IS INVALID.

Because of Diomed's conduct, the abbreviation "EVLT" has become a generic term commonly used to refer to laser treatment within a vein. Diomed thus cannot assert trademark rights in "EVLT," and its registration should be canceled.

Generic terms are those that refer to a genus of which a particular product or service is a species, without distinguishing its source or origin. S.S. Kresge Co. v. United Factory Outlet, Inc., 598 F.2d 694, 696 (1st Cir. 1979). Generic terms can never function as a trademark. Nartron Corp. v. STMicroelecs., Inc., 305 F.3d 397, 404 (6th Cir. 2002). A registered mark can be canceled at any time upon a finding that the mark is, or has become, generic. See 15 U.S.C. §§ 1052, 1064(3), 1119.

While Diomed owns a registration for "EVLT" in connection with its laser therapy kits and services, it has no registration for "EVLT" as a name for the medical procedure. 56.1 ¶¶ 69-70. Even if Diomed's registration entitles it to a presumption that the term is not generic, Diomed's improper use of "EVLT" and the ample evidence of third party generic use are sufficient as a matter of law to overcome that presumption. See, e.g., Nartron, 305 F.3d at 405 (evidence of generic use of "smart power" sufficient to overcome incontestable registration; summary judgment granted); Loglan Inst., Inc. v. Logical Language Group, Inc., 962 F.2d 1038 (Fed. Cir. 1992).

Diomed admits that "endovenous laser therapy" and "endovenous laser treatment" accurately describe the procedure. 56.1 ¶ 116. Diomed also admits that it cannot object to third parties' use of "endovenous laser therapy" as the name for the procedure, see 56.1 ¶ 72, and that Diomed is not the only source of the procedure. 56.1 ¶ 117. Accordingly, "endovenous laser therapy" and "endovenous laser treatment" are commonly used generically to describe the procedure. See, e.g. 56.1 ¶ 124.

The abbreviated form of "endovenous laser therapy" – "EVLT" – is also generic. An abbreviation of a generic name that continues to convey to consumers the original generic connotation is also generic. Nat'l Conference of Bar Exam'rs v. Multistate Legal Studies, Inc., 692 F.2d 478, 488 (7th Cir. 1982) ("MBE" and "multistate bar examination" both generic); Am. Online, Inc. v. AT & T Corp., 64 F. Supp. 2d 549, 566 (E.D. Va. 1999) ("IM" is generic abbreviation for "instant messaging"), aff'd in relevant part, 243 F.3d 812 (4th Cir. 2001); ExpoConsul Int'l, Inc. v. A/E Sys., Inc., 755 F. Supp. 1237, 1241 (S.D.N.Y. 1991) ("AEC" understood to reference architecture, engineering, and construction); Cont'l Airlines, Inc. v.

-14-

United Air Lines, Inc., 1999 WL 1288981, at *15 (T.T.A.B. 1999) ("e-ticket" and "electronic ticketing" both generic).

Most importantly, Diomed itself improperly and repeatedly uses the abbreviation "EVLT" to refer to endovenous laser treatment.  56.1 ¶¶ 118-119.  Diomed's website refers to "Endovenous Laser Treatment (EVLT®)" and "EVLT, non-surgical endovenous laser treatment."  56.1 ¶ 119.  Diomed also uses "EVLT" as an abbreviation for the procedure in its advertisements, public presentations, customer training materials, and internal communications.  56.1 ¶ 118.  "If the proponent of trademark status itself uses the term as a generic name, this is strong evidence of genericness."  2 McCarthy § 12:13; see also Birtcher Electro Med. Sys., Inc. v. Beacon Labs., Inc., 738 F. Supp. 417, 420 (D. Colo. 1990) (regular use of "argon beam coagulator" as a noun indicates that the term was generic label for medical product); Am. Online, 243 F.3d at 823 (use of "IM" as a noun and a verb in lieu of "instant message" showed genericness).

Many practitioners also refer to the procedure as "EVLT."  56.1 ¶¶ 120-124.  A "Google™" search produced more than 100 websites using "EVLT" as a generic abbreviation for "endovenous laser therapy."  56.1 ¶ 124.  Most of those websites fail to acknowledge "EVLT" as a trademark, and none of them refer to Diomed or its EVLT procedure kits.  Id.  Such widespread generic use of "EVLT" by third parties, without objection by Diomed, proves that it is generic.  2 McCarthy § 12:13.

**IV.   VSI IS ENTITLED TO SUMMARY JUDGMENT ON DIOMED'S CLAIMS STEMMING FROM THE ASSURANCE OF COMPATIBILITY (COUNTS IV, V, VI, AND VII).**

Diomed cannot prevail on Counts IV, V and VI (False Advertising under the Lanham Act, 15 U.S.C. § 1125(a)(1), Trade Libel, Injurious Falsehood, Commercial Disparagement and Defamation), because Diomed cannot prove VSI made a false statement of fact about Diomed's

product. Each claim requires proof of a false factual statement; and "trade libel", "commercial disparagement", and "injurious falsehood" are different names for the same tort.[5]  See Cashmere & Camel Hair Mfr. Inst. v. Saks Fifth Ave., 284 F.3d 302, 310-11 (1st Cir. 2002) (Lanham Act); Picker Int'l, Inc. v. Leavitt, 865 F. Supp. 951, 965 (D. Mass. 1994) (commercial disparagement); DeCosta v. Viacom Int'l, Inc., 981 F.2d 602, 610 (1st Cir. 1992), cert. denied, 509 U.S. 923 (1993) (commercial disparagement and injurious falsehood); MiGi, Inc. v. Gannett Mass. Broad., Inc., 25 Mass. App. Ct. 394, 396 (1988) (trade libel).

### A.  **Diomed Cannot Prove That Customers Have Been Deceived.**

Diomed must prove that the alleged statement is either (i) literally false, or (ii) "implicitly false" and actually deceives consumers.  Clorox Co. Puerto Rico v. Procter & Gamble Commercial Co., 228 F.3d 24, 33 (1st Cir. 2000).  Diomed's claim is based on implicit falsity, as it alleges that VSI's Assurance of Compatibility falsely implies: 1) Diomed will not service its laser console if it is used with a third-party's laser fiber; and 2) Diomed's warranty for its EVLT laser console is illegal.  Compl. ¶ 109.

To prove implicit falsity, Diomed must prove the Assurance of Compatibility "convey[ed] a misleading message to the viewing public" by producing evidence of "how consumers have actually reacted to the [Assurance of Compatibility]."  Clorox, 228 F.3d at 33. Diomed thus must show that Diomed customers were actually deceived.  See Cashmere, 284 F.3d at 314; Clorox, 228 F.3d at 33.

Diomed has no such evidence.  Diomed cannot identify a single customer who read the Assurance of Compatibility and was deceived into believing that Diomed would not service its

---

[5]  Defamation does not apply to alleged harm to a business's economic interests.  See Adams v. Stephenson, M.D., 1997 WL 351633, at **2 (1st Cir. June 23, 1997); see also Restatement (Second) of Torts § 623A cmt. g.

laser console if the customer used a third-party's laser fiber or that Diomed's warranty was illegal. 56.1 ¶ 131-132. Because Diomed has no evidence, these claims should be dismissed.[6]

### B. Diomed Cannot Prove VSI Interfered With Diomed's Customers.

Count VII of the Complaint alleges that VSI "embarked on a smear campaign regarding Diomed's warranty as a tactic to divert customers to VSI" and is liable for tortious interference with Diomed's business relationships. To prevail, Diomed must prove, among other things, that VSI used "improper motives or means" to interfere with Diomed's customers and that Diomed was injured as a result. Netherwood v. Am. Fed. of State, County, and Mun. Employees, Local 1725, 53 Mass. App. Ct. 11, 21 (2001). Furthermore, Diomed must show that any improper motives or means rose to the level of "actual malice" and were the "controlling factor" behind VSI's alleged interference. Sklar v. Beth Israel Deaconess Med. Ctr., 59 Mass. App. Ct. 550, 554 (2003).[7]

There is no evidence to support such a claim. Diomed cannot produce any specific evidence that its customers were wrongfully deceived by the Assurance of Compatibility or that Diomed was damaged in any way. 56.1 ¶¶ 131-132, 138.

### V. VSI IS ENTITLED TO SUMMARY JUDGMENT ON THE REMAINING CLAIMS PERTAINING TO UNFAIR COMPETITION (COUNTS X AND XII) AND ACCOUNTING (COUNT XI).

Diomed's claims for unfair competition (Count X), an accounting (Count XI), and deceptive trade practices under Mass. Gen. L. Ch. 93A (Count XII) are duplicative and should be dismissed for the reasons discussed above. In addition, Diomed's Chapter 93A claim must also

---

[6] Diomed's claim for injunctive relief should also be rejected. VSI stopped using this Assurance of Compatibility in early 2004, see 56.1 ¶ 133, and Diomed thus cannot show ongoing irreparable harm. See Coady Corp. v. Toyota Motor Distrib., Inc., 361 F.3d 50, 61 (1st Cir. 2004).

[7] VSI is applying Massachusetts law to the state law claims related to the Assurance of Compatibility because it does not perceive any conflict with Minnesota law.

be dismissed because, "the center of gravity of the circumstances that give rise to [Diomed's] claim" is not "primarily or substantially within the Commonwealth." Kuwaiti Danish Computer Co. v. Digital Equip. Corp., 438 Mass. 459, 473 (2003). All of the alleged wrongful acts occurred in Minnesota where Defendants are located – Defendants allegedly misappropriated the trade secrets in Minnesota, and VSI created the marketing materials containing the alleged trademark violations and false statements in Minnesota. Less than four percent of VSI's sales are in Massachusetts. 56.1 ¶ 94.

## VI. DIOMED CANNOT PROVE DAMAGES.

Diomed's entire case also should be dismissed, because Diomed cannot prove damages. Diomed has failed to answer VSI's contention interrogatory on damages. 56.1 ¶¶ 134-136. Furthermore, Diomed's witnesses could only speculate concerning its damages claims. 56.1 ¶¶ 137-146.

Diomed is precluded from offering evidence at trial, or in opposition to this motion, that it failed to provide in its Rule 26(a) disclosures or discovery responses. Fed. R. Civ. P. 37. The sole exception is if Diomed can prove that its failure is both "substantially justified" and "harmless." Id. In July 2004, VSI asked Diomed to state, for each count in the Complaint, the amount of damages it claimed, how it calculated those damages, and to identify relevant documents. 56.1 ¶ 134. Diomed has not answered, and also has not supplemented its initial disclosures to address damages. 56.1 ¶¶ 135-136.

There is no justification, let alone a "substantial justification," for Diomed's failure to answer. Diomed's failure is also not "harmless." If Diomed is allowed to create a damages theory now, for the first time, it will require reopening discovery, causing VSI to incur more expense and delay in resolving this lawsuit. Diomed's damages claims should be dismissed because of Diomed's failure to respond to discovery. Klonoski v. Mahlab, 156 F.3d 255, 268

(1st Cir. 1998); <u>Elca Enters., Inc. v. Sisco Equip. Rental & Sales, Inc.</u>, 53 F.3d 186, 189 (8th Cir. 1995).

Diomed's failure is a tacit admission that it has no provable damages. The two witnesses it identified as having relevant information had no evidence that Diomed had suffered any damages from VSI's use of the Assurance of Compatibility, from VSI's limited use of "ELT", or from VSI's patient brochure or website. 56.1 ¶¶ 137-146. With respect to the trade secret claim, both witnesses speculated that the marked sheath was the primary cause of lost sales; but neither could quantify a damages claim. 56.1 ¶¶ 141-146. Diomed's inability to prove its damages to a reasonable degree of certainty is an additional ground for dismissal of this lawsuit. See <u>Reliance Steel Prods. Co. v. Nat'l Fire Ins. Co.</u>, 880 F.2d 575, 578 (1st Cir. 1989); <u>Storage Tech. Corp. v. Cisco Sys., Inc.</u>, 395 F.3d 921, 928-29 (8th Cir. 2005).

        Respectfully submitted,

        VASCULAR SOLUTIONS, INC. and NANCY L. ARNOLD
        By their attorneys,

        /s/ Steven L. Feldman
        Steven L. Feldman (BBO #162290)
        Karen Van Kooy (BBO #644484)
        Ruberto, Israel & Weiner, P.C.
        100 North Washington Street
        Boston, Massachusetts 02114-2128
        Telephone: (617) 742-4200

        *~and~*

        J. Thomas Vitt MN #183817
        Todd R. Trumpold MN #313890
        Dorsey & Whitney LLP
        50 South Sixth Street, Suite 1500
        Minneapolis, Minnesota 55402-1498
        Telephone: (612) 340-2600