# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DIOMED, INC., DIOMED HOLDINGS, INC., and DIOMED LIMITED,<br><br>    Plaintiffs,<br><br>v.<br><br>VASCULAR SOLUTIONS, INC. and NANCY L. ARNOLD,<br><br>    Defendants. | Civil File No. 03 CV 12498 RWZ |

# DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

J. Thomas Vitt (MN No. 183817)
Todd R. Trumpold (MN No. 0313890)
Heather D. Redmond (MN No. 0313233)
50 South Sixth Street, Suite 1500
Minneapolis, Minnesota 55402-1498
Telephone: (612) 340-2600

Steven L. Feldman (BBO No. 162290)
Karen Van Kooy (BBO No. 644484)
Ruberto, Israel & Weiner, P.C.
100 N. Washington St.
Boston, Massachusetts 02114-2128
Telephone: (617) 742-4200

**Attorneys for Defendants Vascular Solutions, Inc. and Nancy L. Arnold**

I.   **DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON THE TRADE SECRET CLAIMS.**

Diomed concedes Arnold did not breach the NDA, ending its claims for breach of contract and tortious interference. Thus, this Reply addresses only the trade secret issues.

First, Diomed, by its silence, concedes that publication of its patent application six months before VSI introduced a marked sheath destroys any claim for trade secret liability.

Second, the NDA compels summary judgment: 1) The parties intended the NDA to govern the disclosure of *all* confidential information, including trade secrets, allegedly disclosed by Klein to Arnold. 2) The NDA states that confidential information must be marked or confirmed in writing. 3) Diomed insisted on that provision to protect both parties. 4) Diomed did not mark or confirm in writing any of the alleged disclosures. As a matter of basic contract law, Diomed was free to bargain for the NDA's clarity; Diomed cannot now ignore its clear requirements. Nilssen v. Motorola, Inc., 963 F. Supp. 664, 680-81 (N.D. Ill. 1997).[1]

Diomed cannot rely on the 2001 Agreement, because the NDA supersedes it, Trumpold Decl. Tab J at 68 (NDA ¶10); see PureTest Ice Cream, Inc. v. Kraft, Inc., 806 F.2d 323, 325 (1st Cir. 1986), and the 2001 Agreement also requires marking or confirmation in writing! Barz. Dec. Ex. 10 ¶1. Diomed cannot rely on Klein's oral testimony, as the NDA specifically prohibits oral modifications. Trumpold Decl. Tab J at 68 (NDA ¶11). Furthermore, Diomed has *no evidence* of any oral modification: Klein testified that *there was no discussion at all about the NDA*, let alone clear and convincing evidence of an agreement to delete both its no-oral-modifications clause and its written confirmation requirements. Trumpold 2d Dec. Ex. 1. See

---

[1] In Knapp Schenk & Co. v. Lancer Mgmt. Co., Inc., 2004 WL 57086 (D. Mass. 2004), the contract marking requirement did not apply because the disclosures were prior to and not governed by the contract. In Den-Tal Ez v. Siemens, 1988 Pa. Super. Lexis 3184, *17 (Pa. Super. 1988), the Court found that the agreement did not require marking.

Merickel v. Erickson Stores Corp., 95 N.W.2d 303, 305 (Minn. 1959) (parol modification of written contract requires clear and convincing evidence).

Third, given the simplicity of the concept and the evidence concerning the Duett and VNUS marked sheaths, no reasonable jury could find that the marked sheath was not "generally known" or "readily ascertainable." Diomed's challenge to Mr. Jakubowski's "credibility" concerning the VNUS catheter cannot create a question of fact. Favorito v. Pannell, 27 F.3d 716, 721 (1st Cir. 1994). Putting markings on a sheath to help physicians measure the *publicly known* 3 millimeter per second withdrawal rate is readily ascertainable. Diomed cannot use Mike Irvine's "clarifying" errata sheet, filed ten days after VSI's summary judgment motion, to create an issue of fact. See Burns v. Bd. of Cty. Comm'rs, 330 F.3d 1275, 1281-82 (10th Cir. 2003); see also Tingley Sys., Inc. v. CSC Consulting, Inc., 152 F. Supp. 2d 95, 120 (D. Mass. 2001). Finally, Diomed's notice of patent allowability is not relevant, as, among other things, Diomed did not disclose the VNUS catheter to the Patent Office. Trumpold 2d Dec. ¶ 2.

Fourth, given VSI's Duett product and Howard Root's uncontradicted testimony that the marked sheath was his idea, Diomed's speculation concerning Arnold's alleged disclosure and VSI's alleged use is not sufficient to create a fact issue. Sip-Top, Inc. v. EKCO Group, Inc., 86 F.3d 827, 831 (8th Cir. 1996).

## II.   VSI IS ENTITLED TO SUMMARY JUDGMENT ON THE TRADEMARK CLAIMS.

As an initial matter, VSI is entitled to summary judgment because Diomed does not dispute that VSI's use of "ELT" was a descriptive fair use.

Diomed's sole assertion in its Complaint, confirmed by its Rule 30(b)(6) witness, was that VSI had used "ELT" in a way that caused confusion with Diomed's "EVLT" trademark. See Compl. ¶¶56-71, Counts II, III, and X; VSI 56.1 ¶74. Diomed now asserts for the first time that VSI also improperly used "EVLT" to market its products. But Diomed presents no

actionable use of "ELT" or "EVLT" by VSI.  VSI's use in *internal* communications cannot cause confusion.  E.g., Barz. Decl. Exs. 21, 22.  VSI also cannot be responsible for references to "EVLT" by third parties, and, in fact, those communications only support *VSI's* claim that "EVLT" is generic.  E.g., id.; Root 2d Dec. ¶ 2.  Summary judgment of no likelihood of confusion has been granted on stronger facts than Diomed can present here.  E.g., Int'l Ass'n of Machinists v. Winship Green, 103 F.3d 196, 203-07 (1st Cir. 1996).

With respect to VSI's counterclaim, Diomed does not dispute that "endovenous laser therapy" is a generic name; that Diomed uses "EVLT" as an abbreviation for the procedure; and that Diomed is not the sole source of the procedure.  Those admissions, in addition to VSI's evidence of the generic use of "EVLT" by Diomed and third parties, compel summary judgment.  Am. Online, Inc. v. AT & T Corp., 64 F. Supp. 2d 549, 566 (E.D. Va. 1999), aff'd in relevant part, 243 F.3d 812 (4th Cir. 2001); Nartron Corp. v. STMicroelectronics, Inc., 305 F.3d 397 (6th Cir. 2002) (summary judgment of genericness of federally registered "smart power" mark).

Diomed's own submission of third party use of "EVLT" proves VSI's point.  The relevant purchasing group – practitioners of endovenous laser therapy – view "EVLT" as an abbreviation for "endovenous laser treatment" and use the abbreviation to refer to the surgical procedure, rather than Diomed's trademarked product.  See Thomas Dec. Ex. A.  The use of "™" by some practitioners does not raise a genuine issue of fact.  Continental Airlines, Inc. v. United Air Lines, Inc., 1999 WL 1288981, at *12 (T.T.A.B. December 29, 1999).

Diomed's affidavit of Dr. Steven Elias is insufficient to rebut VSI's evidence of genericness.  E.g., Birtcher Electro Med. Sys., Inc. v. Beacon Labs., Inc., 738 F. Supp. 417, 421 (D. Colo. 1990); Expoconsul Int'l, Inc. v. A/E Sys., Inc., 755 F. Supp. 1237, 1243 (S.D.N.Y. 1991).  Dr. Elias's own website shows that even he uses "EVLT (endovenous laser therapy)" generically.  Trumpold 2d Dec. Ex. 2.  Similarly, the existence of alternative names for the

3

procedure does not establish that "EVLT" is not generic. McCarthy on Trademarks § 12 (4th ed. 1999); Ale House Mgmt., Inc. v. Raleigh Ale House, Inc., 205 F.3d 137 (4th Cir. 2000).

### III. VSI IS ENTITLED TO SUMMARY JUDGMENT ON DIOMED'S CLAIMS STEMMING FROM THE ASSURANCE OF COMPATIBILITY.

VSI stopped using the Assurance of Compatibility in January, 2004. Diomed thus cannot show ongoing irreparable harm to warrant injunctive relief, nor does Diomed have any evidence of damages. On the merits, Diomed falsely claims that VSI's Assurance of Compatibility states "that Diomed's policy of voiding a customer's warranty for using VSI products was in violation of the Sherman and Clayton Anti-Trust Acts." Diomed Br. at 17. In fact, the document at most implies that if any of three competitors were to try to force doctors to buy disposables, then those hypothetical actions would violate the law. VSI 56.1 ¶ 127. Diomed's claims, then, are for implicit falsity, and require proof that a "substantial portion" of the customers were actually misled. Clorox Co. Puerto Rico v. Procter & Gamble Commercial Co., 228 F.3d 24, 36 (1st Cir. 2000). Diomed has no such evidence. Diomed's sole evidence is Wylie's vague double-hearsay: he heard from unnamed salespeople that unnamed doctors were "concerned." Trumpold Dec. Tab G at 14-24. Because Diomed has no admissible evidence that customers were deceived, VSI is entitled to summary judgment. Garside v. Osco Drug, Inc., 895 F.2d 46, 49-50 (1st Cir. 1990).

### IV. DIOMED CANNOT PROVE DAMAGES.

By its silence, Diomed concedes that its failure to answer VSI's interrogatory is not "substantially justified" or "harmless." Fed. R. Civ. P. 37(c)(1). Diomed is thus foreclosed from attempting to prove damages. Id.; see Klonoski v. Mahlab, 156 F.3d 255, 268 (1st Cir. 1998). Diomed tries to cure its default by stating as fact a mishmash of speculation concerning damages allegedly caused by VSI's introduction of a marked sheath.[2] Because Diomed must prove that

---

[2] The marked sheath is the entire focus. Diomed makes no attempt to offer specific evidence of damages caused by the other alleged wrongs. See VSI 56.1 ¶¶ 138-141.

4

the marked sheath proximately caused the claimed damages, see, e.g., Atlantic Res. Mktg. Sys., Inc. v. Saco Defense, Inc., 997 F. Supp. 159, 166 (D. Mass. 1998), and the amount of its damages to a reasonable certainty, see, e.g., Cambridge Plating Co. v. Napco, Inc., 85 F.3d 752, 771 (1st Cir. 1996), it is clear that Diomed's "evidence" is insufficient to warrant a jury trial:

    1) Diomed claims "lost sales" due to the marked sheath, but its witnesses could only identify *one* customer who supposedly converted to VSI *because of the marked sheath*. That testimony was inadmissible hearsay from an unnamed "purchasing" person. Trumpold Dec. Tab G at 62-63.

    2) Diomed's broad-brush estimates of lost sales are pure speculation. Diomed's Rule 30(b)(6) witness estimated a loss of 125-175 customers, but admitted that some of those could be buying from others, that he couldn't quantify the number, and that he couldn't quantify how many customers switched *because of the marked sheath*. Trumpold Dec. Tab F at 153-55.

    3) Diomed refers to unspecified "price erosion" damages, but offers no evidence that the marked sheath, rather than some other factor (for example, VSI's **lower price!**) caused Diomed's lower price.

    4) Diomed's 56.1 statement claims a loss of $8-10 million. Diomed's Rule 30(b)(6) witness sought disgorgement of VSI's stock price rise, attributing it all to the marked sheath. See Trumpold Dec. Tab F at 164-72. But VSI shareholders, not VSI, gained from the price rise; Diomed's theory has no legal basis; and courts have rejected similar theories as rank speculation. Storage Tech. v. Cisco Sys., Inc., 395 F.3d 921, 928 (8th Cir. 2005); Alcatel USA, Inc. v. Cisco Sys., Inc., 239 F. Supp. 2d 660, 667-73 (E.D. Tex. 2002).

Respectfully submitted,

        VASCULAR SOLUTIONS, INC. and
        NANCY L. ARNOLD

By their attorneys,

/s/  Karen Van Kooy
Steven L. Feldman (BBO #162290)
Karen Van Kooy (BBO #644484)
Ruberto, Israel & Weiner, P.C.
100 N. Washington Street
Boston, Massachusetts 02114-2128
Telephone: (617) 742-4200

*and*

J. Thomas Vitt (MN No. 183817)
Todd R. Trumpold (MN No. 0313890)
Heather D. Redmond (MN No. 0313233)
Dorsey & Whitney LLP
50 South Sixth Street, Suite 1500
Minneapolis, Minnesota 55402-1498
Telephone:  (612) 340-2600