# EXHIBIT 1

To Declaration of Todd R. Trumpold

dated July 5, 2005

```
                              Volume: I
                              Pages: 1 - 210
                              Exhibits: 18 - 37
```

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - x
DIOMED, INC., DIOMED HOLDINGS,
INC., AND DIOMED LIMITED,

      Plaintiffs,

  VS                        CIVIL ACTION
                            NO. 03-12498-RWZ
VASCULAR SOLUTIONS, INC.,
AND NANCY L. ARNOLD,

      Defendants.
- - - - - - - - - - - - - - - - x

DEPOSITION OF HANS-PETER KLEIN, a witness called by counsel for the Defendants, taken pursuant to the Massachusetts Rules of Civil Procedure, before Helana Eve Kline, a Massachusetts Certified Shorthand Reporter & Registered Professional Reporter and Notary Public in and for the Commonwealth of Massachusetts, at the Law Offices of Ruberto, Israel & Weiner, P.C., 100 North Washington Street, Boston, Massachusetts, on Thursday, November 4, 2004, commencing at 9:10 a.m.

Confidential - Attorneys' Eyes Only

APPEARANCES:


Law Offices of Wolf, Greenfield & Sacks, P.C.
(By: James J. Foster, Attorney at Law)
600 Atlantic Avenue
Boston, Massachusetts  02210-2206

    On Behalf of the Plaintiffs.


Law Offices of Dorsey & Whitney, LLP
(By: J. Thomas Vitt, Attorney at Law)
50 South Sixth Street, Suite 1500
Minneapolis, Minnesota  55402-1498

    On Behalf of the Defendants.




Helana Eve Kline, C.S.R., R.P.R., &
Professional Court Reporters
4 Maple Avenue
Middleborough, Massachusetts  02346
Tel. No. 1-508-947-2244
Fax. No. 1-508-947-8484
helanakline@aol.com

Confidential - Attorneys' Eyes Only

```
 1        confidential --
 2   A.   Right.
 3   Q.   -- and I want to disclose it to you?
 4   A.   Yeah.
 5   Q.   Is it okay?
 6   A.   Yeah.
 7   Q.   What did Ms. Arnold say in response to that,
 8        if you recall?
 9   A.   I don't understand.  I don't recall the
10        exact words she had used, but she recognized
11        and said: Yeah, go ahead, because what I was
12        taught is, especially keep in mind at the
13        time, I was COO of a public company just for
14        a few months; and before you go public, you
15        get sort of your training that I need to
16        give people the opportunity to say: No, I
17        don't want to hear it; and, so, therefore,
18        I recall that I was waiting for her to
19        confirm and acknowledge that I should
20        proceed, but I don't recall the words.
21   Q.   Did the two of you at that point talk about
22        the written nondisclosure agreement?
23   A.   No.
24   Q.   No discussion of that at all?
```

```
 1    A.   No.
 2    Q.   Who taught you this technique?
 3    A.   Oh, gosh.  I -- we had so many lawyers -- I
 4         couldn't even tell you which one it was, but
 5         I think when we went to the roadshow I was
 6         talking to investors that there was a risk
 7         that if the investor knows confidential
 8         information that he cannot sell or buy
 9         stock because now he suddenly --
10    Q.   He's an insider?
11    A.   He's an insider, and I need to make sure
12         that before I make an outsider an insider
13         to give that person the option; we had many
14         investors who said: Look, I don't want to
15         know anything confidential; don't tell me
16         anything confidential because they want to
17         keep the freedom to sell the stock so this
18         was part of the, I don't know, the pre-public
19         briefing.  It could have been Jim Arkoosh
20         that was a lawyer and our chairman; it could
21         have been one of the partners at the law firm
22         we had been using.
23    Q.   What firm was that?
24    A.   Well, we used one was in New York -- gosh.
```

Confidential - Attorneys' Eyes Only